IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| Dr. REUBEN SETLIFF,<br>   *Plaintiff,*<br><br>vs.<br><br>ZOCCAM TECHNOLOGIES, INC., and<br>ASHLEY L. COOK,<br>   *Defendants.* | §§§§§§§§§§§§   Civil Action No. 3:21-cv-2025<br><br>      JURY TRIAL DEMANDED |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Dr. Reuben Setliff ("**Plaintiff**" or "**Setliff**"), submits the following *Original Complaint* against Defendants Zoccam Technologies, Inc. ("**Zoccam**") and Ashley L. Cook ("**Cook**"), and would respectfully show the Court as follows:

### SUMMARY OF THE ACTION

1. This lawsuit involves an elderly man who invested over $1.2 million dollars to purchase stock in a struggling startup (Zoccam) when it was desperate for funding. Zoccam is controlled by a lawyer (Defendant Cook) who has consistently ignored the protections provided to shareholders by the Texas Business Organization Code. In this manner, Defendants have attempted to strip Setliff of his rights as a preferred shareholder.

2. In this action, Setliff seeks a declaratory judgment regarding the validity and interpretation of the contractual and corporate documents under which Zoccam has purported to convert, or exchange, his Series A Preferred Stock in Zoccam to Class B Common Stock and his Common Stock in Zoccam into Class A Common Stock. Plaintiff avers Defendants' actions were not only ineffective as a matter of law, but further, that the attempt to exchange or convert the stock is an unauthorized and *ultra vires* transaction which violates Zoccam's own Certificate of Formation, as well as the relevant statutory provisions, including the minimum and class voting requirements imposed by Sections 21.364(c) and (d) of the Texas Business Organizations Code ("**TEX. BUS. ORG. CODE**").

3. Further or alternatively, Setliff's consent, if any, to Zoccam's actions was procured by Zoccam through fraudulent representations and by omissions of material fact. Plaintiff therefore seeks declaratory and injunctive relief, or alternatively, damages, and reformation in respect of the fraudulently-induced transactions. Plaintiff also sues to collect on a long overdue, $100,000, promissory note made by Zoccam to Setliff.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to Section 27(a) of the Securities Exchange Act of 1934 (the "**Exchange Act**") [15 U.S.C. § 78aa(a)]. Defendants directly or indirectly made use of the means or instrumentalities of interstate commerce or the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

5. Further or in the *alternative*, the Court also has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because: (i) there is complete diversity of citizenship between Plaintiff and Defendants, and (ii) the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1367 provides supplemental jurisdiction of this Court over all Texas state law claims asserted, as they are so related that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is proper in this District pursuant to Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)] because the transactions, acts, practices, and courses of business constituting violations of both the federal and state securities laws occurred within this District. Further, Zoccam's principal place of business is in this District, Cook resides in this District, and both Defendants transact business within this District.

## PARTIES

7. Setliff, age 84, is an individual residing in the State of Colorado and may be served with any further pleadings or documents in this lawsuit through the undersigned counsel.

8. Defendant Zoccam is a corporation which is organized and existing under the laws of the State of Texas, with its principal place of business in Dallas, Texas. Zoccam may be served with process through its registered agent, Ashley L. Cook, P.C., of 5950 Berkshire Lane, Ste. 1200 Dallas, TX 75225, or wherever else she may be found.

9. Defendant Cook is an attorney licensed to practice law in the State of Texas who resides in the

State of Texas and may be served with process at her place of residence, 3801 Southwestern, Dallas, TX 75225, or wherever else she may be found.

## FACTUAL BACKGROUND

**A.      Zoccam, Cook, and the 2015 Certificate of Formation**

10. Zoccam was originally organized in 2014 by Cook as Zoccam Technologies, LLC, a Texas limited liability company. Zoccam is in the business of providing real estate closing services through a proprietary and patented software application.

11. Cook is the CEO of Zoccam. Cook is also the majority shareholder of Zoccam's Common Stock, and is a minority shareholder of Zoccam's Series A Preferred Stock.

12. In June 2015, Zoccam was converted into a corporation by Cook, apparently in connection with an investment by a group of investors (the "**Bold Investors**"). Thereafter, on or around June 25, 2015, Zoccam filed a certificate of formation (the "**2015 Certificate of Formation**") with the Texas Secretary of State. The 2015 Certificate of Formation authorized 500,000 shares of Series A Preferred Stock (the **"Series A Preferred Stock"**) and 3,500,000 shares of Common Stock (the **"Common Stock"**). On information and belief, all 500,000 shares of Series A Preferred Stock were issued to the Bold Investors. The 2015 Certificate of Formation sets forth the rights of the holders of Zoccam's Series A Preferred Stock and Common Stock.

**B.      The Settlement with the Bold Investors**

13. In 2016, Zoccam filed suit against the Bold Investors.  Subsequently, Zoccam entered into a settlement with the Bold Investors, who were the holders of all outstanding Series A Preferred Stock (the "**Bold Settlement**").  The Series A Preferred Stock was reacquired by Zoccam as part of the Bold Settlement.

**C.      Setliff's Purchase of the Series A Preferred Stock and Common Stock**

14.     In late 2016, Cook was introduced to Setliff, who thereafter solicited him to purchase stock in Zoccam, including Zoccam Series A Preferred Stock. Setliff subsequently purchased 200,000 shares of Series A Preferred Stock (40% of all of the outstanding Series A Preferred Stock) and also purchased the 718,357 shares of Common Stock in a series of transactions.

15.     Any shares issued by Zoccam are securities within the meaning of the terms of Article 581-4(A) of the Texas Securities Act, TEX. REV. STAT. ANN. ART 581-4 (the "**Texas Securities Act**"), the

Securities Act of 1933, and the Exchange Act.

16. By January 2018, Setliff had paid for $1,227,000 worth of Zoccam stock (the **"Setliff Stock"**) as follows:

(i) 200,000 shares of Series A Preferred Stock for $200,000; and

(ii) 718,357 shares of Common Stock for $1,027,000.

17. Despite numerous requests by Setliff for the issuance of his Common Stock and Series A Preferred Stock certificates, Zoccam failed and refused to issue the certificates. Instead, Cook and Zoccam took the position Setliff was a lender, rather than a shareholder. Setliff was forced to threaten litigation to obtain his certificates and corresponding ownership rights (the "**2018 Dispute**").

### D.  Settlement of the 2018 Dispute

18. On or around May 25, 2018, Setliff, Zoccam and Cook settled the 2018 Dispute and executed a settlement agreement (the "**2018 Settlement Agreement**") and a Stock Purchase Confirmation Agreement (the "**Stock Purchase Confirmation Agreement**"), the latter of which was executed contemporaneously with the 2018 Settlement Agreement and fully incorporated therein by reference. The 2018 Settlement Agreement and Stock Purchase Confirmation Agreement comprise a single agreement for all purposes (the "**Settlement Agreement**").

19. Under the Settlement Agreement, Zoccam and Cook acknowledged and recognized Setliff's purchase of the Setliff Stock from Zoccam. The Settlement Agreement and the 2015 Certificate of Formation establish the rights of the Series A Preferred Shareholders.

20. For example, Section 4 of the Stock Purchase Confirmation Agreement provides:

> *Conversion and Redemption.* Company and Purchaser agree that the Series A Preferred Stock shall not be converted into common stock, or put or called for redemption prior to the earlier of (i) the conclusion of an underwritten public offering, or (ii) the consummation of a merger, consolidation or sale of all or substantially all of the Company's assets, or (iii) five years.

21. There has been no underwritten public offering of Zoccam stock, or any merger, consolidation, or sale of substantially all of Zoccam's assets. Thus, under Stock Purchase Confirmation Agreement, Zoccam could not convert the Series A Preferred Stock until May 24, 2023 at the earliest.

22. Further, Section 4.7 of the 2018 Settlement Agreement provided that the parties would

cooperate and execute any and all further documents that may be necessary in order to carry out and effectuate the terms of the Settlement Agreement, including, without limitation, consents, resolutions, or votes of directors or shareholders.

**E.     The 2018 Board Meeting**

23. Under the Settlement Agreement, Setliff became a member of the Zoccam Board of Directors. On November 9, 2018, during a meeting of the Board of Directors of Zoccam (the "**2018 Board Meeting**") which Setliff attended, Zoccam, through its management, outside counsel, and accounting firm, advised the Board that in order to pass through operating losses to its shareholders, it would be necessary for Zoccam to elect Subchapter S tax treatment pursuant to 26 U.S.C. § 1361, *et seq*. Zoccam further represented that in order to elect Subchapter S treatment, Zoccam could issue only common stock, and thus, that Setliff's Series A Preferred Stock would have to be converted into common stock. It was also represented to the Board the Subchapter S Election would necessitate a restatement of the 2015 Certificate of Formation (the "**Proposed Restatement**"), although neither the form of the Proposed Restatement, nor any details of the contents of that amended document, were presented at the 2018 Board Meeting.

24. Setliff objected to any change in the Certificate of Formation and the exchange of Series A Preferred stock if it would affect his rights as a preferred shareholder, including those obtained under the Settlement Agreement. To assuage Setliff's concerns, Zoccam represented that the Proposed Restatement would not affect any of Setliff's rights under the Settlement Agreement. Zoccam further represented the Proposed Restatement could be drafted in a way that would allow Zoccam to make a Subchapter S election to pass through existing losses, and at the same time, preserve Setliff's rights under the Settlement Agreement.

25. With such assurance, the condition that the Proposed Restatement would not affect any rights under the Settlement Agreement was incorporated into the Board's motion to approve Zoccam's request to move forward with drafting of the Proposed Restatement and Subchapter S election. In reasonable reliance on the inclusion of this condition, and with the promise of pass through of Zoccam's existing losses, Setliff and the other members of the Board approved proceeding with the drafting of the Proposed Restatement.

26. However, notwithstanding Zoccam's representations during the 2018 Board Meeting, Zoccam knew, or was reckless in not knowing, that it would not be possible to both preserve Setliff's rights under the Settlement Agreement and make a Subchapter S election. Moreover, Zoccam also knew, or was

reckless in not knowing, that losses could not be passed through to Zoccam's shareholders until the Restatement had been filed with the Texas Secretary of State, and the written consent of all Zoccam shareholders to the Subchapter S election had been obtained.  Zoccam failed to inform Setliff of these facts, and in the case of the preservation of rights under the Settlement Agreement, in fact represented the opposite to be true.

### F.     Events Subsequent to the 2018 Board Meeting

27. Following the 2018 Board Meeting, Zoccam drafted the Proposed Restatement under which Setliff and the other Series A Preferred Shareholders would be required to tender their Series A Preferred Stock in exchange for Class B Common Stock of Zoccam and their Common Stock for Class A Common Stock of Zoccam (the "**Proposed Stock Exchange**").  Zoccam and Setliff communicated regarding the form of the Proposed Restatement, and on or about February 5, 2019, Zoccam advised Setliff that "you will see that [Cook] has agreed to all of the changes you requested," and provided a copy of the Proposed Restatement. Following this exchange, no further substantive discussions between Setliff and Zoccam took place regarding the Proposed Restatement until well after August 29, 2019.

28.  Nevertheless, on or about August 26, 2019, Zoccam transmitted a form of the Restatement to the Texas Secretary of State for filing. On August 29, 2019, the Texas Secretary of State formally accepted the filing (the "**2019 Filed Restatement**"). The 2019 Filed Restatement was NOT what Zoccam had sent to Setliff in February 2019. Indeed, there are significant and material differences between the February 2019 Proposed Restatement and the 2019 Filed Restatement, most notably: (a) the number of shares Zoccam could issue had been significantly increased; (b) the right of the Class B Common Shareholders to approve the issuance of additional Class A Common Stock had been eliminated; and (c) the number of votes  allocated to each of the Board members selected by the Class A and Class B shareholders was changed to the detriment of the Class B shareholders by giving two votes to each of the Board members selected by the Class A shareholders, and only one vote each to the Board members selected by the Class B shareholders.  These unilateral and undisclosed material changes negate any alleged consent Setliff ever gave to the Proposed Restatement and Proposed Stock Exchange.

29. Moreover, no meeting of the Board was noticed or held to approve the 2019 Filed Restatement prior to its transmittal to the Texas Secretary of State.  Likewise, no meeting of the shareholders was noticed or held to approve the 2019 Filed Restatement. Zoccam later produced a purported shareholder's resolution dated April 9, 2019, signed by Cook and another Zoccam shareholder, Wayne Norton, and

purporting to evidence shareholder approval of the 2019 Filed Restatement. However, Cook and Norton were not acting as members of the Board, did not purport to approve the 2019 Filed Restatement on behalf of the Board (nor could they have), nor did they represent the holders of 67% the Series A Preferred Stock. Indeed, on information and belief, no Zoccam shareholder other than Cook and Norton were even informed of the resolution before it was signed. Cook, as a licensed attorney and as Chief Executive Officer of Zoccam, knew, or was reckless in not knowing, the April 9, 2019 shareholder resolution was not a valid or effective corporate approval of the 2019 Filed Restatement.

**G. The Requirements of TEX. BUS. ORG. CODE § 21.364(c) and (d)**

30.  TEX. BUS. ORG. CODE § 21.364(d) requires separate voting by a class or series of shares of a corporation for approval of an amendment to the certificate of formation that would result in an exchange, reclassification, or cancellation of all or part of the shares, a class or series. Section 21.364(d) does not authorize a corporation to eliminate this requirement in its certificate of formation. The 2019 Filed Restatement effected an exchange or cancellation of the Series A Preferred Stock. The Series A Preferred Stock was entitled to vote as a separate class on the 2019 Filed Restatement.

31.  TEX. BUS. ORG. CODE § 21.364(c) provides that if a class or series of shares is entitled to vote as a class or series on a fundamental action, the vote required for approval of the action by the shareholders is the affirmative vote of the holders of at least 67% of the outstanding shares in each class or series of shares entitled to vote on the action as a class or series. Section 21.364(c) does not authorize a corporation to eliminate this requirement in its certificate of formation. The 2019 Filed Restatement required the approval of holders of two-thirds of the Series A Preferred Stock voting as a class.

32.  TEX. BUS. ORG. CODE § 21.364(a) defines a "fundamental action" as including an amendment of a certificate of formation which materially alters the rights of a particular class of shareholders. The 2019 Filed Restatement was a "fundamental action".

33.  These provisions exist to prevent precisely the types of actions Defendants have attempted to take in this case.

34.  Zoccam did not comply with the requirements of the TEX. BUS. ORG. CODE § 21.364(c) and (d) in filing the 2019 Filed Restatement. Zoccam did not attain the affirmative vote of two-thirds of the Series A Preferred Stock. Approval was not possible without Setliff's vote as he held 40% of the outstanding Series A Preferred Stock.

**H.  The 2020 Motion to Ratify**

35. The 2019 Proposed Restatement of the 2015 Certificate of Formation was a "fundamental action" within the meaning TEX. BUS. ORG. CODE § 21.364 and required the affirmative vote of the holders of at least two-thirds of each class of the outstanding shares entitled to vote on the fundamental action.

36. Moreover, Articles 11 and 3(B) in Zoccam's 2015 Certificate of Formation require more than a simple majority vote of the Series A Preferred Shareholders of Zoccam in order to effect an amendment to the 2015 Certificate of Formation.

37. Notwithstanding, on November 19, 2020, during a Board meeting conducted virtually, a motion and resolution was presented to the Board styled "Motion and Resolution to Ratify the 2019 Certificate of Formation" (the "**Motion to Ratify**").  On information and belief, the Motion to Ratify was not presented to the Board in an agenda prior to that meeting, nor were the shareholders of Zoccam notified of same.

38. Contrary to the requirements of TEX. BUS. ORG. CODE § 21.364, on November 19, 2020, the Board purported to vote to ratify the 2019 Filed Restatement. Setliff opposed this improper ratification of the 2019 Filed Restatement.

39. Zoccam claims to have obtained consent on the Motion to Ratify from 69% of the holders of the Common Stock and 60% of the holders of the Series A Preferred Stock.  However, Zoccam failed to obtain the two-thirds approval of the Series A Preferred Stock required to take the "fundamental action" and amend the 2015 Certificate of Formation. Notwithstanding this failure, Zoccam purported to pass the Motion to Ratify in violation of the 2015 Certificate of Formation and TEX. BUS. ORG. CODE § 21.364.

40. Zoccam has never provided Setliff with a stock certificate for the Class A Common Stock or the Class B Common Stock it purportedly issued as part of the Motion to Ratify and the 2019 Filed Restatement. Setliff remains a Series A Preferred Shareholder and a Common Stock Shareholder in Zoccam for all of the reasons set forth herein.

41. The 2019 Filed Restatement and related issuance of the Class A and Class B Common Stock was not authorized, was invalid, and void from its inception. Plaintiff avers that Zoccam cannot convert, exchange, or otherwise change the nature of his outstanding Common Stock and Series A Preferred Stock.

**I.  The Purported Subchapter S Election**

42. Under 26 U.S.C. § 1361(b)(1)(D), an S Corporation may not have classes of stock having

different rights to dividends or distributions on liquidation. Notwithstanding Zoccam's representations to the contrary, this could not be accomplished by Zoccam without a restatement of its 2015 Certificate of Formation that substantially altered Setliff's rights as a holder of Series A Preferred Stock.

43. Further, under 11 U.S.C. § 1362(a)(2), an election under Subchapter S shall be valid only if <u>all</u> persons who are shareholders in such corporation, on the day on which such election is made, consented <u>in writing</u> to such election and provided evidence of their consent in a form designated by, and filed with, the Internal Revenue Service.

44. Zoccam did not have Setliff's written consent to the Subchapter S election pursuant to 11 U.S.C. § 1362(a)(2), and on information and belief, also lacked the written consent of numerous other Zoccam shareholders.

**J. Invalidity of Defendants' Actions**

45. By reason of the matters set out herein, the 2019 Filed Restatement is invalid and of no effect, or alternatively is voidable, for the following reasons:

(a) Any exchange or conversion of the Setliff Stock violates the Settlement Agreement, including stripping Setliff of his right to cumulative preferred dividends;

(b) Any exchange or conversion was involuntary and was an *ultra vires* act without any Board or effective shareholder approval;

(c) Zoccam failed to comply with its own voting requirements and TEX. BUS. ORG. CODE 21.364 (c) and (d); and

(d) Setliff's purported consent, if any, to a restatement including during the 2018 Board Meeting was procured by the fraudulent conduct pleaded herein.

46. Zoccam's refusal to acknowledge the continued validity of Setliff's Series A Preferred Stock and his Common Stock in Zoccam is an irreparable injury to Setliff for which there is no adequate remedy at law.

47. Setliff has never tendered his Series A Preferred Stock or his Common Stock in Zoccam for conversion or exchange. Setliff remains the holder of his Series A Preferred Stock and Common Stock.

**K. False Statements and Omissions Made to Setliff**

48. During the events leading up to the filing of the 2019 Filed Restatement, Zoccam made the following material misrepresentations and omissions of fact to Setliff:

(a) Zoccam misrepresented that corporate losses for 2018 could be passed through to Setliff and the other Zoccam shareholders if the company converted to tax treatment as a Subchapter S corporation, a misrepresentation Zoccam reinforced and reiterated by sending Setliff a Form K-1 in 2018 which included such losses;

(b) Zoccam misrepresented Setliff's rights under the Settlement Agreement would be preserved as part of the plan for Zoccam to convert to Subchapter S status;

(c) Zoccam failed to disclose material and unilateral changes between the February 2019 Proposed Restatement and the 2019 Filed Restatement;

(d) Zoccam failed to disclose that it would file the 2019 Filed Restatement with the Texas Secretary of State without disclosing that document to the Board and obtaining its approval;

(e) Zoccam failed to disclose that it would file the 2019 Filed Restatement with the Texas Secretary of State without obtaining a 2/3 affirmative vote of the Series A Preferred shareholders; and

(f) Zoccam failed to disclose that it had not sought, and had not obtained, the written consent of all Zoccam shareholders to the Subchapter S election.

49. If these material facts had been known to Setliff, he would not have: (a) voted in favor of allowing Zoccam to further proceed with preparation of the Proposed Restatement, (b) participated in that process, or (c) have voted for the 2019 Filed Restatement, even if it been presented for approval to the Board or all Series A Preferred shareholders (which it was not).

50.     As a result of Setliff's reliance on Zoccam's material misrepresentations and omissions of fact, if the 2019 Filed Restatement is effective, Setliff suffered injury, specifically loss of voting, dividend, liquidation and other valuable rights, including but not limited to:

(a) the Series A Preferred Shareholders' existing rights of exchange and conversion provided for in the 2015 Certificate of Formation;

(b) the Series A Preferred Shareholders' loss of their entitlement to a liquidation preference, as defined in the 2015 Certificate of Formation, in the event of a sale, merger or liquidation of Zoccam;

(c) the elimination of a 12% cumulative annualized dividend on the Series A Preferred Stock (such entitlement is not dependent upon profitability or declaration of a dividend by the Board);

(d) the Series A Preferred Shareholders' loss of the right, in the event of a Redemption Default as

defined in the 2015 Certificate, to control the vote of the Board (the 2015 Certificate of Formation specified that upon a Redemption Default, the two Directors elected by the holders of the Series A Preferred Shareholders would be entitled to five votes per Director, while the three directors elected by the holders of Common Stock would have two votes per Director);

(e) the loss of Setliff's ability to prevent dilution of his ownership interest in Zoccam due to the unilateral increase in the number of Class A Common shares that Zoccam could issue, and by the elimination of the right of the Class B shareholders to restrict the issuance of such additional shares; and

(f) the increase of the voting power of the Board members selected by the shareholders of the Class A Common Stock from one vote to two votes.

**L.    Default under the Setliff Note**

51.     By a promissory note dated May 24, 2018 (the "**Setliff Note**"), Setliff loaned Zoccam the sum of $100,000 (the "**Principal Sum**"), which was repayable on May 23, 2019 (the "**Maturity Date**"). The Setliff Note provides that interest shall accrue at an annual noncompounded rate of 9% (calculated on a 365-day year from Date of the Setliff Note).

52. The Setliff Note also provides that an "Event of Default" shall exist if, *inter alia*, Zoccam failed to pay Setliff within five days of the Maturity Date, whereupon a default compound interest rate of 18% becomes due and payable.

53. Further, the Setliff Note provides that Zoccam will promptly pay all reasonable costs, fees and expenses paid or incurred by Setliff incident to the collection of the amounts that become due hereunder, including the reasonable attorney's fees and expenses of counsel to Setliff.

54. An Event of Default has occurred because Zoccam failed to repay the Principal Sum under the Setliff Note, or any part thereof, by the Maturity Date of May 23, 2019.  As of the date of this lawsuit, no payment has been made by Zoccam on the Setliff Note.

## CAUSES OF ACTION

### FIRST CLAIM
### DECLARATORY JUDGMENT
### Federal Declaratory Judgment Act, 28 U.S. CODE § 2201, *et seq.*
### (Against Zoccam)

55. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

56. Plaintiff brings this cause of action under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.,* and seeks declarations of the Court that, as follows:

(a) The 2019 Filed Restatement is of no force and effect for the reasons set forth herein and, accordingly, Setliff's ownership in, and rights as a holder of, the Series A Preferred Stock and Common Stock in Zoccam remains unaffected;

(b) Under the 2015 Certificate of Formation and Settlement Agreement, no involuntary exchange or conversion of the Series A Preferred Stock can be accomplished by Zoccam, absent Setliff's consent, until at least May 24, 2023;

(c) Zoccam's attempt to convert or exchange the Series A Preferred Stock into Class B Common Stock before May 2023 violates the Settlement Agreement;

(d) Under the 2015 Certificate of Formation and TEX. BUS. ORG. CODE § 21.364:

　　(i) Any fundamental action by taken Zoccam requires the approval of 67% of the holders of the Series A Preferred Stock; and

　　(ii) By reason of Zoccam's failure to achieve such a supermajority, the Motion to Ratify was ineffective for the reasons set forth herein;

(e)  Zoccam's attempt to elect Subchapter S tax treatment was not made with the written consent of all shareholders as required by 26 U.S.C. § 1362 and is therefore ineffective and invalid;

(f) Setliff has not surrendered or otherwise tendered his Common Stock and Series A Preferred Stock in Zoccam, and is not required to do so;

(g) The 2019 Filed Restatement is a nullity by reason of the following:

　　(i) it violates the Settlement Agreement;

　　(ii) the Board and the Shareholders did not give their approval to the 2019 Filed Restatement in the manner prescribed by law; and

　　(iii) it violates the 2015 Certificate of Formation; and

(h) Further, or alternatively, by reason of any Class A Common Stock and Class B Common Stock

being issued in violation of the 2015 Certificate of Formation, any such stock was void from its inception and Setliff remains a holder of Series A Preferred Stock and Common Stock.

57. An active case or controversy exists between the Plaintiff and Defendants because, by reason of the wrongful conduct pleaded herein, Zoccam has wrongly attempted to convert or exchange Setliff's Common Stock and Series A Preferred Stock, and therefore eliminating Setliff's voting, dividend, liquidation, and other valuable rights by way of the 2019 Filed Restatement and the Motion to Ratify which not only failed to comport with the requirements of the 2015 Certificate of Formation and Settlement Agreement, but also violates the voting requirements of TEX. BUS. ORG. CODE § 21.364. Further, there is an active case or controversy concerning the terms and effect of the Settlement Agreement.

58. Plaintiff seeks declarations of the Court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, as well as his costs and attorney's fees incurred in obtaining same.

## SECOND CLAIM
## BREACH OF CONTRACT – SETTLEMENT AGREEMENT
**(Against All Defendants)**

59. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

60. The Settlement Agreement is a valid and enforceable contract between Setliff, Zoccam and Cook.

61. As set forth above, by Article 4.7 of the Stock Purchase Confirmation Agreement, Zoccam was prohibited from exchanging or converting the Series A Preferred Stock until May 24, 2023.

62. Without prejudice to the contention that the 2019 Filed Restatement was wholly invalid and ineffective, if the 2019 Filed Restatement is deemed effective, it violated the clear prohibitions upon exchange or conversion set forth in the 2015 Certificate of Formation and the Settlement Agreement.

63. Defendants also engaged in *ultra vires* activities by acting outside the scope of, and in dereliction of, the voting procedures established by the 2015 Certificate of Formation and TEX. BUS. ORG. CODE § 21.364.

64. By reason of these matters, Defendants have violated the Settlement Agreement. Setliff has been injured by these breaches of contract pleaded herein and is entitled to damages, and his attorney's fees under Chapter 38 of the Texas Civil Practices & Remedies Code, in an amount exceeding the

jurisdictional limits of this Court.

## THIRD CLAIM
## BREACH OF CONTRACT – 2018 NOTE
### (Against Zoccam)

65. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

66. An Event of Default has also arisen under the Setliff Note.  Specifically, all principal and interest on the Note was to be repaid on or before May 23, 2019.  No payment on the Note has ever been made.

67. As a direct and proximate result of Zoccam's conduct, Setliff has incurred and will continue to incur losses, costs, and expenses, including attorney's fees and costs associated with the prosecution of this action, and for which Setliff hereby sues to recover.

68. Setliff is entitled to recover from Zoccam the unpaid portion of the Principal Sum of the Setliff Note being $100,000, non-compounded interest accrued thereon before the Maturity Date and interest compounded at the default rate of 18% following the event of default, together with his reasonable and necessary attorney's fees and other expenses under both the terms of the Setliff Note and Chapter 38 of the Texas Civil Practices & Remedies Code.

## FOURTH CLAIM
## SECURITIES FRAUD
### Section 10(b) of the Exchange Act and SEC Rule 10b-5
### (Against All Defendants)

69. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

70. Further, or in the *alternative*, and without prejudice to the foregoing, if the 2019 Filed Restatement was effective to convert or exchange Setliff's Common Stock and Series A Preferred Stock, the conversion or exchange was induced or procured by fraud.

71. As pleaded herein, Defendants, with scienter, by use or means or instrumentalities of interstate commerce or of the mails, in connection with the offer or sale of securities:

(a) employed devices, schemes or artifices to defraud;

(b) obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; or

(c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers of the securities offered and sold by Defendants.

72. Plaintiff justifiably relied on the misstatements and omissions of material facts made by Defendants. Plaintiff would not have exchanged his stock but for Zoccam's misstatements and omissions.

73. As a result of the misstatements and omissions, Plaintiff has been injured and the misstatements and omissions were a proximate cause of Plaintiff's damages.

74. By reason of the actions alleged herein, Defendants violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240 .10b-5].

**FIFTH CLAIM**
**SECURITIES FRAUD**
**Texas Securities Act, TEX. REV. STAT. ART. 581-33**
**(Against All Defendants)**

75. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

76. Further, or in the *alternative*, and without prejudice to the foregoing, if the 2019 Filed Restatement was effective to convert or exchange Setliff's Common Stock and Series A Preferred Stock, the conversion or exchange was induced or procured by fraud by Zoccam.

77. Defendants violated the Texas Securities Act, TEX. REV. STAT. ANN ART. 581-33, by making false statements and/or omissions of material fact concerning the Class B Common Stock and the voting rights, dividend, and liquidation rights of that stock, as detailed herein. Additionally, Defendants misrepresented and failed to disclose material facts to Setliff regarding Zoccam's ability to elect a Subchapter S election and take prior years' losses.

78. As pleaded above, if the 2019 Filed Restatement was effective, then it was a "sale" of securities by Zoccam to Plaintiff by way of false representations and untrue statements or omissions of material facts.

79. But for Defendants' false statements and omissions of material facts, Plaintiff would not have entered into the securities transaction described above.

80. Under the Texas Securities Act, Zoccam is liable <u>irrespective</u> of whether it intended to make the false statements or whether Setliff relied upon them. Setliff's claim in the Complaint is therefore based on principles of strict liability and negligence.

81. By reason of the matters alleged herein, Defendants have violated TEX. REV. STAT. ANN. ART 581-33.

82. Further, as a result of Defendants' violations of the Texas Securities Act, Plaintiff was required to hire undersigned counsel to prosecute this action. Under the provisions of the Texas Securities Act, Plaintiff is entitled to recover their reasonable and necessary attorney's fees as pleaded herein.

## SIXTH CLAIM
## STATUTORY FRAUD
### Texas Business & Commerce Code, TEX. BUS. & COM. CODE § 27.01, *et seq.*
### (Against Zoccam)

83. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

84. Further, or in the *alternative*, if the 2019 Filed Restatement was effective to convert or exchange Setliff's Common Stock and Series A Preferred Stock, the conversion or exchange was induced or procured by the fraud of Zoccam.

85. Zoccam, acting through its agents, made the false statements concerning the 2019 Filed Restatement and should have known that the statements were false or recklessly disregarded the truth.

86. Zoccam, acting through its agents, made the misrepresentations detailed herein with the intent of inducing Plaintiff to exchange his Common Stock for Class A Common Stock and his Series A Preferred Stock for the Class B Common Stock which contained invalid, diluted, or diminished rights.

87. Assuming that the Court finds that Setliff exchanged his stock, he did so in reliance on Zoccam's false statements of material fact or omissions of material fact, and would not have exchanged his stock but for Zoccam's false statements and omissions.

88. By reason of the false statements and omissions, Plaintiff has been injured and has suffered damages which are within the jurisdictional limits of the Court.

## SEVENTH CLAIM
## COMMON LAW FRAUD
### (Against Zoccam)

89. Plaintiff incorporates by reference the foregoing allegations as though fully set forth herein.

90. Further, or in the *alternative*, and without prejudice to the foregoing, if the 2019 Filed Restatement was effective to convert or exchange Setliff's Common Stock and Series A Preferred Stock, the conversion or exchange was induced or procured by fraud committed by Zoccam.

91. Zoccam, acting through its agents, made false statements and omitted material facts concerning the validity and voting rights of the Class B Common Stock and its ability to elect Subchapter S status as a corporation as part of the 2019 Filed Restatement. , Zoccam knew that the statements were false and the omissions were material or alternatively recklessly disregarded the truth.

92. Zoccam intended to induce the Plaintiff to acquire the Class A and Class B Common Stock based on these representations and omissions.

93. Assuming Setliff exchanged his Common Stock and his Series A Preferred Stock, he did so in reasonable reliance on Zoccam's false statements and omissions of material fact and would not have exchanged the stock but for the false statements and omissions.

94. Plaintiff has been injured by the false statements and omissions of material facts concerning the validity, voting, and liquidation rights of the Class B Common Stock.

### EIGHTH CLAIM
### NEGLIGENT MISREPRESENTATION
### (Against Zoccam)

95. Plaintiff incorporates by reference the foregoing allegations as though set forth herein.

96. As detailed herein, Zoccam made negligent false representations of fact concerning the validity, voting, dividend, and liquidation rights of the Class B Common Stock, and the Subchapter S election. The false representations were made in the course of Zoccam's business and in a transaction in which it had a pecuniary interest.

97. Zoccam failed to exercise reasonable care in making the representations.

98. If Plaintiff is found to have surrendered or exchanged his Series A Preferred Stock for the Class B Common Stock, he did so in justifiable reliance on the representations of Zoccam.

99. Plaintiff has been injured by the negligent representations concerning the voting, dividend, and liquidation rights of the Class B Common Stock and the Subchapter S election.

### EQUITABLE RELIEF

100. Plaintiff incorporates by reference the foregoing allegations as though set forth herein.

**A.    Request for Permanent Injunction**

101. Plaintiff brings this suit for permanent injunctive relief pursuant to the provisions of TEX.

BUS. ORG. CODE § 20.002(c)(1) and (d).

102. Plaintiff asks the Court to enter a permanent injunction (the "**Permanent Injunction**") enjoining Zoccam from:

(a) consummating or attempting to consummate any further transactions which are inconsistent with the express provisions of the 2015 Certificate of Formation, or the Settlement Agreement, or which otherwise violate the two-thirds voting requirements of TEX. BUS. ORGS. CODE § 21.364 (c) and 21.364(d); and

(b) attempting to take fundamental action without the approval of two-thirds of the holders of the Series A Preferred Stock required by TEX. BUS. ORG. CODE § 21.364 (c) and 21.364(d).

103. Plaintiff respectfully requests that the Court set the request for a Permanent Injunction for a full trial on the merits and, after trial, issue a Permanent Injunction enjoining Zoccam as set forth above.

**B.      Reformation of the 2019 Filed Restatement**

104. Further or in the *alternative*, Plaintiff seeks reformation of the 2019 Filed Restatement to comply with the terms of the Settlement Agreement.

## ACTUAL DAMAGES

105. In addition to the declaratory and equitable relief sought herein, Zoccam's fraudulent misrepresentations, negligence, and breach of contract, pleaded above, were the proximate and producing cause of direct, actual, consequential, and incidental damages in a sum which is within the jurisdictional limits of the Court which is to be proven at trial.

## EXEMPLARY DAMAGES

106. By reason of Zoccam's commission of the acts described herein involving fraud, as those terms are defined by Chapter 41 of the Texas Civil Practice and Remedies Code, TEX. CIV. PRAC. & REM. CODE, Plaintiff is entitled to, and requests, an award of exemplary damages in an amount to be determined by the trier of fact.

## CONTROL AND PERSONAL LIABILITY

107. As pleaded above, at all material times, Cook was a control person of Zoccam within the meaning of TEX. REV. STAT. ART. 581-33F and Section 20(a) of the Exchange Act [15 U.S.C. § 78t], in that she exercised control over the operations of Zoccam in general and had the power or ability to control

the transaction upon which the violations complained of herein were predicated. Furthermore, as pleaded herein, Cook, has the actual power and influence over Zoccam, and in fact, induced or participated in and directed the violations complained of herein. In the circumstances, Cook may be held jointly and severally liable for the actions of Zoccam under the Texas Securities Act and the Exchange Act.

## ATTORNEY'S FEES

108. Plaintiff is also entitled to recover reasonable and necessary attorneys' fees on the following bases: (a) TEX. REV. STAT. ANN. ART. 581; (b) 28 U.S. CODE § 2201-02; (c) TEX. BUS. & COM. CODE § 27.01; (d) TEX. BUS. ORG. CODE § 21.222; (e) the Setliff Note; and (f) TEX. CIV. PRAC. & REM CODE § 38.001, for the reasons plead herein.

## CONDITIONS PRECEDENT

109. All conditions precedent to each and every claim or cause of action set forth above have occurred, been met, been waived, or otherwise been satisfied.

## JURY DEMAND

110. Plaintiff demands a jury trial on all issues.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Defendants for the following relief:

(1) Declarations of the Court as set forth above.

(2) Permanent injunctive relief under TEX. BUS. ORG. CODE § 20.002.

(3) Specific Performance of the Settlement Agreement by requiring Zoccam to execute such further agreements as may be necessary to give effect to the Settlement Agreement.

(4) Rescission, reformation, or cancellation of the 2019 Filed Restatement and reinstatement of Setliff's Series A Preferred Stock.

(5) Further or alternatively, actual, consequential, incidental, and exemplary damages.

(6) Reasonable and necessary attorney's fees, expert's fees, and costs of the suit.

(7) Pre-judgment and post-judgment interest as provided by law from the date of judgment until paid.

(8) Such other and further relief to which Plaintiff may be justly entitled.

Dated: August 26, 2021

        Respectfully submitted,

        **GLAST, PHILLIPS & MURRAY, P.C.**

By:  */s/ David W. Dodge*
       **David W. Dodge**
       State Bar No. 24002000
       DDodge@GPM-Law.com
       **Matthew E. Furse**
       State Bar No. 24105032
       MFurse@GPM-Law.com
       14801 Quorum Dr., Ste. 500
       Dallas, Texas 75254-1449
       972-419-8300 (Telephone)
       972-419-8329 (Fax)
       *Counsel for Plaintiff,*
       **Dr. REUBEN SETLIFF**