UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. REUBEN SETLIFF, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-2025-B |
| | § | |
| ZOCCAM TECHNOLOGIES, INC., and | § | |
| ASHLEY L. COOK, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Ashley L. Cook ("Cook")'s and Zoccam Technologies, Inc. ("Zoccam")'s (collectively "Defendants") motions to dismiss (Docs. 19, 21) Dr. Reuben Setliff ("Setliff")'s Amended Complaint (Doc. 16) for failure to state a claim. For the following reasons, the Court **GRANTS** Cook's Motion and **GRANTS IN PART** and **DENIES IN PART** Zoccam's Motion.

## I.

## BACKGROUND

*A.    Factual Background*[1]

This is a securities dispute concerning Setliff's loss of various shareholder rights due to the exchange or conversion of his preferred stock to common stock.  Doc. 16, Am. Compl., ¶¶ 1–3. Zoccam "provid[es] real estate closing services through a proprietary and patented software application." *Id.* ¶ 12. In 2015, Zoccam converted from a limited liability company into a corporation by "fil[ing] a certificate of formation (the '2015 Certificate of Formation') with the Texas Secretary

---

[1] The Court draws the following factual account from Setliff's Amended Complaint (Doc. 16).

of State." *Id.* ¶ 13. The 2015 Certificate of Formation "authorized [the issuance of] 500,000 shares

of Series A Preferred Stock . . . and 3,500,000 shares of Common Stock." *Id.*

In 2016, Setliff invested $1,227,000 in Zoccam, but Cook, Zoccam's CEO, "refused . . . to

issue [him] share certificates . . . or . . . recognize him as a shareholder." *Id.* ¶ 15. Setliff "threatened

to file suit" and Setliff, Zoccam, and Cook "executed a settlement agreement (the 'Settlement

Agreement') and a Stock Purchase Confirmation Agreement (the 'Stock Purchase Agreement')."[2]

*Id.* ¶¶ 16–17. Under the Settlement Agreement, Setliff received 200,000 shares of Series A Preferred

Stock; 718,357 shares of Common Stock; and a seat on the Zoccam's Board of Directors. *Id.* ¶¶ 18,

23. The ownership of the Series A Preferred Stock gave Setliff a forty percent ownership share and

"a de facto veto over certain fundamental corporate actions[.]" *Id.* ¶ 38. The Stock Purchase

Agreement included the following provision:

> *Conversion and Redemption.* Company and Purchaser [Setliff] agree that the Series A
> Preferred Stock shall not be converted into common stock, or put or called for
> redemption prior to the earlier of (i) the conclusion of an underwritten public
> offering, or (ii) the consummation of a merger, consolidation or sale of all or
> substantially all of the Company's assets, or (iii) five years.

*Id.* ¶ 20. Under this provision, "Zoccam could not convert the Series A Preferred Stock until May

24, 2023 at the earliest." *Id.* ¶ 21. As consideration for resolving the dispute, Setliff loaned "Zoccam

$100,000 under a promissory note with a one-year maturity" (the "Note") at a nine percent interest

rate with an eighteen percent default interest rate. *Id.* ¶¶ 18, 60.

Cook called for a Board Meeting to occur on November 9, 2018 (the "2018 Board Meeting").

*Id.* ¶ 27. Prior to the 2018 Board Meeting, Cook retained Steven A. Holmes ("Holmes") to represent

herself and Zoccam and "provided [him] with his instructions." *Id.* ¶ 25. "At the 2018 Board

---

[2] For all intents and purposes, the two agreements constitute one singular agreement because the
latter is incorporated by reference into the former. *Id.* ¶ 17.

Meeting, the Board of Directors, Cook, and Holmes discussed the potential for Zoccam to pass through losses to its shareholders," and Holmes stated that to do this, Zoccam would have to "elect tax treatment under Subchapter S of the Internal Revenue Code, 26 U.S.C. § 1361, *et seq.*" *Id.* ¶ 28. Holmes also represented that Zoccam would have to create "a single class of common stock . . . through a restatement of the 2015 Certificate of Formation." *Id.* At this meeting, "Setliff insisted that any restatement must not alter his rights as a preferred shareholder . . . and the Board agreed to the proviso." *Id.* ¶ 30. "In an attempt to assuage Setliff's concerns and fraudulently induce him to consent to Cook's proposal to eliminate the Series A Preferred Stock, . . . Holmes and Cook, for and on behalf of Cook and Zoccam" made several "false and misleading statements or omissions of material fact to Setliff[.]" *Id.* ¶¶ 31, 33.

After the 2018 Board meeting, "Zoccam drafted the Proposed Restatement[.]" *Id.* ¶ 41. Setliff and Zoccam communicated about the Proposed Restatement and Cook "agreed to all of the changes [Setliff] requested[.]" *Id.* Zoccam transmitted the Restatement (the "2019 Filed Restatement") to the Texas Secretary of State on August 26, 2019, which was accepted on August 29, 2019. *Id.* ¶ 42. But this was not the Restatement that Setliff had agreed to. *Id.* The 2019 Filed Restatement increased the number of shares Zoccam could issue, removed any right of Class B Common Stock Shareholders "to approve the issuance of additional Class A Common Stock," and reduced the number of votes of Class B selected board members to one, while giving Class A selected board members two votes. *Id.* Zoccam's Board of Directors did not hold a meeting to approve the 2019 Filed Restatement prior to its submission to the Texas Secretary of State. *Id.* ¶ 43. However, Cook and another Zoccam shareholder, Wayne Norton, signed an April 9, 2019, shareholder resolution "purporting to evidence shareholder approval of the 2019 Filed Restatement." *Id.* ¶ 43. They did not

own sixty-seven percent of the Series A Preferred Stock as required under TEX. BUS. ORG. CODE ANN. § 21.364 and the 2015 Certificate of Formation and therefore could not approve the 2019 Filed Restatement. *Id.* ¶¶ 43–47, 49.

On November 19, 2020, Zoccam held a Board Meeting where Cook presented a Motion and Resolution to Ratify the 2019 Certificate of Formation (the "Motion to Ratify") and the Board of Directors, except for Setliff, voted in favor of the motion. *Id.* ¶¶ 50–51. Zoccam claims that "69% of the holders of the Common Stock and 60% of the holders of the Series A Preferred Stock" voted in favor of the Motion to Ratify. *Id.* ¶ 52.

Setliff contends that the 2019 Filed Restatement, subsequent Motion to Ratify, and Subchapter S Election are invalid, and he still owns "Series A Preferred Stock and Common Stock in Zoccam." *Id.* ¶¶ 52–54, 57. He has also not received any payments due under the Note. *Id.* ¶¶ 60–64. He now brings fourteen claims against either Cook, Zoccam, or both: five declaratory judgment claims, separate breach-of-contract claims for the Settlement Agreement and Note, a conversion claim for the exchange of his stock, a breach of fiduciary duty claim, four separate fraud claims, and a negligent misrepresentation claim. *Id.* ¶¶ 65–127.

Setliff filed his original complaint on August 26, 2021. *See* Doc. 1, Compl. Defendants filed separate motions to dismiss and Setliff, in response, filed the operative complaint on November 5, 2021. *See* Doc. 11, Cook's Mot.; Doc. 13, Zoccam's Mot.; Doc. 16, Am. Compl. Cook and Zoccam filed subsequent motions to dismiss on November 19, 2021, generally arguing for dismissal of all claims under either Federal Rules of Civil Procedure 12 (b) (6) or 9 (b). Doc. 19, Cook's Mot. Dismiss; Doc. 21, Zoccam's Mot. Dismiss. The motions are fully briefed and ripe for review and the Court considers them below.

- 4 -

## II.

## LEGAL STANDARDS

*A.      Rule 12(b)(6) Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

B.     *Rule 9(b)*

A dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). When claims for fraud and negligent misrepresentation are based on the same set of alleged facts, Rule 9(b)'s heightened pleading standard applies. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003)); *see Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at *8 (N.D. Tex. Dec. 14, 2010) (applying Rule 9(b) to fraud and negligent misrepresentation claims that arose out of the same set of facts but were contained in separate counts in the complaint). A fraud claim requires pleading with particularity the "'who, what, when, where, and how' of the alleged fraud." *United States ex. rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 F. App'x. 890, 892 (5th Cir. 2013) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

## III.

## ANALYSIS

A.     *Declaratory Judgment Claims*

"In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). District courts engage in a three-step analysis when determining whether a

declaratory judgment action should proceed. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). First, the court asks whether it has subject matter jurisdiction because an "'actual controversy' exists between the parties." *Id.* Second, the "court must resolve whether it has the 'authority' to grant declaratory relief in the case presented." *Id.* Third, the court examines "how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* "In this circuit, 'district courts . . . regularly reject declaratory judgment claims seeking the resolution of issues that are the mirror image of other claims in a lawsuit.'" *DM Arbor Ct., Ltd. v. City of Hous.*, 2021 WL 4926015, at *12 (S.D. Tex. Oct. 21, 2021) (listing cases). A declaratory judgment is duplicative where the relief flowing from the declaration is the same as the resolution of another claim. *See Robinson v. Hunt Cnty.*, 921 F.3d 440, 450–51 (5th Cir. 2019) ("The constitutional claims at issue in this case are dissimilar from a breach of contract action" because the "request for prospective relief appears distinct from [the] claim for monetary damages."). However, a court cannot dismiss a declaratory judgment "on the basis of whim or personal disinclination." *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir.1993) (quoting *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir.1989)).

Zoccam argues generally for dismissal of Setliff's declaratory judgment claims because they are duplicative of his Settlement Agreement breach-of-contract claim, Doc. 23, Zoccam's Br., 9–10; Doc. 33, Zoccam's Reply, 8, and implausible because an S-Election does not require written consent. Doc. 23, Zoccam's Br., 10. More particularly, for the second declaratory action Zoccam contends that Setliff's failure to pinpoint an allegedly violated provision denies Zoccam fair notice. *Id.* at 11. For the third declaratory action, Zoccam avers that three "pleading failures" warrant dismissal: (1) "the shareholders and Board (including Setliff) already approved the amendment"; (2) there is no

legal requirement for written consent; and (3) "Setliff cannot retroactively revoke his consent." *Id.* Finally, Zoccam argues that TEX. BUS. ORGS. CODE § 21.365 allows "a corporation to contract for a simple majority in voting on a fundamental action," which would override any two-thirds majority vote requirement under TEX. BUS. ORGS. CODE § 21.364. Doc. 33, Zoccam's Reply, 9.

Setliff dedicates the bulk of his Response to the declaratory judgment claims. *See* Doc. 29, Setliff's Resp. He first contends that the Declaratory Judgment Act provides the appropriate vehicle for his claims regarding Zoccam's actions to convert his stock. *Id.* at 3–6. Second, the Complaint provides sufficient allegations of a lack of shareholder approval for the Subchapter S election. *Id.* at 6–7. Third, the Complaint supports finding that an "active and substantial controversy" exists because the parties disagree as to whether Setliff remains a Series A Preferred Stockholder. *Id.* at 7–15. Finally, Setliff argues the vote to approve the 2019 Filed Restatement violated TEX. BUS. ORGS. CODE § 21.364 and the 2015 Certificate of Authority. *Id.* at 15–17.

For the first step of the declaratory judgment analysis, the Court finds "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The parties disagree over the extent of Setliff's voting rights within Zoccam and the amount and type of stock he owns within the company. *See* Doc. 16, Am. Compl., ¶ 40. Further, the parties' legal interests are adverse because Setliff's claims would render the 2019 Filed Restatement null and void. Because a substantial controversy exists between the parties, the Court has subject matter jurisdiction over the declaratory judgment claims.

The second step requires the Court to determine whether it possesses the authority to grant the relief requested by Setliff. *Orix Credit All.*, 212 F.3d at 895. A district court lacks authority when

"1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, and 3) the district court is prohibited from enjoining the state proceedings under the Anti–Injunction Act." *Travelers Ins. Co.*, 996 F.2d at 776 (emphasis omitted). Because there are no pending state proceedings, the Court has no reason to abstain from exercising its authority and therefore possesses the authority to grant the declaratory judgments requested by Setliff.

The third step asks the Court whether it should exercise its discretion to "decide or dismiss [the] declaratory judgment action[s]." *Orix Credit All.*, 212 F.3d at 895. This step requires an individualized analysis for each of the declaratory judgment claims. The Court must examine the *Trejo* factors:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Via v. Blanchard*, 2021 WL 4902391, at *12 (N.D. Tex. July 30, 2021) (quoting *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994)). The Court addresses these factors for each declaratory judgment claim below.

### 1.   Claim 1: Declaratory Judgment for Lack of Shareholder Consent (Zoccam)

Setliff requests a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* from the Court that (1) "the vote taken at the 2018 Board Meeting was unlawful and invalid" for a multitude of reasons; (2) the Board Consent "is therefore null and void and of no legal effect"; and (3) Setliff

maintains his pre-2018 Board Meeting status and rights as a Series A Preferred Stock and Common Stock owner and holder. Doc. 16, Am. Compl., ¶ 65.

The *Trejo* factors support dismissal of this claim. First, there is no pending state action. Second, Setliff did not file suit in anticipation of suit from Defendants because his rights were the ones allegedly violated. Third, Defendants do not accuse Setliff of forum shopping. Factors four and seven are inapplicable. Fifth, federal court is convenient for the parties because they are based in either Texas or Colorado. Sixth, and most importantly, this claim can be properly determined via the breach-of-contract claim. This weighs in favor of dismissal. *See* Doc. 16, Am. Compl., ¶ 77 (alleging "Defendants also engaged in *ultra vires* activities by acting outside the scope of, and in dereliction of, the voting procedures established by the 2015 Certificate of Formation, the Settlement Agreement, and TEX. BUS. ORG. CODE § 21.364").

This declaratory judgment action duplicates the breach-of-contract claim. *See Kougl v. Xspedius Mgmt. Co. of Dallas/Fort Worth*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) ("[W]hether the parties entered into enforceable contracts . . . will be resolved in the context of breach of contract actions. Separate declaratory judgment actions would be redundant."). The breach-of-contract claim alleges that Zoccam and Cook converted or exchanged Setliff's Series A Preferred Stock for Common Stock in violation of TEX. BUS. ORG. CODE § 21.364(a) and the Settlement Agreement and Stock Purchase Agreement. Doc. 16, Am. Compl., ¶¶ 75–76. Resolution of the breach-of-contract claim will determine whether the 2018 Board Meeting vote was lawful or unlawful, which set in motion the subsequent series of actions to convert or exchange Setliff's stock through the 2019 Filed Restatement. Since this claim duplicates the breach-of-contract claim, the Court **DISMISSES** this claim.

2.      Claim 2: Declaratory Judgment for Attempted Redemption of Conversion of Setliff's Stock (Zoccam)

Setliff also asks the Court to declare that (1) the conversion or redemption of Setliff's Series A Preferred Stock through "the 2019 Filed Restatement and 2020 Motion to Ratify was unlawful and invalid"; (2) "any attempted redemption or conversion was therefore null and void and of no legal effect"; (3) Setliff did not voluntarily surrender or exchange his Common Stock and Series A Preferred Stock and therefore "retains the valid stock certificates for the same"; and (4) Setliff maintains his pre-2018 Board Meeting status and rights as a Series A Preferred Stock and Common Stock owner and holder. Doc. 16, Am. Compl., ¶ 67.

Applying the *Trejo* factors to this second declaratory judgment claim, the Court reaches the same conclusion it reached in the first claim. All of the factors are the same so the Court will only address the sixth factor, the judicial economy factor. Whether Cook and Zoccam lawfully converted or exchanged Setliff's stock in Zoccam will necessary be decided in the breach-of-contract claim. *See* Doc. 16, Am. Compl., ¶ 76 (alleging "Zoccam and Cook are in breach of contract" because of their "attempt to redeem, convert, or eliminate the Series A Preferred Stock into Class B Common Stock before May 2023"). The Court **DISMISSES** this claim as duplicative.

3.      Claim 3: Declaratory Judgment for the Subchapter S Election (Zoccam)

Setfliff further requests that the Court declare that (1) "Zoccam remains a C-Corporation"; (2) Setliff did "not voluntarily surrender[] or exchange[] his shares because Zoccam is fundamentally unable to elect Subchapter S treatment"; (3) any election of Subchapter S treatment by Zoccam is "null and void and of no legal effect"; and (4) Setliff maintains his pre-2018 Board Meeting status and rights as a Series A Preferred Stock and Common Stock owner and holder. Doc. 16, Am. Compl., ¶ 69.

The *Trejo* factors also support dismissal of this third declaratory judgment claim. Once again, only the judicial economy factor needs discussion by the Court because the analysis differs only slightly from the preceding analysis. The breach-of-contract claim will determine whether Zoccam could have elected the Subchapter S tax treatment, which required the conversion or exchange of Setliff's stock. *See id.* ¶¶ 29, 31, 33, 76. As alleged, the Subchapter S tax election only permits one type of stock, so Defendants had to convert or exchange Setliff's stock from Series A Preferred Stock to the Common Stock. *Id.* ¶¶ 18, 29; *see also* 26 U.S.C. § 1361(b)(1)(D) (an S corporation "does not . . . have more than 1 class of stock"). If such a conversion or exchange occurred in violation of the Settlement Agreement or 2015 Certificate of Formation, then Zoccam improperly elected Subchapter S treatment by breaching the aforementioned documents. Thus, the declaratory judgment claim is redundant to the breach-of-contract claim.

        4.       Claim 4: Declaratory Judgment for Invalidity of Corporate Acts for the Filing of the 2019 Restatement (Zoccam)

Setliff requests a declaratory judgment that (1) "[t]he 2019 Restatement of the Certificate of Formation was unlawful and invalid"; (2) any stock issued because of a restatement or "in violation of the 2015 Certificate of Formation . . . [i]s void . . . and Setliff remains a holder of Series A Preferred Stock and Common Stock"; (3) the restatement "is null and void, and of no legal effect"; and (4) Setliff maintains his pre-2018 Board Meeting status and rights as a Series A Preferred Stock and Common Stock owner and holder. Doc. 16, Am. Compl., ¶ 70.

The Court finds that the *Trejo* factors weigh in favor of dismissal. Only the judicial economy factor differs from the above claims, but it again weighs in favor of dismissal due to the duplication of claims. Claim four requests that the Court declare the 2019 Filed Restatement is unlawful, which mirrors the breach-of-contract claim. *Compare id.* ¶ 70 (alleging the 2019 Filed Restatement was

unlawful because the vote did not comply with TEX. BUS. ORG. CODE § 21.364(a)), *with id.* ¶¶ 76–77

(alleging the conversion or exchange of Setliff's stock and *ultra vires* activities "[v]iolate[d] the voting

provisions of the 2015 Certificate of Formation and TEX. BUS. ORG. CODE § 21.364(a)). Thus, this

declaratory judgment claim duplicates the breach-of-contract claim and the Court **DISMISSES** this

claim.

  **5.**  Claim 5: Declaratory Judgment for Invalidity of Zoccam's Corporate Acts for the
     Motion to Ratify (Zoccam)

  Setliff's final request for declaratory relief asks the Court to declare (1) "[t]he 2020 Motion

to Ratify the 2019 Restatement . . . was . . . unlawful and invalid"; (2) the motion violates the 2015

Certificate of Formation and the Stock Purchase Agreement; (3) any stock issued "in violation of

the 2015 Certificate of Formation . . . [i]s void . . . and Setliff remains a holder of Series A Preferred

Stock and Common Stock"; and (4) Setliff maintains his pre-2018 Board Meeting status and rights

as a Series A Preferred Stock and Common Stock owner and holder. *Id.* ¶ 72.

  For this final declaratory judgment claim, the *Trejo* factors weigh in favor of dismissal. Once

again only the judicial economy factor differs from the above and the Court addresses only this factor

in its analysis. Setliff requests that the Court declare the 2020 Motion to Ratify the 2019 Filed

Restatement as invalid and this determination will be decided by the breach-of-contract claim. *Id.*

¶¶ 33, 48–53, 76. Whether the 2019 Filed Restatement is valid turns in part on whether the 2020

Motion to Ratify complied with all legal procedures and Zoccam's governing documents. Thus, this

claim duplicates the breach-of-contract claim.

  In sum, the Court **DISMISSES** all five of the declaratory judgment claims because they

simply allege the individual "phases" of the breach-of-contract claim. Claim 1 attacks the events of

the 2018 Board Meeting. Claim 3 attacks the Subchapter S election stemming from the 2018 Board

Meeting. Claim 4 attacks the 2019 Filed Restatement. Claim 5 attacks the 2020 Motion to Ratify the 2019 Filed Restatement. And Claim 2 attacks the conversion or exchange of Setliff's stock resulting from Claims 4 and 5. Resolving these claims in addition to the breach-of-contract claim would not promote judicial economy.

B.      *Breach-of-Contract Claims*

        "Breach of contract requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018)).

        Setliff brings two breach-of-contract claims, one for breach of the Settlement Agreement and the 2015 Certificate of Formation and a second for breach of the Note. The Court analyzes both below to find that Setliff fails to properly plead the first claim, but properly pleads the second.

        1.      Claim 6: Breach of Contract–Settlement Agreement and 2015 Certificate of
                Formation (Cook and Zoccam)

        Setliff avers that Defendants breached Paragraphs three and six of Article three of the 2015 Certificate of Formation and Section four of the Settlement Agreement because "no involuntary exchange or conversion of the Series A Preferred Stock can be accomplished by Zoccam until May 24, 2023 at the earliest." Doc. 16, Am. Compl., ¶¶ 75, 79.

        Cook argues that Setliff fails to plead a cause of action against Cook because (1) "the 2015 Certificate of Formation . . . is not a contract between Setliff and Cook"; (2) Setliff fails to identify any of the terms of the Settlement Agreement that Cook allegedly violated; and (3) the "only . . .

contractual provision that was allegedly violated . . . refers to the company—Zoccam[—]not Cook." Doc. 20, Cook's Br., 4–6. More specifically, Cook contends that the Stock Purchase Agreement prohibited Zoccam—not Cook—from redeeming or converting the Series A Preferred Stock and cannot form the basis of a breach-of-contract claim against Cook. Doc. 32, Cook's Reply, 3. Zoccam similarly argues that: (1) Setliff's Amended Complaint fails to identify "a single provision in the Settlement Agreement that Zoccam allegedly breached"; (2) a breach-of-contract claim may not be based on violations of the Certificate; (3) Setliff's consent and participation in the Stock Purchase Confirmation Agreement prevents him from asserting a breach-of-contract claim; (4) the Texas Business Organizations Code ("TBOC") contravenes Setliff's allegations that the Amendment required a two-thirds majority; and (5) Zoccam acted within its legal authority "in accordance with the voting procedures set forth in Certificate Article 11 and allowed by TBOC 21.365." Doc. 23, Zoccam's Br., 7–9; Doc. 33, Zoccam's Reply, 8.

Setliff counters that Cook and Zoccam signed the Settlement Agreement, Section four of which prohibited the redemption or conversion of the Series A Preferred Stock prior to May 2023. Doc. 29, Setliff's Resp., 17–18. Thus, "if the Restatement is not declared invalid, this provision . . . [was] violated." *Id.* at 18. Lastly, Setliff argues Cook "is personally liable under the Settlement Agreement" as a party to the contract and "beneficiary of the releases" Setliff gave to Cook for releasing her "from his prior securities fraud claims." *Id.*

Both Cook and Zoccam cite to *Baker v. Great Northern Energy, Inc.*, as an analogous case to the instant one. Doc. 20, Cook's Br., 4–6; Doc. 23, Zoccam's Br., 7–8. In *Baker*, this Court dismissed a breach-of-contract claim under Rule 12(b)(6) because (1) "the Complaint 'fail[ed] to identify which provision[s]' of the two agreements [the defendant] 'allegedly breached'" and (2) "the

Complaint . . . deprive[d] [the defendant] of fair notice through its confusing and unspecified assertions[.]" 64 F. Supp. 3d 965, 971–72 (N.D. Tex. 2014). For the first agreement, the plaintiff failed to state the particular provision in dispute and the alleged sum due to the plaintiff. *Id.* at 972. As for the second agreement, the complaint alluded to "terms" violated by the defendant without identifying the specific provision or how the defendant violated them. *Id.* The complaint further failed to identify which agreement the defendant violated with his specific actions because it referred to both agreements as "the Agreement[,]" denying the defendant fair notice of the allegations against them. *Id.*

Unlike the complaint in *Baker*, Setliff's Complaint sufficiently identifies the provision of the Stock Purchase Agreement allegedly breached by Defendants for that portion of the claim—and that portion alone—to cross the line from "conceivable to plausible." *See Twombly*, 550 U.S. at 570. Setliff points to three separate provisions in the agreements: Paragraph three and six of Article three of the 2015 Certificate of Formation and Section four of the Stock Purchase Agreement. Doc. 16, Am. Compl., ¶ 75. Setliff quotes the precise Paragraph from Section four of the Stock Purchase Agreement[3] that establishes the grounds for that portion of his breach-of-contract claim. *See id.* ¶ 20. The Court faces a much closer call regarding the 2015 Certificate of Formation. Paragraph three ("Redemption") spans approximately one and a half pages of the 2015 Certificate of Formation and

---

[3] This provision provides:

Conversion and Redemption. Company and Purchaser agree that the Series A Preferred Stock shall not be converted into common stock, or put or called for redemption prior to the earlier of (i) the conclusion of an underwritten public offering, or (ii) the consummation of a merger, consolidation or sale of all or substantially all of the Company's assets, or (iii) five years.

Doc. 16, Am. Compl., ¶ 20.

Paragraph six ("Conversion") spans approximately nine pages. Doc. 24, Zoccam App., 8–19. The allegations within the Complaint fail to pin down any particular subparagraphs that form the basis of the breach-of-contract claim. This denies Defendants fair notice of what or how Defendants breached the 2015 Certificate of Formation. *See Baker*, 64 F. Supp. 3d at 972. Accordingly, the Court finds the Complaint fails to cross the line from "conceivable to plausible" for any part of the breach-of-contract claim premised on the 2015 Certificate of Formation.[4] *See Twombly*, 550 U.S. at 570.

Regarding Cook's argument that she cannot be held liable for a breach of the Settlement Agreement, the Court finds the provision quoted by Setliff could not be plausibly construed in a manner as to hold Cook liable. *See Twombly*, 550 U.S. at 570. Paragraph four states the "*Company and Purchaser* agree that the Series A Preferred Stock shall not be converted into common stock." Doc. 16, Am. Compl., ¶ 20 (emphasis added). This particular provision only applies to the Company (Zoccam) and the Purchaser (Setliff). While Cook was an individual party to the Settlement Agreement, Doc. 16, Am. Compl., ¶ 22, Paragraph four does not apply to Cook. *See id.* Thus, Setliff failed to plausibly plead how Cook could have violated this provision in her personal capacity. The Court finds Setliff fails to plausibly plead a breach-of-contract claim against Cook. *See Twombly*, 550 U.S. at 570.

Therefore, the Court **DISMISSES** the breach-of-contract claim insofar as it alleges Cook or Zoccam breached the 2015 Certificate of Formation or that Cook breached the Settlement Agreement. The breach-of-contract claim against Zoccam for breach of the Settlement Agreement may proceed.

---

[4] Additionally, Setliff fails to rebut Zoccam's arguments for the Court to dismiss the breach-of-contract claim premised on the 2015 Certificate of Formation. A failure to pursue a claim beyond the complaint constitutes abandonment, so the Court finds Setliff also abandoned this argument. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006).

2.    Claim 7: Breach of Contract–Note (Zoccam)

Setliff contends that Zoccam violated the Note by "fail[ing] to repay all principal and interest due." Doc. 16, Am. Compl., ¶ 83. He states that he complied with his requirements under the Note and is therefore entitled to recover the $100,000 value of the Note plus the 18 percent default interest rate. *Id.* ¶¶ 82, 86.

Zoccam argues that Setliff fails to plead a plausible claim for breach of the Note because "[t]he 'promissory note' remains a mystery." Doc. 23, Zoccam's Br., 9. His failure to supply the Note or identify any provisions that Zoccam breached proves fatal for his claim, according to Zoccam. *Id.*

Setliff retorts that Zoccam concedes "that the material terms of the Note—parties, amount loaned, maturity date, interest rate, failure of timely payment, effect of default, etc.—are specifically pled." Doc. 29, Setliff's Resp., 18. Further, there is no requirement that a party must attach an allegedly breached document to their complaint. *Id.*

Setliff identifies all four elements of a breach-of-contract claim for the Note. He alleges that the Note exists, he performed by supplying the $100,000 to Zoccam, Zoccam breached by not repaying the loan on the maturity date, and he has sustained damages due to Zoccam's breach. Doc. 16, Am. Compl., ¶¶ 18, 60–64, 82–83, 85; *see Pathfinder Oil & Gas, Inc.*, 574 S.W.3d at 890 (identifying elements of a breach-of-contract claim). Further, Setliff identifies the particular provision at issue—failure to repay the Note amount on the maturity date—even though he does not quote or provide the actual Note. *See Watson v Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011) ("While Plaintiffs have not provided the Note or Deed of Trust, Plaintiffs do specifically allege that Defendant failed to provide proper notice in accordance with the Note and Deed of Trust prior to acceleration of the debt . . . ."); *Morris v. JP Morgan Chase Bank, N.A.*, 2013 WL 8476110, at *4

(W.D. Tex. Jan. 29, 2013) (finding plaintiff pled the existence of a valid contract without attaching the note for one claim). Setliff's allegations provide sufficient notice to Zoccam for it to defend the claim, and the existence or nonexistence of the Note is better determined at the summary judgment stage. *See Tyler v. Citi-Residential Lending Inc.*, 812 F. Supp. 2d 784, 787–88 (N.D. Tex. 2011) (granting summary judgment for defendants where plaintiff failed to provide admissible evidence regarding the existence of a contract). Therefore, the Court **DENIES** Zoccam's Motion to Dismiss the breach-of-contract claim premised on the Note.

C.     *Claim 8: Conversion of Stock (Zoccam)*

Conversion is the wrongful taking of the property of another to the exclusion of the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). For a conversion claim under Texas law, a plaintiff must prove:

> (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property.

*Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 366 (Tex. App.—Dallas 2009, pet. denied).

Setliff claims that he "is the owner and holder of: (a) 200,000 shares of Series A Preferred Stock . . . ; and (b) 718,357 shares of Common Stock, in Zoccam" and Zoccam denied Setliff the possession of the Series A Preferred Stock and the rights stemming from possession of the same. Doc. 16, Am. Compl., ¶¶ 87–89. Zoccam, so far, has "refused to reverse its action" and recognize Setliff's right to possession and rights stemming from the possession of the Series A Preferred stock. *Id.* ¶ 91.

Zoccam first argues that Setliff's claim, "sounding in contract cannot sound in the tort of conversion." Doc. 23, Zoccam's Br., 11. Second, Zoccam contends that the conversion claim is not actionable because no wrongful taking occurred since Setfliff consented to the conversion or exchange. *Id.* Third, "Zoccam has numerous bases for reasonably doubting [Setliff's] right to possess the complained-of stock" and accordingly, Zoccam's refusal to return the stock—which Zoccam argues it does not possess—cannot evidence conversion. *Id.* at 12.

Setliff does not respond to any of Zoccam's arguments. *See* Doc. 29, Setliff's Resp.; Doc. 33, Zoccam's Reply, 6 ("Setliff fails to respond to Zoccam's points of attack.").

Zoccam cites to *Dixie Carpet Installations, Inc. v. Residences at Riverdale, LP* for the premise that a conversion claim sounding in contract is not valid under Texas law. Doc. 23, Zoccam's Br., 11. In *Dixie Carpet*, the court held that an appellant's conversion claim "sound[ed] in contract and [appellant] [could] not recover damages for conversion arising from the contract's breach." 599 S.W.3d 618, 636 (Tex. App.—Dallas 2020, no pet.). The appellant's injury arose from breach of a contract and the court found that the economic loss rule "precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Id.* at 634 (quoting *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014)). The court reasoned that to recover in tort, the breached duty must stand independent of the contract. *Id.* (quoting *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 268 (Tex. App.—Houston 2018 [1st Dist.], pet. dism'd)). The court then considered the factors of "the source of the duty giving rise to the injury and . . . the nature of the injury itself." *Id.* at 635. Finding that the conversion claim rested on the appellee's voiding of a check—"the vehicle by which [appellee] was going to perform its contract duty to pay

[appellant]"—the court found that the appellant could not recover separately for conversion. *Id.* at 636.

Like the court in *Dixie Carpet*, this Court will look to "(i) the source of the duty giving rise to the injury and (ii) the nature of the injury itself" to determine if Setliff's conversion claim sounds in contract or tort. *See id.* at 635. The source of the duty for Setliff's conversion claim stems from Zoccam's actions that allegedly violated the Settlement Agreement and the 2015 Certification of Formation. Zoccam had a duty, stemming from the Settlement Agreement and the 2015 Certification of Formation, to not "redeem, convert, or eliminate the Series A Preferred Stock into Class B Common Stock before May 2023." Doc. 16, Am. Compl., ¶ 76. But Zoccam allegedly violated this duty by breaching the Settlement Agreement and the 2015 Certificate of Formation through the conversion of Setliff's Series A Preferred Stock to Common Stock. *Id.* ¶¶ 74–80. Thus, the nature of the alleged injury stems directly from Zoccam allegedly not performing under the Settlement Agreement and the 2015 Certification of Formation. Accordingly, the Court finds that the claim sounds in contract and Setliff cannot recover damages for conversion stemming from the breach of the Settlement Agreement or the 2015 Certificate of Formation. The Court therefore **DISMISSES** the conversion claim.

D.     *Claim 9: Breach of Fiduciary Duty (Cook)*

If Setliff's Series A Preferred Stock shares were legally converted to Common Stock, then Setliff argues Cook breached her fiduciary duties. *Id.* ¶ 92. Specifically, Setliff alleges that Cook "engag[ed] in fraudulent conduct and self-dealing" by not informing Setliff "that the elimination of the Series A Preferred Stock would benefit her individually . . . [,] increase her control of Zoccam[,] and eliminate Setliff's preferred dividend and other rights." *Id.* ¶ 95.

Cook argues that "Texas law does not recognize a . . . fiduciary duty" between corporate officers or directors and shareholders. Doc. 20, Cook's Br., 7. Setliff fails to respond to this argument in his Response. *See* Doc. 29, Setliff's Resp. According to Cook, his failure to respond "justifies dismissal" because he "has waived the claim." Doc. 32, Cook's Reply, 1–2.

The Court finds Setliff waived or abandoned this claim by not continuing to defend the breach-of-fiduciary-duty claim beyond the Amended Complaint. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding plaintiff waived her retaliatory abandonment claim by not defending in either response to the defendant's motion to dismiss); *see also United States v. Stanley*, 595 F. App'x 314, 317 (5th Cir. 2014) (finding defendant waived his defense by not raising the argument before the motion for reconsideration). He probably does so for good reason because, as Cook points out, Texas does not "recognize[] a formal fiduciary duty to individual shareholders." *Ritchie v. Rupe*, 443 S.W.3d 856, 890 (Tex. 2014); *see* Doc. 20, Cook's Br., 7. Directors and officers of a corporation owe a fiduciary duty to the corporation and this duty might come into conflict with the best interests of individual shareholders. *Ritchie*, 443 S.W.3d at 890 n.62. Accordingly, the Court **DISMISSES** Setliff's claim for breach of fiduciary duty against Cook.

E.      *Claim 10: Securities Fraud–*Tex. Rev. Civ. Stat. Ann. *art. 581-33 (Cook and Zoccam)*

According to Setliff, the conversion of Setliff's stock "was induced or procured by fraud by Zoccam" in violation of Tex. Rev. Civ. Stat. Ann. art. 581-33 through the use of "false statements and/or material facts." Doc. 16, Am. Compl., ¶¶ 98–99. Particularly, Setliff alleges that the Defendants misstated or omitted facts about the "Class B Common Stock and the voting rights, dividend, and liquidation rights of that stock" and Zoccam's tax treatment elections. *Id.* ¶ 99.

Article 581-33(A)(2) prohibits the sale of a security "by means of an untrue statement of a material fact or an omission to state a material fact." TEX. REV. CIV. STAT. ANN. art. 581-33(A)(2) (2021)[5]. The Texas Securities Act ("TSA") "regulates sellers and sales" and "applies if the seller is any link in the chain of the selling process." *Enntex Oil & Gas Co. v. Texas*, 560 S.W.2d 494, 497 (Tex. App.—Texarkana 1977, writ ref'd n.r.e.). The statute is "given the widest possible scope" in order "to protect investors." *Tex. Cap. Secs., Inc. v. Sandefer*, 58 S.W.3d 760, 776 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (first quoting *Flowers v. Dempsey–Tegeler & Co.*, 472 S.W.2d 112, 114 (Tex. 1971) and then quoting TEX. REV. CIV. STAT. ANN. art. 581–10–1(b) (2021)). Under the TSA, a sale "include[s] every disposition, or attempt to dispose of a security for value." TEX. REV. CIV. STAT. ANN. art. 581-4(E) (2021). A sale does not include "[t]he sale of a security under conditions which entitle the purchaser or subsequent holder to exchange the same for, or to purchase some other security." *Id.*

Cook contends that the conversion of Class A Preferred Stock to Class B Common Stock is not a "sale of securities" as defined by the TSA. Doc. 20, Cook's Br., 8–9; Doc. 32, Cook's Reply, 4–5. Further, Cook argues that the TSA exempts this type of transaction because Setliff admits to owning the shares prior to the conversion and "makes no allegation that a commission was paid as part of" the conversion. Doc. 20, Cook's Br., 9–10. And because this claim fails to establish the "primary violation of the securities laws" element for the aiding and abetting claim against Cook under Article 581-33F, the aiding and abetting claim should also be dismissed. *Id.* at 10; Cook's Reply, 5–6.

---

[5] The Texas Legislature repealed and replaced the prior version of the TSA in 2019 and the updated version took effect on January 1, 2022. *See* TEX. GOV'T CODE ANN. § 4001.001, *et seq.* Because the prior version was in effect when Setliff's cause of action arose, the Court analyzes the claims under the prior version of the law. *See Vela v. City of Hous.*, 276 F.3d 659, 673 (5th Cir. 2001).

Zoccam makes a similar argument, by contending that the exchange of the Class A Preferred Stock for the Class B Common Stock is not a sale as defined by TEX. REV. CIV. STAT. ANN. art. 581-4. Doc. 23, Zoccam's Br., 22; Doc. 33, Zoccam's Reply, 8. Further, Article 581-5 exempts transactions occurring without a commission or remuneration. Doc. 23, Zoccam's Br., 23. Zoccam also argues that Setliff failed to plead his TSA fraud claim to survive Rule 9(b) and Setliff also failed to plead intent or scienter, an element of a TSA claim. *Id.* These failings warrant dismissal, according to Zoccam. *Id.*; Doc. 33, Zoccam's Reply, 7. Lastly, Zoccam avers that the fraud by non-disclosure TSA claim fails because Setliff does not identify a false material statement or omission made before his purchase of the Class A Preferred Stock. Doc. 23, Zoccam's Br., 24.

Setliff responds by contending that "the TSA [is] extremely broad and embrace[s] virtually any transaction" and does not exempt fraudulent conduct. Doc. 29, Setliff's Resp., 20 (emphasis omitted). The exchange or conversion of Setliff's stock, as alleged in the Complaint, was induced by fraud. *Id.* at 21. Next, Setliff avers that the Article 581-5 exemption only applies to dealers regarding the registration of securities, not a fraudulent inducement, so it is inapplicable to his claim. *Id.* Further, he argues that the TSA's definition of "sale" includes the conversion or exchange of his shares and that this—not the original purchase of his shares as Defendanst allege—is the transaction identified in the Amended Complaint. *Id.* at 22–24.

The conversion or exchange of Setliff's stock, however characterized, was not a "sale" as defined by the TSA. The definition of "sale" within the statute covers "every disposition, or attempt to dispose of a security for value" to include "contracts and agreements whereby securities are sold, traded or exchanged for money, property or other things of value, or any transfer or agreement to transfer, in trust or otherwise." TEX. REV. CIV. STAT. ANN. art. 581-4(E) (2021). Had the definition

of "sale" ended there, Setliff would have a winning argument that the conversion or exchange of his stock was a sale. However, the definition excludes "[t]he sale of a security under conditions which entitle the purchaser or subsequent holder to exchange the same for, or to purchase some other security." *See id.* Setliff's shares were converted from one form of stock to another in an "exchange . . . for, or . . . purchase [of] some other security." *See id.* Thus, Setliff fails to state a claim under TEX. REV. CIV. STAT. ANN. art. 581-33 because the conversion or exchange of his stock—whether induced by fraud or not—did not occur through a sale as defined by the TSA.

F.      *Claims 11–13: Statutory Fraud–*TEX. BUS. & COM. CODE ANN. *§ 27.01,* et seq.*; Common Law Fraud; Fraud by Nondisclosure (Cook and Zoccam)*

"The elements of statutory fraud under section 27.01 are essentially identical to the elements of common law fraud except that the statute does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages." *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 726 (Tex. App.—Waco 1998, pet. denied). To state a claim for common law fraud, a plaintiff must allege: "(1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party, and (6) causing injury." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009) (citing *Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 709 (S.D. Tex. 2004); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Fraud by nondisclosure requires a plaintiff to prove:

> (1) a deliberate failure to disclose material facts, (2) by one who had a duty to disclose such facts, (3) to another who was ignorant of the facts and did not have an equal opportunity to discover them, (4) with the intent the listener act or refrain from acting, and (5) the listener relies on the nondisclosure resulting in injury.

*Wise v. SR Dall., LLC*, 436 S.W.3d 402, 409 (Tex. App.—Dallas 2014, pet. denied). Under Texas law, a false representation is material "if a reasonable person would attach importance to and be induced to act on the information." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010). Fraud claims are subject to the pleading standards of Rule 9(b). *Flaherty*, 565 F.3d at 213.

Setliff brings statutory, common law, and fraud by nondisclosure claims alleging "the conversion or exchange [of Setliff's Common Stock and Series A Preferred Stock] was induced or procured by" Defendants' fraud. Doc. 16, Am. Compl., ¶¶ 105, 110, 115. Defendants made "false statements and omissions of material fact" about the 2019 Filed Restatement—which Setliff reasonably relied on—to induce him to exchange his stock, Setliff contends. *Id.* ¶¶ 106–08, 111–13, 116, 121–22. For the fraud by nondisclosure claim, Setliff also alleges that Cook and Zoccam had a duty to disclose due to a fiduciary relationship or they partially disclosed otherwise misleading information. *Id.* ¶¶ 117–20.

Cook and Zoccam attack the elements for the fraud claims as not pled with the particularity required under Rule 9(b). Doc. 20, Cook's Br., 11. First, Defendants argue the Complaint fails to plead the "who" and "where," and Zoccam argues it also fails to plead the "how." Doc. 20, Cook's Br., 12–13; Doc. 23, Zoccam's Br., 14–16. Second, the Complaint is deficient for alleging the knowledge or reckless regard of the truth element, per the Defendants. Doc. 20, Cook's Br., 13–14; Doc. 23, Zoccam's Br., 16–17. Third, Defendants contend the Complaint fails to sufficiently allege the intent element. Doc. 20, Cook's Br., 15; Doc. 23, Zoccam's Br., 17–18. Fourth, Setliff had a duty of due diligence that negates any justifiable reliance on the alleged misstatements. Doc. 20, Cook's Br., 15–17; Doc. 23, Zoccam's Br., 18–19. Separately, Zoccam argues the Amended Complaint fails

to and/or cannot allege a misrepresentation about the 2019 Filed Restatement made by Zoccam. Doc. 23, Zoccam's Br., 13–14.

Finding Defendants' first argument persuasive, the Court does not discuss the latter arguments.

1.    "Who", "Where", and "How"

Cook argues that Setliff's allegations that Holmes acted on behalf of Cook and/or Zoccam at the Board of Directors' meeting fails to allege the "who" or "where" with specificity. Doc. 20, Cook's Br., 12–13. Zoccam argues that the Complaint's allegations about Holmes's statements and an email from Zoccam fail to set forth the "who." Doc. 23, Zoccam's Br., 14. Similarly, the Complaint also does not identify "where" or "how" the misrepresentations were made. *Id.* at 14–16; Doc. 33, Zoccam's Reply, 2.

Setliff avers generally for all of the fraud claims that his Complaint properly identifies the "time and place" as at the November 9, 2018, Board Meeting; the "who" as Cook through Holmes as her agent; and the "what" as the need for the amendment, the preservation of Setliff's Preferred Shareholder rights, and the omissions regarding the Amended Certificate of Formation. Doc. 29, Setliff's Resp., 25–32.

The Amended Complaint identifies the November 9, 2018, Board Meeting as being "where" and "when" the majority of the alleged misrepresentations or omissions occurred. Doc. 16, Am. Compl., ¶¶ 31, 33. As for the "who," the Complaint identifies "Holmes, acting on behalf of Cook or Zoccam," "Cook and Holmes, on behalf of Cook and Zoccam," "Cook and Zoccam, through Holmes," "Holmes for Cook and Zoccam", or "Cook, . . . or alternatively Zoccam" as the

- 27 -

person/entity making the alleged misrepresentations. *Id.* ¶¶ 28, 31, 33. The Complaint makes the

following specific allegations:

> Holmes, acting on behalf of Cook or Zoccam, represented to the Board that in order for Zoccam to pass through operating losses to its shareholders, Zoccam must elect tax treatment under Subchapter S of the Internal Revenue Code, 26 U.S.C. § 1361, *et seq.*

> Holmes represented that a single class of common stock must be created through a restatement of the 2015 Certificate of Formation.

> Cook and Holmes, on behalf of Cook and Zoccam, verbally represented to Setliff that Zoccam needed to amend the Certificate of Authority, eliminating Setliff's preferred shares, in order for Zoccam to pass through losses to its shareholders.

> Holmes and Cook, for and on behalf of Cook and Zoccam, falsely represented that the Proposed Restatement could and would be drafted in a way that would allow Zoccam to make a Subchapter S election to pass through existing losses, and at the same time, preserve Setliff's rights under the Governing Documents.

> Cook and Zoccam, through Holmes, falsely represented to Setliff that the Proposed Restatement would not affect any of Setliff's rights under the Settlement Agreement and Stock Purchase Agreement, specifically, his distribution and liquidation rights as a holder and owner of Series A Preferred Stock.

> Cook and Zoccam, through Holmes, falsely represented that corporate losses for 2018 could be passed through to Setliff and the other Zoccam shareholders if the company elected to be taxed as a Subchapter S corporation, a misrepresentation Zoccam reinforced and reiterated by sending Setliff a Form K-1 in 2018 which purported to include such losses.

> Cook, and Holmes for Cook and Zoccam, failed to disclose to the Board and Setliff at the 2018 Board Meeting or thereafter that Zoccam could not elect to be taxed under Subchapter S without the written consent of all shareholders.

> Cook, and Holmes for Cook and Zoccam, failed to disclose to the Board and Setliff at the 2018 Board Meeting that Zoccam had not sought, and further had not obtained, the written consent of all Zoccam's shareholders to the Proposed Subchapter S Election on IRS Form 2553.

> Cook, and Holmes for Cook and Zoccam, failed to disclose to the Board and Setliff at the 2018 Board Meeting or thereafter that they did not intend to ask for the written consent of all shareholders to the Subchapter S election.

Holmes for Cook and Zoccam, failed to disclose to the Board and Setliff that Zoccam could not maintain two classes of common shares with different rights to dividends or distributions on liquidation under 26 U.S.C. § 1362, and also make an election to be taxed under Subchapter S.

Cook and Holmes, for and on behalf of Cook or Zoccam, failed to disclose material and unilateral changes between a form of the Proposed Restatement supplied to Setliff, and the 2019 Filed Restatement.

Cook, acting as Zoccam's CEO, or alternatively Zoccam, failed to disclose that it would file the 2019 Filed Restatement with the Texas Secretary of State without disclosing that document to the Board and obtaining its approval.

Zoccam failed to disclose that it would file the 2019 Filed Restatement with the Texas Secretary of State without obtaining an affirmative vote of two thirds of the Series A Preferred shareholders as required by the Texas Business Organizations Code.

*Id.* ¶¶ 28, 31, 33. These allegations provide the specificity required under Rule 9(b). Despite Defendants' contention, these allegations do not resemble the type of "group" pleading when a plaintiff refers to generic "defendants." Doc. 33, Zoccam's Reply, 3 (citing *N. Port Firefighters' Pension—Loc. Option Plan v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 739 (N.D. Tex. 2013)). Setliff's allegations sufficiently apprise Cook and Zoccam about who made which misrepresentation or omission.

However, Defendants' argument that Setliff fails to sufficiently plead that Holmes acted as an agent of either Cook or Zoccam, presents a far closer call. *See* Doc. 20, Cook's Br., 13; Doc. 23 Zoccam's Br., 14; Doc. 32 Cook's Reply, 7; Doc. 33, Zoccam's Reply, 2. Under Texas law, an agency relationship exists through an implied or express agreement. *Matter of Cyr*, 838 F. App'x 54, 63 (5th Cir. 2020). Setliff alleges that "Holmes was retained by Cook to represent Zoccam" for legal counsel for the 2019 Filed Restatement, presumably through an agreement, and "Cook provided Holmes with his instructions." Doc. 16, Am. Compl., ¶ 25. Yet at different times Setliff alleges that Holmes acted

as an agent for Cook, Zoccam, or both. Doc. 16, Am. Compl., ¶¶ 28, 31, 33. In one sentence Setliff alleges Holmes represents Zoccam, but the allegations outline several instances of Holmes allegedly acting on behalf of both Cook and Zoccam. *See* Doc. 16, Am. Compl., ¶¶ 25, 28, 31, 33. The variance between these allegations creates confusion as to who said what to whom and on whose behalf. Thus, these pleadings fail to give notice to Defendants for whom Holmes allegedly acted for each misrepresentation or omission. *See Kolbeck v. LIT Am., Inc.*, 923 F. Supp. 557, 570 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998) (dismissing fraud claims under Rule 9(b) for "vague assertions of agency" that "do not put defendants on notice of the claims against them, or enable them to prepare a defense"). Further, merely stating that "Cook provided Holmes with his instructions," without more, amounts to a mere naked assertion. *Iqbal*, 556 U.S. at 678. Such an allegation leaves Defendants without notice as to who had direct influence or control over Holmes as their agent. *See Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 779 (3d Cir. 2018) (finding plaintiff failed to plead with the particularity required to import the influence of defendant medical device manufacturer onto plaintiff's surgeon). Thus, the allegations fail to plead the particularity required under Rule 9(b) and the Court **DISMISSES** Setliff's statutory fraud, common law fraud, and fraud by nondisclosure claims against Cook and Zoccam.

G.    *Claim 14: Negligent Misrepresentation (Zoccam)*

A negligent misrepresentation claim, under Texas law, consists of four elements:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Negligent misrepresentation claims are subject to a two-year statute of limitations period. *Kan. Reinsurance Co., v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1371 (5th Cir. 1994); *Tex. Am. Corp. v. Woodbridge Joint Venture*, 809 S.W.2d 299, 302 (Tex. App.—Fort Worth 1991, writ denied).

For the negligent misrepresentation claim, Settliff alleges that Zoccam made negligent, false representations during a business "transaction in which it had a pecuniary interest" about the "validity, voting, dividend, and liquidation rights of the Class B Common Stock, and the . . . Proposed Subchapter S Election." Doc. 16, Am. Compl., ¶ 124.

Zoccam presents three separate arguments for dismissal. First, Zoccam argues that Setliff's claim is time-barred because "[t]he statute of limitations is two years" and the alleged misrepresentations occurred over three years ago. Doc. 23, Zoccam's Br., 24. Second, the negligent misrepresentation claim is not "distinct, separate, and independent" from the breach-of-contract claim. *Id.* (quoting *Smith v. JPMorgan Chase Bank, N.A.*, 519 F. App'x 861, 865 (5th Cir. 2013)). Third, a negligent misrepresentation must be "a misstatement of *existing fact*, not a promise of future conduct" and Setliff alleges Zoccam misrepresented "what it *planned* to accomplish." *Id.* (quoting *Baker*, 64 F. Supp. 3d at 978 (emphasis added)). Lastly, Zoccam contends that Setliff has not sufficiently pleaded that a duty to disclose exists or that Setliff relied on the allegedly negligent misrepresentations. *Id.* at 25.

Setliff does not directly address most of Zoccam's arguments. *See* Doc. 29, Setliff's Resp. The Court construes Setliff's arguments for the fraud claims as also applying to the negligent misrepresentation claim. *See id.* at 30–36. Setliff first argues that the "legal injury" rule of accrual means that his negligent misrepresentation claim is not time barred. Doc. 29, Setliff's Resp., 29 n.111

(citing *Zidell v. Bird*, 692 S.W.2d 550, 554 (Tex. App.—Austin 1985, no writ)). Setliff contends that misrepresentations about future actions are actionable "if the speaker . . . ha[s] special knowledge" of future facts or "the speaker has no intention of performing." Doc. 29, Setliff's Resp., 31 n.116 (citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983)). Next, Setliff argues that after accepting his suggestions, Zoccam was required to disclose any further changes to the 2019 Filed Restatement before filing. *Id.* at 32. Setliff then avers that he adequately pled the elements of a negligent misrepresentation claim. *See id.* at 33–36.

Setliff's negligent misrepresentation claim is not time barred. Negligent misrepresentation "claims are subject to the legal injury rule." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 388 (5th Cir. 2007). Under the legal injury rule, a cause of action for a negligent misrepresentation "accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996). The alleged negligent misrepresentations occurred at the November 9, 2018, Board Meeting. Doc. 16, Am. Compl., ¶ 31. Setliff filed his original complaint on August 26, 2021, almost three years after the alleged misrepresentations that form the basis of his negligent misrepresentation claims and beyond the two year statute of limitations period. *See generally* Doc. 1, Compl. However, Zoccam filed the 2019 Filed Restatement on August 26, 2019, and the Texas Secretary of State accepted the filing on August 29, 2019. Doc. 16, Am. Compl., ¶ 41. As of August 29, 2019, Setliff "knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *See Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997). Thus, Setliff had two years from August 29, 2019, to file his negligent misrepresentation claim. Because he filed the claim on August 26, 2021, his claim is not time barred.

However, Zoccam successfully presents its second argument. As with the conversion claim discussed above, the economic loss rule prohibits Setliff's negligent misrepresentation claim. "[A]plaintiff may not bring a claim for negligent misrepresentation unless the plaintiff can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim." *JPMorgan Chase Bank*, 519 F. App'x at 865 (quoting *Sterling Chems., Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 797 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)). Setliff alleges that Zoccam negligently misrepresented "the validity, voting, dividend, and liquidation rights of the Class B Common Stock, and the need for and ability of Zoccam to make the Proposed Subchapter S Election" that injured him. Doc. 16, Am. Compl., ¶¶ 124, 127. This injury mirrors the breach-of-contract-claim injury; the loss of voting, dividend, and liquidation rights from the 2019 Filed Restatement. *See id.* ¶ 40 (alleging the loss of exchange and conversion, liquidation, dividend, and voting rights, and preventing dilution because of Cook's and Zoccam's misrepresentations and omissions and the 2019 Filed Restatement). Accordingly, the Court **DISMISSES** Setliff's negligent misrepresentation claim as prohibited by the economic loss rule.

## H.    *Leave to Amend*

Given that this is the Court's first opportunity to assess the sufficiency of Setliff's allegations, the Court deems it appropriate to provide him one chance to amend his pleadings in light of the deficiencies noted in this Order. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). This second amended complaint shall be filed within **THIRTY (30)** days of the date of this Order.

IV.

CONCLUSION

For the foregoing reasons, Cook's motion to dismiss (Doc. 19) is **GRANTED** and Setliff's claims against Cook are **DISMISSED WITHOUT PREJUDICE**. Zoccam's motion to dismiss (Doc. 21) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court **DISMISSES WITHOUT PREJUDICE** all claims except for the breach-of-contract claims against Zoccam. Within **THIRTY (30)** days of the date of this order, Setliff may file a second amended complaint as permitted in Part H, *supra*. From the date of Setliff's filing, Defendants have twenty-one (21) days to file an answer or motion to dismiss pursuant to Federal Rule of Civil Procedure 12.

**SO ORDERED**.

**SIGNED: February 18, 2022.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 34 -