UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. REUBEN SETLIFF, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-CV-2025-B |
| | § | |
| ZOCCAM TECHNOLOGIES, INC., and | § | |
| ASHLEY L. COOK, | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Ashley L. Cook (Cook)'s and Zoccam Technologies, Inc. (Zoccam)'s (collectively, Defendants) Motions to Dismiss (Docs. 90, 92) Dr. Reuben Setliff (Setliff)'s Second Amended Complaint (SAC) (Doc. 67) for failure to state a claim. For the following reasons, the Court **GRANTS** Cook's Motion and **GRANTS IN PART** and **DENIES IN PART** Zoccam's Motion.

## I.

## BACKGROUND[1]

This is a securities dispute concerning Setliff's loss of various shareholder rights due to the exchange or conversion of his preferred stock to common stock. Doc. 67, SAC, ¶¶ 1–4. Zoccam "provid[es] real estate closing services through a proprietary and patented software application." *Id.* ¶ 17. In 2015, Zoccam converted from a limited liability company into a C-corporation by "fil[ing] a certificate of formation (the '2015 Certificate of Formation') with the Texas Secretary of State."

---

[1] The Court draws the following factual account from Setliff's SAC (Doc. 67).

*Id.* ¶ 18. "The 2015 Certificate of Formation authorized [the issuance of] 500,000 shares of Series A Preferred Stock . . . and 3,500,000 shares of Common Stock." *Id.*

In 2016, Setliff invested $1,227,000 in Zoccam, but Cook, Zoccam's CEO, "refused . . . to issue [him] share certificates . . . or recognize him as a shareholder." *Id.* ¶ 26. Setliff "threatened to file suit[,]" and Setliff, Zoccam, and Cook "executed a settlement agreement (the 'Settlement Agreement') and a Stock Purchase Confirmation Agreement (the 'Stock Purchase Agreement')."[2] *Id.* ¶¶ 27–28. Under the Settlement Agreement[3], Setliff received 200,000 shares of Series A Preferred Stock; 718,357 shares of Common Stock; and a seat on the Zoccam's Board of Directors. *Id.* ¶¶ 29, 31. His ownership of the Series A Preferred Stock gave Setliff a forty percent ownership share and "a de facto veto over certain fundamental corporate actions[.]" *Id.* ¶ 99. The Stock Purchase Agreement included the following provision:

> *Conversion and Redemption*. Company and Purchaser [Setliff] agree that the Series A Preferred Stock shall not be converted into common stock, or put or called for redemption prior to the earlier of (i) the conclusion of an underwritten public offering, or (ii) the consummation of a merger, consolidation or sale of all or substantially all of the Company's assets, or (iii) five years.

*Id.* ¶ 34. Under this provision, "Zoccam could not seek to redeem or convert the Series A Preferred Stock until May 24, 2023 at the earliest." *Id.* ¶ 35. As consideration for resolving the dispute, Setliff loaned "Zoccam $100,000 under a promissory note with a one-year maturity" (the Note) at a nine percent simple/non-compounded interest rate with an eighteen percent default compound interest rate. *Id.* ¶¶ 29, 134–35.

---

[2] For all intents and purposes, the two agreements constitute one singular agreement because the latter is incorporated by reference into the former. *Id.* ¶ 28.

[3] Schellpfeffer was also a party to this agreement. *Id.* ¶ 28. Setliff does not provide further information on who or what Schellpfeffer is and at other times spells the name as Schellpheffer. *See id.*

Despite previously converting to a C-corporation, Zoccam "continued to file its corporate tax returns with the IRS under the name 'Zoccam Technologies, LLC'." *Id.* ¶ 21. Zoccam also passed through losses to its shareholders with IRS Schedule K-1s from 2015–2020. *Id.* ¶¶ 23, 42.

Cook called for a Board Meeting to occur on or before October 29, 2018 (the October 2018 Board Meeting). *Id.* ¶ 38. Prior to the October 2018 Board Meeting, Cook retained Steven A. Holmes (Holmes) to represent herself and Zoccam and "provided [him] with his instructions." *Id.* ¶ 37. "At the October 2018 Board Meeting, the Board of Directors, Cook, and Holmes . . . discussed the potential for Zoccam to pass through losses to its shareholders," and Holmes stated that to do this, Zoccam would have to "elect tax treatment under Subchapter S of the Internal Revenue Code, 26 U.S.C. § 1361, *et seq.*" *Id.* ¶ 39. Holmes also represented that Zoccam would have to create "a single class of common stock . . . through a restatement of the 2015 Certificate of Formation (the "Proposed [Restatement])"." *Id.*

Following this meeting, "Holmes prepared a memorandum" outlining necessary changes to the 2015 Certificate of Formation in order to comply with IRS regulations. *Id.* ¶ 40. Cook then called a second board meeting on or before November 9, 2018 (the November 2018 Board Meeting). *Id.* ¶ 43. At this meeting, "[t]he Board voted unanimously to begin the process of a restatement to the 2015 Certificate of Formation but conditioned [that] any such proposal . . . was not to affect the rights granted to Setliff and Schellpfeffer under the Settlement Agreement." *Id.* ¶ 44. "The Board of Directors was not asked to consider a [Proposed Restatement and] . . . did not adopt a resolution to amend the 2015 Certificate of Formation." *Id.* ¶¶ 45, 47.

After the November 2018 Board meeting, "Zoccam drafted [the] Proposed [Restatement]." *Id.* ¶ 46. Setliff and Zoccam communicated about the Proposed Restatement, and Cook "agreed to

all of the changes [Setliff] requested[.]" *Id.* Zoccam transmitted the Restatement (the 2019 Filed Restatement) to the Texas Secretary of State on August 26, 2019, which was formally accepted on August 29, 2019. *Id.* ¶ 49. But this was not the version that Setliff had agreed to. *Id.* ¶ 52. The 2019 Filed Restatement increased the number of shares Zoccam could issue, removed any right of Class B Common Stock Shareholders "to approve the issuance of additional Class A Common Stock," and reduced the number of votes of Class B selected board members to one, while giving Class A selected board members two votes. *Id.* ¶ 53. Zoccam's Board of Directors did not hold a meeting to approve the 2019 Filed Restatement prior to its submission to the Texas Secretary of State. *Id.* ¶¶ 48–49. However, Cook and another Zoccam shareholder, Wayne Norton, signed an April 9, 2019, shareholder resolution "purporting to evidence shareholder approval of the 2019 . . . Filed Restatement." *Id.* ¶ 61. They did not own sixty-seven percent of the Series A Preferred Stock as required under Tex. Bus. Orgs. Code Ann. § 21.364 (TBOC) and the 2015 Certificate of Formation and therefore could not approve the 2019 Filed Restatement. *Id.* ¶¶ 59, 61, 63.

On November 19, 2020, Zoccam held a Board Meeting where Cook presented a Motion and Resolution to Ratify the 2019 Certificate of Formation (the Motion to Ratify) and the Board of Directors, except for Setliff, voted in favor of the motion. *Id.* ¶¶ 85–86. Zoccam claims that "69% of the holders of the Common Stock and 60% of the holders of the Series A Preferred Stock" voted in favor of the Motion to Ratify. *Id.* ¶ 87.

Similar to his first amended complaint, Plaintiff asserts a number of claims against Defendants. *Id.* ¶¶ 139–71. In its order concerning Defendants' respective motions to dismiss Setliff's first amended complaint, the Court dismissed without prejudice all claims except for two breach of contract claims against Zoccam. *Setliff v. Zoccam Techs., Inc.*, 2022 WL 504395 (N.D. Tex. Feb. 18,

2022). Setliff filed his SAC against Defendants on April 1, 2022.[4] *See* Doc. 67, SAC. He now brings nine claims against either Cook, Zoccam, or both: a claim for determination by the Court of the validity of allegedly defective corporate acts under TBOC § 21.194(a)(1) and (3)–(4), a declaratory judgment claim, a derivative breach of fiduciary duty claim, two separate breach-of-contract claims[5], and four separate fraud claims brought in the alternative to the TBOC claim. Doc. 67, SAC, ¶¶ 94, 139–71.

In response, Defendants filed their motions to dismiss on May 26, 2022, generally arguing that Setliff still fails to sufficiently plead claims under either Federal Rules of Civil Procedure 12(b)(6) or 9(b). Doc. 90, Cook's Mot.; Doc. 92, Zoccam's Mot. The motions are fully briefed and ripe for review, and the Court considers them below.

## II.

## LEGAL STANDARD

### A.  *Rule 12(b)(6) Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss,

---

[4] On April 8, 2022, one week after filing the SAC, Setliff moved to correct the SAC. Doc. 69, Mot. Leave Correct SAC. The Court denied the motion on May 5, 2022, because the Rule 16(b)(4) factors weighed against allowing the amendment. *Setliff v. Zoccam Techs., Inc.*, 2022 WL 1443783, at *2–3 (N.D. Tex. May 5, 2022) (applying the factors from *Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 819 (5th Cir. 2019)).

[5] Neither Defendant attacks the breach-of-contract claims, which the Court previously found sufficiently pleaded. *Setliff*, 2022 WL 504395, at *7–10. Therefore, the Court does not readdress these claims.

"[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

The Court's review under Rule 12(b)(6) is limited to a plaintiff's allegations in the complaint and to those documents attached to a defendant's motion to dismiss that are referred to in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). Otherwise, "the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c)." *Id.*

B.     *Rule 9(b)*

A dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015,

1017 (5th Cir. 1996). Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). When claims for fraud and negligent misrepresentation are based on the same set of alleged facts, Rule 9(b)'s heightened pleading standard applies. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003)); *see Paul v. Aviva Life & Annuity Co.*, 2010 WL 5105925, at *8 (N.D. Tex. Dec. 14, 2010) (applying Rule 9(b) to fraud and negligent misrepresentation claims that arose out of the same set of facts but were contained in separate counts in the complaint). A fraud claim requires pleading with particularity the "'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x. 890, 892 (5th Cir. 2013) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

## III.

## ANALYSIS

Zoccam attacks the TBOC, declaratory judgment, and fraud claims. Cook attacks the breach-of-fiduciary-duty and fraud claims. Below, the Court first addresses which documents it may consider in addressing these motions to dismiss. Then the Court addresses the claims challenged by Zoccam, then the claim challenged by Cook, and then the fraud claims challenged by both Defendants.

A.    *Whether the Court May Consider the Bylaws*

Setliff argues that the Rule 12(b)(6) standard does not permit the Court to consider outside materials such as Zoccam's bylaws (the Bylaws) to settle "fact-sensitive question[s]" such as whether: (1) the November 11, 2018 Board vote was intended to amend and restate the 2015 Certificate of

Formation; (2) the 2015 Certificate of Formation permitted a mere majority vote for fundamental actions; and (3) sufficient shareholders approved a resolution permitting Zoccam to file the 2019 Filed Restatement. Doc. 120, Setliff's Br., 12–15.

Zoccam attaches to its motion: a declaration from Cook, the November 2018 Board Meeting Minutes, the 2015 Certificate of Formation, Zoccam's bylaws, the Motion to Ratify, and the resolution to adopt the 2019 Filed Certificate of Formation. Doc. 94, Zoccam's App. All but Cook's declaration are directly referenced by Setliff and central to Setliff's claims. Doc. 67, SAC, ¶¶ 43–46, 55, 65, 66, 68, 72–73, 84, 87, 94–95, 100, 130. Therefore, the Court may and will consider these documents, except Cook's declaration—without converting the instant motions to ones for summary judgment. *Causey*, 394 F.3d at 288. However, the Court need not rely on the Bylaws to adjudicate the instant motions because they are largely incidental to the 2015 Certificate of Formation.

B.    *Claim 1: Declaration of Defective Corporate Acts (Zoccam)*

Setliff requests a court order declaring both the 2019 Filed Restatement and the Motion to Ratify fundamental actions "defective corporate act[s] within the meaning of TBOC § 21.901" under TBOC § 21.914(a) and "determining their validity and effectiveness," and "requiring measures [under TBOC § 21.914(c)(3)] to avoid harm to Setliff and other persons substantially and adversely affected by the purported ratification" of these actions. Doc. 67, SAC, ¶¶ 141–42.[6] Setliff avers that the 2019 Filed Restatement was a defective corporate act because (1) "[t]he Board of Directors did not adopt the resolution to . . . restate the 2015 Certificate of Formation"; (2) "Zoccam failed to give notice to shareholders"; and (3) Zoccam "failed to obtain any approval of the shareholders, much less the 67% [required] for the fundamental action." Doc. 67, SAC, ¶ 141. Additionally, Setliff

---

[6] The SAC contains duplicates of paragraphs 141 and 142. *See* Doc. 67, SAC, 37–38, 42. Here, the Court refers to paragraphs 141 and 142 on pages 37 and 38 of the SAC.

states that the Motion to Ratify was a defective corporate act because Zoccam failed to (1) provide notice to shareholders about the proposed ratification; (2) obtain "any approval of the shareholders, much less the 67% [required] for the fundamental action"; (3) "file a certificate of validation under TBOC § 21.908"; and (4) provide notice to shareholders about the ratified defective acts. *Id.*

"Fundamental actions" under TBOC include "an amendment of a certificate of formation." Tex. Bus. Orgs. Code Ann. § 21.364(a)(1). "To adopt an amendment to the certificate of formation of a corporation . . . the board of directors of the corporation shall: (1) adopt a resolution stating the proposed amendment; and (2) follow the procedures prescribed by Sections 21.053–055." *Id.* § 21.052(a). One of these procedures requires that "[e]ach shareholder of record entitled to vote shall be given written notice containing the proposed amendment or a summary of the changes to be effected within the time and in the manner provided by this code for giving notice of meetings to shareholders." *Id.* § 21.055(a). During the meeting, "the proposed amendment shall be adopted only on receiving the affirmative vote of shareholders entitled to vote required by Section 21.364," which is "the holders of at least two-thirds of the outstanding shares." *Id.* §§ 21.055(b), 21.364(b). However, § 21.365 allows a corporation to modify this two-thirds vote requirement to a simple majority vote. *Id.* § 21.364(b) (providing an exception to the two-thirds vote requirement if the certificate of formation is altered as prescribed in § 21.365); *id.* § 21.365.

Section 21.914 grants a court, upon application by—among others—"the corporation," a shareholder, or "member of the corporation's board of directors," the authority to declare as defective a "corporate act" or its ratification and to "require measures to remedy or avoid harm to any person substantially and adversely affected by" the ratification. Tex. Bus. Orgs. Code. Ann. § 21.194(a)–(c). A "[d]efective corporate act means . . . any act or transaction purportedly taken by or on behalf of

the corporation that is . . . within the power of a corporation to take under the corporate statute . . . , but is void or voidable due to a failure of authorization." *Id.* § 21.901(2).

A defective corporate act can be ratified by the board of directors or validated by a court. *Id.* §§ 21.902, 21.903(a). To ratify the defective corporate act, the board of directors must adopt a resolution stating:

> (1) the defective corporate act or acts to be ratified;
> (2) the date of each defective corporate act;
> (3) if the defective corporate act or acts involved the issuance of putative shares, the number and type of putative shares issued and the date or dates on which the putative shares were purportedly issued;
> (4) the nature of the failure of authorization with respect to each defective corporate act to be ratified; and
> (5) that the board of directors approves the ratification of the defective corporate act or acts.

*Id.* § 21.903(a). In deciding whether to validate a defective corporate act, a court may consider:

> (1) whether the defective corporate act was originally approved or effectuated with the belief that the approval or effectuation was in compliance with the provisions of the corporate statute or the governing documents of the corporation;
> (2) whether the corporation and the corporation's board of directors have treated the defective corporate act as a valid act or transaction and whether any person has acted in reliance on the public record that the defective corporate act was valid;
> (3) whether any person will be or was harmed by the ratification or validation of the defective corporate act, excluding any harm that would have resulted had the defective corporate act been valid when it was approved or took effect;
> (4) whether any person will be harmed by the failure to ratify or validate the defective corporate act; and
> (5) any other factors or considerations the district court considers just and equitable.

*Id.* §§ 21.902, 21.914(d).

First, Zoccam contends that the 2019 Certificate cannot be defective because "the Board[7] unanimously voted to amend the 2015 Certificate," as it claims Setliff has acknowledged. Doc. 93, Zoccam's Br., 6. By such action, absent "any requirement that the resolution be written," the board authorized amendment by parol authority. Doc. 133, Zoccam's Reply, 3 (citing *Urban v. First State Bank of Granger*, 609 S.W.2d 857, 858 (Tex. Civ. App.—Austin 1980, no writ)). Second, Zoccam argues that Setliff's notice to shareholders claims "are based on default TBOC provisions that the same Code provides can be modified by the controlling corporate documents." Doc. 93, Zoccam's Br., 6. Zoccam avers that its bylaws allow shareholders to give written consent in place of notice and a meeting. *Id.*; Doc. 94, Zoccam App., 30. Zoccam then alleges that Setliff misinterprets TBOC § 21.364(c), as the vote threshold only needs to be at least two-thirds of outstanding shares in each class "[i]f a class or series of shares is entitled to vote as a class or series on a fundamental action." Doc. 93, Zoccam's Br., 7 (quoting § 21.364(c)). According to Zoccam, holders of Series A Preferred Stock do not possess such an entitlement because Zoccam's 2015 Certificate of Formation states that those "holders . . . shall vote together with the holders of Common Stock as a single class." *Id.*; Doc. 94, Zoccam's App., 8. Third, Zoccam argues that TBOC §§ 21.364(b) and 21.365(a) allow for the Certificate of Formation to determine the number of votes needed, assuming that number is not less than a majority. Doc. 93, Zoccam's Br., 7–8; Doc. 94, Zoccam's App., 22. The 2015 Certificate of Formation reads: "the act of shareholders on that matter shall be the affirmative vote of a majority

---

[7] "At the November 2018 Board Meeting, a vote was taken of the Board of Directors regarding Holmes' proposal [to amend the 2015 Certificate of Formation]. The Board voted unanimously to begin the process of a restatement to the 2015 Certificate of Formation but conditioned any such proposal upon the express proviso that it was not to affect the rights granted to Setliff and Schellpfeffer under the Settlement Agreement and Stock Purchase Agreement."

Doc. 67, SAC, ¶ 44.

of the shares entitled to vote on that matter, rather than the affirmative vote otherwise required by the TBOC." Doc. 93, Zoccam's Br., 8 (emphasis omitted). Lastly, Zoccam asserts that because the 2019 Certificate of Formation was not a defective corporate act for the reasons above, the Court need not address whether the 2020 Ratification was a defective corporate act. *Id.* at 8–9.

Setliff clarifies that his claim is based on an "*unauthorized* corporate act," not a defective corporate act.[8] Doc. 120, Setliff's Br., 5–6. He urges the Court to look to Delaware law because the chapter of TBOC at issue is based on the Delaware Code, and there is no Texas caselaw on the provisions governing his claim. *Id.* He then argues that the Court may set aside a redemption of stock, like here, "if the provisions establishing a right to redemption are not followed[.]" *Id.* at 7 (quoting *Herring Bancorp, Inc. v. Mickelson*, 529 S.W.3d 216, 223 (Tex. App.—Amarillo 2017, pet. denied)). He further claims that "common law ratification is an affirmative defense" and he has "plead[ed] facts which preclude such ratification" because of a lack of required disclosure and "Zoccam's failure to follow the statutory mechanism for ratification under TBOC." *Id.* at 10–11.

### 1. The 2019 Filed Restatement

The 2019 Filed Restatement, an amendment to the 2015 Certificate of Formation, was a fundamental action. *See* Tex. Bus. Orgs. Code Ann. § 21.364(a)(1). As a fundamental action, Zoccam had to obtain a two-thirds majority approving the resolution to amend the 2015 Certificate of Formation. *See id.* § 21.364(b). Setliff pleads that Zoccam's board "voted unanimously" to restate the 2015 Certificate of Formation. Doc. 67, SAC, ¶ 44. Therefore, over two-thirds of

---

[8] An unauthorized corporate act is a corporate act committed without proper authorization for the act. *See Nguyen v. View, Inc.*, 2017 WL 2439074, at *1–2 (Del. Ch. June 6, 2017) (finding that a corporate act of securing financing after the majority shareholder revoked consent was an unauthorized corporate act); *In re Elgin's Paint & Body Shop, Inc.*, 249 B.R. 110 (Bankr. D. S.C. Jan. 28, 2000) (holding that the president of a company committed an unauthorized corporate act when he filed the company's petition for bankruptcy without special authorization as required by the relevant state code).

shareholders—all—approved a resolution to amend the 2015 Certificate of Formation, and it was not a defective act based on § 21.364(b).[9]

However, the Court agrees with Setliff that the later adoption of the amendment to the 2015 Certificate of Formation that became the 2019 Filed Restatement did not follow the procedures outlined in TBOC § 21.052. Doc. 67, SAC, ¶ 141; *see* Tex. Bus. Orgs. Code. Ann. § 21.052 (stating that in order "[t]o adopt an amendment to the certificate of formation . . . , the board of directors . . . shall: (1) adopt a resolution stating the proposed amendment; and (2) follow the procedures prescribed by Sections 21.053-21.055."). The relevant portion of the November 2018 Board Meeting minutes reads: "Vote was taken to amend the certificate of formation. The board unanimously voted to approve the amendment of the certificate of formation but the amendment of the certificate of formation does not affect the settlement agreement between Don, Ruben [sic], and Ashley." Doc. 94, Zoccam's App., 5. This shows that the Board of Directors unanimously voted to amend the certificate of formation, but does not show a resolution stating the proposed amendment, as § 21.052 requires.

The Court finds Zoccam's argument that the November 2018 Board Meeting authorized amendment of the 2015 Certificate of Formation by parol authority unpersuasive. In the case cited by Zoccam, *Urban v. First State Bank of Granger*, the court found uncontroverted evidence that the president of a corporation acted with parol authority to take out a loan on behalf of the corporation. 609 S.W.2d at 857–58. The bylaws of that corporation did not require a written resolution and the board of directors previously orally authorized the loan. *Id.* at 858. Unlike in *Urban*, here there is a

---

[9] There is no fact issue at this point in the Court's analysis as Setliff contends, Doc. 120, Setliff's Br., 12, because he pleaded that Zoccam's board satisfied the TBOC voting requirements to begin the process to amend the Certificate of Formation. Doc. 67, SAC, ¶ 44.

statutorily imposed requirement to state the proposed action to be taken—amendment to the 2015 Certificate of Formation. *See* Tex. Bus. Orgs. Code. Ann. § 21.052. It does not appear that the Bylaws altered this requirement. *See* Doc. 94, Zoccam's App. Ex. A-3, 25–44. Accordingly, the Court finds Setliff sufficiently pleaded his TBOC claim for the 2019 Filed Restatement and **DENIES** Zoccam's Motion to Dismiss this portion of the claim.

### 2.    2020 Motion to Ratify

If a defective corporate act is properly ratified, then it "may not be considered void or voidable," and "the effect shall be retroactive to the time of the defective corporate act." Tex. Bus. Orgs. Code Ann. § 21.909. Failing to ratify a corporate act as provided in the TBOC "does not, of itself, affect the validity or effectiveness of any act or transaction or the issuance of any shares properly ratified under common law or otherwise." *Id.* § 21.913.

The 2020 Motion to Ratify an amendment to the 2015 Certificate of Formation, was a fundamental action. *See id.* § 21.364(a)(1). To adopt a resolution to ratify a defective corporate act, a corporation must comply with "the quorum and voting requirements applicable at the time of the adoption of the resolutions for the type of defective corporate act proposed to be ratified." *Id.* § 21.904(a). In this case, Zoccam had to comply with the procedures to amend a certificate of formation, which require "direct[ing] that the proposed amendment be submitted to a vote of the shareholders at a meeting" after first giving notice of the meeting "as prescribed by the corporation's bylaws."[10] Tex. Bus. Orgs. Code §§ 21.054(1), 21.364(a)–(b). Zoccam's Bylaws require "a written notice of the meeting [to] state the place, . . . date and hour of the meeting, the means of remote

---

[10] Whether the meeting to discuss the amendment is construed as a regular or special meeting does not alter the Court's analysis because notice may be altered by the bylaws for either type of meeting. *See* Tex. Bus. Orgs. Code Ann. § 21.364(a)–(b).

communication, . . . and, in the case of a special meeting, the purpose or purposes for which the meeting is called." Doc. 94, Zoccam's App., 28. However, the Bylaws also permit:

> any action which may be taken at any annual or special meeting . . . , may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing . . . shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting . . . were present and voted.

*Id.* at 30. According to the Bylaws, no meeting and thus, no notice of meeting was required so long as Zoccam had the written consent of enough shareholders to authorize the 2020 Motion to Ratify.

Next, the Court must determine whether enough shareholders provided such consent. Fundamental actions such as amendment to the certificate of formation require "two-thirds of the outstanding shares" to approve the amendment. Tex. Bus. Orgs. Code § 21.364(b). However, § 21.364 begins with an exception which reads:

> *Except as otherwise provided by this code or the certificate of formation of a corporation in accordance with Section 21.365,* the vote required for approval of a fundamental action by the shareholders is the affirmative vote of the holders of at least two-thirds of the outstanding shares entitled to vote on the fundamental action.

*Id.* (emphasis added). Setliff alleges that "the Texas legislature clearly intended for 'fundamental actions' to require a two thirds majority," creating ambiguity between § 21.364 and § 21.365. The text of the statute clearly does not.[11] *See, e.g., Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 562

---

[11] The prefatory clause must be read in conjunction with the ambulatory clause. *See generally Dist. of Columbia v. Heller*, 554 U.S. 570, 577–78 (2008). And a "purposive argument simply cannot overcome the force of the plain text." *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 460 (2012). In this instance, the prefatory clause provides an exception to the two-thirds vote requirement, and this exception allows a corporation to set the vote requirement to no less than a simple majority. Tex. Bus. Orgs. Code § 21.365. Therefore, there is no ambiguity, and the Court will not read in any ambiguity that does not actually exist. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018) ("Because the plain language of [the statute] is 'unambiguous,' 'our inquiry begins with the statutory text, and ends there as well.'" (quoting *BedRoc Limited, LLC v. United States*, 541 U.S. 176, 183 (2004) (plurality opinion))); *Jaster*, 438 S.W.3d at 562.

(Tex. 2014) (describing how Texas courts limit their analysis "to the words of the statute and apply the plain meaning of those words" while reading the provision contextually).

As allowed under TBOC § 21.365, Zoccam amended the voting requirement to an "affirmative vote of a majority of the shares entitled to vote on the matter, rather than the affirmative vote otherwise required by the TBOC." Doc. 94, Zoccam's App. Ex. A-2, 22. Thus, the 2020 Motion to Ratify required only a majority vote, which was satisfied. Doc. 67, SAC, ¶ 87 (pleading that according to Zoccam "69% of the holders of the holders of the Common Stock and 60% of the holders of the Series A Preferred Stock" voted to ratify the amendment).

The Court must now decide whether Zoccam was required to file a certificate of validation and whether Zoccam failed to give proper notice of the ratified defective acts per TBOC § 21.908. Zoccam lightly addresses these provisions of Setliff's TBOC claim to assert that "ratification . . . is 'not the exclusive means of ratifying or validating any act or transaction taken by or on behalf of the corporation." Doc. 93, Zoccam's Br., 9 (quoting Tex. Bus. Orgs. Code § 21.913(a)). While the Court agrees with this plain textual reading of the statute, Zoccam has not provided sufficient evidence for the Court to find that Zoccam ratified the allegedly defective 2019 Filed Restatement through the Motion to Ratify or any other non-exclusive means. Such an argument is better suited for summary judgment when the Court can fully analyze the factors as set out in TBOC § 21.194(d) or the evidence that establishes another means of ratification. Because the Court does not have the evidence before it, nor would it be appropriate to make such a factual determination on that evidence at the motion-to-dismiss stage, the Court **DENIES** Zoccam's Motion to Dismiss for the TBOC claim.

-16-

C.    *Claim 2: Declaratory Judgment to Set Aside and Enjoin* Ultra Vires Acts *(Zoccam)*

Setliff next requests a number of declarations pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, recognizing "the status and rights of Setliff as an owner and holder of the Series A Preferred Stock and Common Stock . . . as such status and rights existed immediately prior to the November 2018 Board Meeting." Doc. 67, SAC, ¶¶ 145–46.[12] Setliff claims that there is "[a]n active case or controversy . . . because . . . Zoccam has purported to take actions which are outside the powers granted to the corporation and the Board of Directors under the 2015 Certificate of Formation." *Id.* ¶ 144. Specifically, Plaintiff requests the following declarations:

> (a) Without Setliff's consent as a shareholder to surrender of his Series A Preferred Stock, which was never obtained, Zoccam could not redeem or convert the Series A Preferred Stock until at least May 24, 2023, and only then by following the procedure laid down in the 2015 Certificate of Formation and paying the Conversion Price and cumulative dividend due.

> (b) Under TBOC § 21.302, only the Board of Directors can approve a distribution, and further cannot make a distribution which violates its own Certificate of Formation.

> (c) By purporting to restate the 2015 Certificate of Formation without (i) Board or shareholder approval , or (ii) following the requirements of TBOC, Zoccam has also purported to exchange, cancel, or reclassify the Series A Preferred Stock and Common Stock which operates as an involuntary redemption of the stock, which is a distribution under TBOC § 21.301–302.

> (d) No Board Approval for the 2019 Restated Certificate was ever noticed, sought, or obtained. Further, any attempt to seek approval of the Board of Directors before May 24, 2023 also violates the 2015 Certificate of Formation.

> (e) Zoccam failed to give any notice of a proposed involuntary redemption, whether as required by TBOC, the 2015 Certificate of formation, or at all, and cannot do so retrospectively, rendering any purported redemption of the stock void.

---

[12] The Court's citations to paragraphs 143 to 147 in the SAC in this declaratory judgment section are to the paragraphs found on pages 38 to 40 of the SAC.

(f) In the circumstances, the unilateral restatement to the 2015 Certificate of Formation by Zoccam, or Cook or Holmes acting for Zoccam, is null and void, and of no legal effect.

(g) Insofar as any restatement has taken place, or alternatively, by reason of any Class A Common stock and Class B Common Stock being issued in violation of the 2015 Certificate of Formation, any such stock was void from its inception and Setliff remains a holder of Series A Preferred Stock and Common Stock.

(h) Further, by apparently failing to issue stock certificates for the Class A and Class B Common and obtain surrender of the Series A Preferred Stock and Common Stock Certificates, the purported 2019 Defective Filed Restatement was never fully consummated and is not binding upon the Board of Directors, the shareholders, or the corporation.

*Id.* ¶ 145. Setliff also "seeks further necessary or proper relief based on a declaratory judgment under 28 U.S.C. § 2202, including . . . attorney's fees, and costs of court." *Id.* ¶ 147.

"In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). District courts engage in a three-step analysis when determining whether a declaratory judgment action should proceed. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). First, the court asks whether it has subject matter jurisdiction because an "'actual controversy' exists between the parties." *Id.* Second, the "court must resolve whether it has the 'authority' to grant declaratory relief in the case presented." *Id.* Third, the court examines "how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* "In this circuit, 'district courts . . . regularly reject declaratory judgment claims seeking the resolution of issues that are the mirror image of other claims in a lawsuit.'" *DM Arbor Ct., Ltd. v. City of Hous.*, 2021 WL 4926015, at *12 (S.D. Tex. Oct. 21, 2021) (collecting cases). A declaratory judgment is duplicative where the relief flowing from the declaration is the same as the resolution of another claim. *See*

-18-

*Robinson v. Hunt Cnty.*, 921 F.3d 440, 450–51 (5th Cir. 2019). However, a court cannot dismiss a declaratory judgment "on the basis of whim or personal disinclination." *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993) (quoting *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28–29 (5th Cir. 1989)).

The Court analyzed Setliff's prior declaratory judgment claims when deciding Defendants' Motions to Dismiss Setliff's First Amended Complaint. *Setliff, Inc.*, 2022 WL 504395, at *5. Then, the Court found that it had subject matter jurisdiction over the declaratory judgment claims and possessed the authority to grant the declaratory judgments requested by Setliff. *Id.* Further, of the *Trejo* factors, the Court determined that the sixth factor, "whether retaining the lawsuit would serve the purposes of judicial economy," was the most important for Setliff's declaratory claims.[13] *Id.* at *4–5 (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 591 (5th Cir. 1994)). Thus, the Court will confine its analysis of Setliff's declaratory claim to this sixth factor.

Zoccam argues for dismissal of all but paragraphs (e) and (h) of Setliff's declaratory judgment claims because they duplicate his "breach of contract, defective corporate act, and fraud claims," and "resolution of th[ose] claims . . . would resolve the questions the declaratory action raises." Doc. 93, Zoccam's Br., 10–11 (citing *Amerisure Ins. Co v. Thermacor Process, Inc.*, 2021 WL 1056435, at *7 (N.D. Tex. Mar. 19, 2021)). Specifically, Zoccam argues that paragraphs (a)–(c) and (g) are

---

[13] "First, there is no pending state action. Second, Setliff did not file suit in anticipation of suit from Defendants because his rights were the ones allegedly violated. Third, Defendants do not accuse Setliff of forum shopping. Factors four and seven are inapplicable. Fifth, federal court is convenient for the parties because they are based in either Texas or Colorado. Sixth, and most importantly, this claim can be properly determined via [Setliff's duplicative claim]."

*Setliff*, 2022 WL 504395, at *5.

duplicative of Setliff's breach-of-contract claims; paragraphs (d) and (f) are duplicative of the defective corporate acts claims; and paragraphs (b)–(c) are duplicative of Setliff's fraud claims. *Id.*

Setliff responds that his "declaratory-judgment claims . . . are not duplicative of the TBOC claims, or the alternative breach of contract and fraud claims" because: (1) factual overlap between claims does not render a declaratory judgment claim duplicative; (2) "unless there is a 'corporate act' there is potentially a question of jurisdiction under Subchapter R"; (3) "the Court cannot reach [the claims] without first determining whether there has been a valid corporate act"; (4) "the relief sought is fundamentally different"; and (5) Zoccam's arguments are inadequate and largely unsupported. Doc. 120, Setliff's Br., 15–24 (citing *Robinson v. Hunt Cnty.*, 921 F.3d 440, 450–51 (5th Cir. 2019)).[14]

Regarding the TBOC claims, the Court agrees with Setliff. Section 21.913 applies to a "corporate act." Tex. Bus. Orgs. Code. Ann. § 21.913. Whether Zoccam's actions fall under

---

[14] Setliff's reliance on *Robinson v. Hunt County* is misplaced. The plaintiff in *Robinson* brought constitutional claims against the defendants for blocking her and deleting her comments on a county sheriff's Facebook page. 921 F.3d 440, 445 (5th Cir. 2019). She also sought "a declaratory judgment that the defendants' administration of the [Hunt County Sheriff's Office] Facebook page violate[d] the First and Fourteenth Amendments, and that her ongoing ban from the page [wa]s an impermissible prior restraint." *Id.* at 450. After favorably citing to one of this Court's prior decisions collecting cases where district courts "regularly dismiss[]" declaratory judgment claims "if they add nothing to [a breach-of-contract] lawsuit," the Fifth Circuit reversed the district court's dismissal of the declaratory judgment claim because the plaintiff sought "prospective relief . . . distinct from her claim for monetary damages"—"a declaration that [one defendant] may not continue to ban her from the[ir] Facebook page." *Id.* at 450–451 (citing *Flanagan v. Chesapeake Exp., LLC*, 2015 WL 6736648, at *4 (N.D. Tex. Nov. 4, 2015)). Further, the Fifth Circuit found "[t]he constitutional claims at issue in th[e] case . . . dissimilar from a breach of contract action." *Id.*

*Robinson* and the instant case are very different. The plaintiff in *Robinson* brought constitutional claims, while the instant case is essentially a breach-of-contract case. *Compare id.* at 445, *with* Doc. 67, SAC, ¶¶ 133–171. Additionally, the *Robinson* court did not need to reach Robinson's Facebook-ban issue to decide her other claims, *see Robinson*, 921 F.3d at 451, while this Court will have to decide the issues presented in paragraphs (a), (b), (c), and (g) when adjudicating Setliff's breach-of-contract and TBOC claims. Finally, unlike in *Robinson*, all of Setliff's requested relief might be awarded based on his breach-of-contract and TBOC claims. Doc. 67, SAC, ¶¶ 173–81, 185–86 (seeking monetary relief, a permanent injunction, and reformation of the 2019 Filed Restatement relief that may result from his breach-of-contract and TBOC claims).

corporate acts or *ultra vires* acts[15] has yet to be decided by the Court. Further, this Court has not yet decided whether an *ultra vires* act is considered a corporate act under Texas law and is aware of no case deciding the question. Should the Court decide an *ultra vires* act is not a corporate act, then declaratory judgment claims (d) and (f) would not be redundant of the TBOC claims because the TBOC would not apply. Therefore, the Court **DENIES** Zoccam's Motion to Dismiss paragraphs (d) and (f) of the declaratory judgment claims.

However, the Court finds the remaining challenged declaratory judgment claims redundant. The breach-of-contract and fraud claims seek the same relief as declaratory judgment claims (a), (b), (c), and (g). Paragraph (a) concerns the early conversion or redemption of Series A Preferred Stock, which is also part of the breach-of-contract claim for the Settlement Agreement and Stock Purchase Agreement. Doc. 67, SAC, ¶¶ 136(a),[16] 145(a). The same breach-of-contract claim also alleges a breach because the Board of Directors did not vote and approve any noncompliance with the Settlement Agreement and Stock Purchase Agreement, which mirrors paragraph (b). *Id.* ¶¶ 136(a)(i)–(ii), 145(b). Paragraph (c) parallels the breach-of-contract claim and the fraud claims premised on the Defendants' Filing Omissions.[17] *Id.* ¶¶ 136(a)(i)–(ii), 95(i). Finally, paragraph (g) duplicates the breach-of-contract claim disputing Setliff's rights and ownership of the Series A Preferred Stock and Common Stock. *Id.* ¶¶ 136(b), 145(g). As such, these declaratory judgment claims are redundant of Setliff's other claims.

---

[15] An *ultra vires* act is a corporate act "beyond the scope either of the express or implied powers" of the corporate charter. *See Temple Lumber Co. v. Miller*, 169 S.W.2d 256, 258 (Tex. App.—Fort Worth, 1943, writ ref'd w.o.m.).

[16] Because of the duplicative paragraphs numbered 136, the Court clarifies that the citations in this paragraph are to the paragraph 136 found on page 41 of the SAC.

[17] As discussed in Section III(F), Setliff alleges that Defendants failed to disclose the 2019 Filed Restatement prior to filing with the Texas Secretary of State.

For the above reasons, the Court **DISMISSES** paragraphs (a), (b), (c), and (g) of Setliff's declaratory judgment claim.

D.     *Claim Three: Breach of Fiduciary Duty (Zoccam Derivatively Against Cook)*

Setliff claims a breach of fiduciary duty against Cook in a derivative action on behalf of Zoccam. Doc. 67, SAC, ¶¶ 127–29. "Cook, as CEO of Zoccam, . . . breached her fiduciary duties owed to the corporation by engaging in *ultra-vires* acts, fraudulent and injurious practices, and negligence as to the management of the corporation's affairs," he alleges. *Id.* ¶¶ 127–28.

"Under Texas law, the elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship; (2) the defendants must have breached his fiduciary duty; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Ebert v. Gustin*, 2016 WL 11663163, at *9 (N.D. Tex. May 18, 2016), *amended by* 2016 WL 11663145 (N.D. Tex. Dec. 2, 2016) (citing *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007)). However, as a threshold matter, bringing a shareholder derivative action comes with prerequisites and pleading requirements.

Before the Court can consider the merits of the breach of fiduciary duty claim, it must consider the threshold question of whether Setliff satisfied the procedural prerequisites for a derivative action. A derivative action "permits an individual shareholder to bring 'suit to enforce a *corporate* cause of action against officers, directors, and third parties.'" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)). "To prevent abuse of this remedy" certain procedural preconditions must be satisfied. *Id.* at 95–96; Fed. R. Civ. P. 23.1. Relevant to this case, one such requirement is that the "complaint must be verified." Fed. R. Civ. P. 23.1; *see Marron ex rel. Stewart & Stevenson Servs., Inc. v. Ream*, 2006 WL 2734267, at *3 (S.D. Tex. May 5, 2006) (granting motion to dismiss after the plaintiff failed to conform with Rule 23.1).

-22-

Cook calls for dismissal of the breach of fiduciary duty claim, in part, "because [Setliff] failed to verify his complaint." Doc. 91, Cook's Br., 4.

Setliff responds that the Court should find his verification valid, and the claim should not be dismissed, because after filing his unverified SAC, Setliff filed a verification of the SAC, Doc. 89, Setliff's V.S., and thus "Setliff has properly verified the SAC for the purposes of Rule 23.1." Doc. 120, Setliff's Br., 23. Or, if not valid, "fairness demands that Setliff be permitted to verify his claims within 30 days." *Id.* at 24. Setliff alleges that "[d]ismissal would not be appropriate for the following reasons":

> (1) It is open to the Court to dispense with the need for verification if it is satisfied that it is not a "strike suit"—which it clearly is not.
>
> (2) Setliff clearly explains in the Verification that he reviewed the derivative claim paragraphs in the SAC on April 1, 2022[,] before it was filed. Nothing was changed in the relevant paragraphs between Setliffs' review, and the filing later that evening.
>
> (3) Fairness requires that the Verification stand. Setliff has been forced to plead the majority of the suit on information and belief. Now, just as Defendants are producing documents which bear out his allegations, and which could be incorporated into concrete allegation in a subsequent pleading, Cook urges the Court to punish Setliff for the information vacuum it has intentionally created.
>
> (4) Setliff has been unable to locate any authority to the effect that the addition of a Verification to a complaint requires the court to approve a motion to amend under Fed. R. Civ. P. 15 or 16—and Zoccam does not present any either.

*Id.*

The Court finds that Setliff was required to and failed to verify his claim before filing it. Setliff cites *Weisfeld v. Spartans Industries, Inc.*, which states that "noncompliance with formal verification requirements of the federal rules applicable to stockholder actions will not be grounds for dismissal of the complaint where counsel for plaintiff has diligently investigated the possible charges prior to filing the complaint." 58 F.R.D. 570, 577 (S.D.N.Y. 1972) (citing *Surowitz v. Hilton Hotels Corp.*, 383

U.S. 363 (1966)). However, as Setliff concedes, a majority of his pleadings in this suit are on "information and belief." Doc. 120, Setliff's Br., 24. Setliff alleges that Defendants "forced" him into relying on information and belief; while, to the contrary, declaring under penalty of perjury that "[i]n the case of any allegations of which [he] do[es] not have personal knowledge, [he] believe[s] the allegations to be true based on documents in [his] possession, or those obtained by [his] counsel." Doc. 89, Setliff's V.S., 4.

The purpose of verification is to ensure "substantial and diligent investigation" is done before filing the suit. *Surowitz*, 383 U.S. at 371–72. Setliff's reliance on information and belief contradicts such an inference. Further, the Court is unable to discern what portion of the SAC Setliff tried to verify. Setliff's verification applies to "paragraphs 102 to 127" of the SAC, Doc. 89, Setliff's V.S., 4, but paragraphs 101–26 do not exist in the SAC. *See* Doc. 67, SAC, 29–32. Setliff appears to have only verified a single paragraph, 127; moreover, the SAC contains two paragraph 127's. Doc. 67, SAC, 32, 40. Therefore, the Court declines to allow his retrospective verification to gain validity.

Whether the Court will allow Setliff additional time to file a verified claim is a closer call. While some courts have granted additional time, in this case the Court already denied Plaintiff's motion for leave to amend his SAC, in which he sought to add the verification, which the Court noted "might prejudice the defendant." *Setliff v. Zoccam Techs.*, Inc., 2022 WL 1443783, at *3 (N.D. Tex. May 5, 2022). Such prejudice is heightened when the verified portion does not appear in the operative complaint and would require the Court to amend the scheduling order to allow amendment and give Defendants a third opportunity to address any deficiencies in the new complaint. The Court also denied Setliff's motion for leave to correct his SAC because, along with

almost all other Rule 16(b) factors weighing against him, Setliff "failed to comply with the Court's Scheduling Order and this Court's prior Order." *Id.* at *2.

In sum, Setliff's failure to follow Court orders, coupled with the failure to properly and timely verify his SAC, warrants dismissal of Setliff's derivative claim. *See Novedea Sys., Inc. v. Colaberry, Inc.*, 2020 WL 9211073, at *6 (E.D. Tex. Dec. 11, 2020). The Court declines to acknowledge Setliff's unilateral filing of verification, essentially an amendment to his Complaint, two weeks after the Court denied leave to do so. *See Dall. S. Mill, Inc. v. Kaolin Mushroom Farms, Inc.*, 2006 WL 8437486, at *1 (N.D. Tex. Aug. 2, 2006) (striking an amended complaint after the plaintiff filed without leave of court). Thus, the Court **DISMISSES** Setliff's derivative breach of fiduciary duty claim.

E.    *Claim Six: Securities Fraud–Tex. Rev. Civ. Stat. Ann. Art. 581-83 (Cook and Zoccam)*

Plaintiff alleges securities fraud against both Zoccam and Cook. Doc. 67, SAC, ¶¶ 146–52.[18] Setliff avers that "if the 2019 Defective Filed Restatement was effective to convert or exchange Setliff's Common Stock and Series A Preferred Stock, the conversion or exchange was induced or procured by fraud by Zoccam" in violation of the Texas Securities Act (TSA). *Id.*; Tex. Rev. Stat. Ann Art. 581-33.[19]

The Court, as Setliff acknowledges in stating that he "reasserts this claim to preserve error," Doc. 67, SAC, 43 n.5, already ruled on this identical claim. *Setliff*, 2022 WL 504395, at *11. Accordingly, the Court again **DISMISSES** Setliff's securities fraud claim.

---

[18] The Court's citations to paragraphs 146 to 152 in the SAC in this securities fraud section are to the paragraphs found on page 43 of the SAC.

[19] The Texas Legislature repealed and replaced the prior version of the TSA in 2019 and the updated version took effect on January 1, 2022. *See* Tex. Gov't Code Ann. § 4001.001, *et seq.* Because the prior version was in effect when Setliff's cause of action arose, the Court analyzes the claims under the prior version of the law. *See Vela v. City of Hous.*, 276 F.3d 659, 673 (5th Cir. 2001).

F.    *Claims Seven–Nine: Statutory Fraud; Common Law Fraud; Fraud by Nondisclosure (Cook and Zoccam)*

"The elements of statutory fraud under section 27.01 are essentially identical to the elements of common law fraud except that the statute does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages." *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 726 (Tex. App.—Waco 1998, pet. denied). To state a claim for common law fraud, a plaintiff must allege: "(1) a material representation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party, and (6) causing injury." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009) (citing *Jag Media Holdings, Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 709 (S.D. Tex. 2004); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). Fraud by nondisclosure requires a plaintiff to prove:

> (1) a deliberate failure to disclose material facts, (2) by one who had a duty to disclose such facts, (3) to another who was ignorant of the facts and did not have an equal opportunity to discover them, (4) with the intent the listener act or refrain from acting, and (5) the listener relies on the nondisclosure resulting in injury.

*Wise v. SR Dall., LLC*, 436 S.W.3d 402, 409 (Tex. App.—Dallas 2014, pet. denied). Under Texas law, a false representation is material "if a reasonable person would attach importance to and be induced to act on the information." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010). Fraud claims are subject to the pleading standards of Rule 9(b). *Flaherty*, 565 F.3d at 213.

Setliff brings statutory fraud, common law fraud, and fraud by nondisclosure claims alleging that "the conversion or exchange [of Setliff's Common Stock and Series A Preferred Stock] was induced or procured by the fraud of Zoccam and Cook." Doc. 67, SAC, ¶¶ 153, 158, 163. Moreover,

-26-

Setliff alleges that Defendants "knew that the statements [or omissions] were false or recklessly disregarded the truth"; Defendants intended to induce Setliff into exchanging his Common Stock; Setliff, assuming there was a valid exchange, exchanged his stock "in reliance on Cook's and Zoccam's false statements and omissions of material fact"; and Setliff has been injured as a result of these statements. *Id.* ¶¶ 154–57, 160–62, 164, 169–71. Specific to the fraud by nondisclosure claim, Setliff claims that "Cook and Zoccam had a duty to disclose . . . because Cook and Zoccam partially disclosed information to Setliff which created a substantially false impression." *Id.* ¶ 165.

The Court previously dismissed these three claims for "fail[ing] to plead the particularity required under Rule 9(b)," primarily because Setliff's pleadings for these claims were plagued with confusion surrounding his assertions of Holmes acting on behalf of both Cook and Zoccam. *Setliff*, 2022 WL 504395, at *14 (N.D. Tex. Feb. 18, 2022). "Thus, these pleadings fail[ed] to give notice to Defendants for whom Holmes allegedly acted for each misrepresentation or omission." *Id.* In his SAC, Setliff attempts to remedy this failure. Specifically, Setliff now exclusively refers to Holmes as acting only on behalf of Zoccam. Doc. 67, SAC, ¶¶ 39, 46, 52–53, 95. Indeed, in a string of subparagraphs that relay "an attempt to assuage Setliff's concerns and fraudulently induce him to consent to the proposal to eliminate the Series A Preferred Stock," Setliff (1) introduces these subparagraphs by referring to them as statements made by Zoccam and (2) repeatedly confirming that Holmes was acting on behalf of Zoccam. *Id.* ¶ 95.

Setliff also contends that Defendants made separate misrepresentations or omissions. He alleges:

> (a) the failure to disclose that Cook had filed an IRS Form 8832 electing to have Zoccam taxed as a corporation (the "[Cook's] 8832 Omission");

(b) that Zoccam misrepresented it had previously filed tax returns on an S-Corp basis (the "[Zoccam's] S-Corp Misrepresentation");

(c) Cook's failure to disclose that the S-Corp Misrepresentation was untrue (the "[Cook's] S-Corp Omission");

(d) that the impropriety of Zoccam's prior S-Corp filings could be retroactively cured by the elimination, "in name only", of the Series A Preferred Shares (the "[Zoccam's] Name Only Misrepresentation"); . . .

(e) misrepresentation by Cook that she had agreed to all of Setliff's proposed changes to the Restated Certificate (the "Cook Misrepresentation");

(f) concealment of the fact Defendants had unilaterally increased the number of authorized shares in the 2019 Filed Restatement (the "[Defendants'] Share Increase Omission");

(g) misrepresentation by Holmes that the 2019 Filed Restatement had been filed with the Texas Secretary of State on August 27, 2019 (the "[Zoccam's] Filing Date Misrepresentation"); and

(h) defendants' failures to disclose that the 2019 Filed Restatement would be filed with the Texas Secretary of State without the required Board and Shareholder approvals (the "[Defendants'] Filing Omissions").

Doc. 120, Setliff's Br., 26–27 (footnotes omitted). The Court addresses Defendants' arguments separately below.

### 1.      Cook

Cook first asserts that Setliff pleads the Cook's 8832 Omission with information and belief that is unsupported by factual allegations pleaded with the specificity required by Rule 9(b), fails to allege Cook knew about the changes to the 2019 Filed Restatement in the Cook Misrepresentation and Defendants' Share Increase Omission, and omits the "who" for the Defendants' Filing Omissions. Doc. 91, Cook's Br., 10–11. She also alleges that she did not have a duty to disclose for any of the omissions. Doc. 132, Cook's Reply, 6–9. Next, Cook attacks the intent and reliance elements of fraud for each of the fraud claims. *Id.* at 11–13, 16–17. She contends that "elimination

of the preferred shares cannot be inferred as evidence of Cook's . . . fraudulent intent" because this did not expand her control over Zoccam and "neither Cook nor Zoccam needed Setliff's vote to adopt an amended certificate of formation." *Id.* at 12–14. Cook also contends that Setliff's bare allegations of reliance do not meet the pleading standard for reliance and the fact that Setliff had counsel throughout the amendment process, negates any justifiable reliance on statements by Zoccam's lawyers to Setliff's lawyers. *Id.* at 16–17. Lastly, Cook asserts that the economic loss rule bars Setliff's fraud claims because he "fail[s] to set forth a duty and injury that are distinct from the obligations Zoccam supposedly breached through the Settlement Agreement and Stock Purchase Agreement." *Id.* at 14–16.

Setliff responds that even if the vote to amend the certificate of formation did not require a supermajority, the vote occurred with several misrepresentations and omissions, which may have changed the outcome of the vote. Doc. 120, Setliff's Br., 27–28. Setliff next contends that the economic loss rule does not bar his claims because "Defendants' tort law obligation not to make the [m]isrepresentations and [o]missions is independent of their obligation not to breach the Settlement Agreement" and the claims give rise to separate damages. *Id.* at 29–30. Next, Setliff argues that he sufficiently pleaded the requisite particularity by identifying the "who" as Cook because she "knew or was reckless in not knowing" certain statements made by Holmes were false. *Id.* at 31. She also allegedly misrepresented that Setliff's suggested changes to the 2019 Filed Restatement would be incorporated into the final document. *Id.* at 32. He also contends that Cook rehashes the same intent arguments that this Court found unavailing in her prior motion to dismiss. *Id.* at 33. Lastly, Setliff did not have counsel at the 2018 Board Meetings and the circumstances of the misrepresentations and omissions support his justifiable reliance. *Id.* at 37–38.

The Court addresses each of Cook's arguments in turn below. First, Setliff fails to plead that Cook had a duty to disclose for the Cook's 8832 Omission, Cook's S-Corp Omission, or Defendants' Share Increase Omission and each of the claims based on those omissions is dismissed for that reason.[20] Second, Setliff fails to support the Cook Misrepresentation with allegations to support an inference that Cook knew about the changes to the 2019 Filed Restatement. Third, Setliff impermissibly group pleads the Defendants for the Filing Omissions. In sum, the Court **DISMISSES** all the fraud claims against Cook.

       i.      *Duty to disclose for the Cook's 8832 Omission, Cook's S-Corp Omission, and Defendants' Share Increase Omission*

Setliff fails to identify Cook's duty to disclose for Cook's 8832 Omission, Cook's S-Corp Omission, and Defendants' Share Increase Omission. Texas courts recognize four situations when a duty to disclose might arise: when (1) there is a "confidential or fiduciary relationship"; (2) the defendant "discovered new information that made its earlier representation untrue or misleading"; (3) the defendant "made a partial disclosure that created a false impression"; or (4) the defendant "voluntarily disclosed some information, creating a duty to disclose the whole truth." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 220 (Tex. 2019). Relevant here, "[c]orporate officers owe fiduciary duties to the corporations they serve." *Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656, 667 (S.D. Tex. Sept. 21, 2010) (citing *Loy v. Harter*, 128 S.W.3d 397, 407 (Tex. App.—Texarkana 2004, pet. denied)). And merely trusting another as "business[persons] generally do" does not establish a confidential relationship. *In re e2 Commc'ns, Inc.*, 354 B.R. 368, 393–94 (Bankr. N.D. Tex. 2006) (citing *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962)).

---

[20] Because the Court dismisses these claims for a lack of duty to disclose, the Court does not address Cook's arguments that the 8832 Omission is inadequately pleaded or that Cook's knowledge is inadequately pleaded for the Defendants' Share Increase Omission.

Here, no duty exists for each omission for two reasons. First, Cook did not make the allegedly misleading statements that then triggered the duty to convey the full truth. Zoccam's accountant made the statement preceding the Cook's 8832 Omission and Cook's S-Corp Omission. For the Defendant's Share Increase Omission, Setliff does not identify a misrepresentation made by Cook that then required her to disclose new information. *See* Doc. 67, SAC, ¶¶ 46, 95(f). Holmes made the representation "that [Cook] has agreed to all of the changes you requested." *Id.* ¶ 46. Further, this statement, even if attributed to Cook through Holmes, does not convey that no further changes—such as an increase in shares—would occur to the proposed amendment to the certificate of formation. In fact, Holmes did not file the 2019 Filed Restatement for over six months after this statement, which evidences that he continued to work on the document. *See id.* (stating no further communication occurred about the proposed restatement for over six months). Therefore, Cook did not have a duty to convey any further information because she did not personally mislead or withhold any information from a statement that she made. *See Four Bros.*, 217 S.W.3d 653, 670–71.

Second, Cook had no duty to disclose because Setliff and Cook did not have a confidential or fiduciary relationship. To the extent Setliff and Cook trusted each other, it was merely as business associates, which cannot establish a confidential relationship. The parties had a purely business relationship consisting of years on the Zoccam Board of Directors and opposed each other as litigants while serving on Zoccam's Board of Directors. Doc. 67, SAC, ¶¶ 9, 14, 27–28. Such a business relationship cannot establish a confidential relationship that requires disclosure when evidenced by a lack of "the requisite high degree of trust." *In re e2 Commc'ns, Inc.*, 354 B.R. at 393–94. Taking the allegations as true, Cook did not have a duty to disclose for the Cook's 8832 Omission, Cook's

S-Corp Omission, or Defendant's Share Increase Omission, so any claims premised on these omissions are **DISMISSED**.

ii.     *Cook Misrepresentation*

Setliff failed to sufficiently plead the Cook Misrepresentation because he does not support his contention that Cook knew about the changes to the 2019 Defective Filed Restatement. Setliff pleads that "Zoccam, through Holmes, advised Setliff's counsel that 'you will see that [Cook] has agreed to all of the changes you requested'" but then filed a document containing "significant and material differences" from the document Holmes had provided. *Id.* ¶¶ 46, 53. Specifically, Setliff does not allege that his requested changes were not included in the 2019 Filed Restatement or what the "significant and material differences" were. *See id.* ¶ 53. His allegations thus fail to "set forth [the] factual basis for [his] belief" that Cook knew about the changes to the 2019 Defective Filed Restatement after Holmes provided a copy to Setliff's counsel. *See ABC Arbitrage Pls. Grp.*, 291 F.3d at 350 n.67. His allegations only point to Holmes having knowledge of the changes because Holmes—not Cook—filed the 2019 Filed Restatement. Doc. 67, SAC, ¶¶ 51, 95(g). Missing are any allegations of actions taken by Cook between the time of the "agree[ment] to all of the changes requested" and filing the 2019 Filed Restatement. *See id.* ¶ 46. Further, allegations about the resolution to ratify the 2019 Defective Filed Restatement do not provide facts to support Cook's knowledge about the changes to the 2019 Defective Filed Restatement because these allegations assert legal conclusions and do not discuss any changes made to the 2019 Defective Filed Restatement. *See* Doc. 120, Setliff's Br., 32 (citing Doc. 67, SAC, ¶¶ 61–62). Therefore, the Court **DISMISSES** any fraud claims premised on the Cook Misrepresentation.

### iii.    Defendants' Filing Omissions

Setliff failed to sufficiently plead the Defendants' Filing Omissions because he identifies Cook and Zoccam as the "who." Setliff pleads that "Cook . . . or alternatively Zoccam, failed to disclose that it would file the 2019 Filed Restatement." Doc. 67, SAC, ¶ 95(h). This impermissibly groups Defendants together to impute the fraud against both. *Cf. Pinero v. Jackson Hewitt Tax Serv., Inc.*, 638 F. Supp. 2d 632, 638 (E.D. La. 2009) (imputing fraudulent conduct from a privacy policy to both defendants because the franchise agreement required the franchisee to comply with franchisor's policies). The allegations impermissibly impute a singular action to both Defendants; thus, the Court **DISMISSES** any fraud claims against Cook premised on the Defendants' Filing Omission.

In sum, the Court **DISMISSES** all fraud claims against Cook.

### 2.    Zoccam

Turning to Zoccam's arguments, Doc. 93, Zoccam's Br., 13–23, Zoccam first contends that "[Setliff's] vote to amend was superfluous because a majority Board vote is all that is required, and even without Setliff's vote, that requirement was met." *Id.* at 13. Next, Zoccam asserts that the economic loss rule bars Setliff's fraud claims. *Id.* at 14–16. Third, Zoccam attacks the particularity requirement in fraud claim pleadings. *Id.* at 16–18. Specifically, Zoccam alleges that "Setliff still fails to set forth '*who*'" by inadequately pleading agency of Dunn and Holmes, and the "when" and "where" by pleading varying dates and times of the misrepresentations. *Id.* at 18. Zoccam also attacks the knowledge, intent, and reliance elements of fraud as inadequately pleaded. *Id.* at 18–21. Lastly, Zoccam contends that Setliff fails to allege a duty to disclose for the omissions. *Id.* at 22

Setliff responds by first arguing that his vote was necessary because two other board members might not have voted in favor of the restatement had they "been told the truth." Doc. 120, Setliff's

Br., 27. Setliff next contends that the economic loss rule does not bar his claims because "Defendants' tort law obligation not to make the [m]isrepresentations and [o]missions is independent of their obligation not to breach the Settlement Agreement" and the claims give rise to separate damages. *Id.* at 29–30. Setliff then avers that he adequately pleaded the "who" and "when." *Id.* at 30–33. He also argues that Holmes's assertion that "the Certificate of Formation could be amended in a way that both allowed for an S-Corp election and preservation of Setliff's existing rights as a preferred shareholder" sufficiently pleads Zoccam's intent to defraud him. *Id.* at 34. He then describes how each misrepresentation or omission intended to defraud him. *Id.* at 34–36. Lastly, the fact that Setliff had legal representation when negotiating the 2019 Filed Restatement does not show that he unjustifiably relied on the alleged misrepresentations and omissions, according to Setliff. *Id.* at 36–38.

The Court addresses each of Zoccam's arguments in turn. First, the Court finds Setliff's vote was superfluous and therefore he cannot make a claim of fraud for Zoccam's S-Corp Misrepresentation and Zoccam's Name Only Misrepresentation. Second, the economic loss rule does not bar Setliff's fraud claims because his claims rely on a separate duty. Third, Zoccam did not have a duty to disclose for the Defendants' Share Increase Omission. Fourth, paragraph (h) of the Defendants' Filing Omissions insufficiently group pleads the "who." Fifth, Setliff failed to plead that Zoccam intended for Setliff to act or refrain from acting for the Zoccam's Filing Date Misrepresentation and paragraph (i) of the Defendants' Filing Omissions. All fraud claims against Zoccam are **DISMISSED**.

> i. *Superfluity of Setliff's vote for the Zoccam's S-Corp Misrepresentation and Zoccam's Name Only Misrepresentation*

Setliff pleads that "he would not have voted for the conditional motion to restate Zoccam's Certificate of Formation." Doc. 67, SAC, ¶¶ 44, 98. However, the vote would have passed without Setliff's vote. *See supra* Section B(2) (explaining that a two-thirds vote was required). Setliff's Response newly alleges that the alleged misrepresentations and omissions might have impacted other board member's votes, taking the vote below the required threshold. Doc. 120, Setliff's Br., 27.

Setliff cannot amend his pleadings by making new allegations in his Response. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011). So, looking only at the SAC, Setliff pleads that without his vote, the motion to amend the 2015 Certificate of Formation would still have passed, and the Court accepts that version of events.

To establish the causation element of a fraud claim, the plaintiff must establish that the defendant's omissions or misrepresentations were a cause-in-fact, i.e., "but for" or "substantial factor" in plaintiff's injury. *William Marsh Rice Univ. v. Arrowhead Rsch. Corp.*, 2015 WL 10987080, at *6 (S.D. Tex. July 23, 2015) (citing *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 781 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)); *Better Bus. Bureau of Metro. Hous., Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 358 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Because Setliff's vote in favor of amending the Certificate of Formation at the 2018 Board Meeting—even if fraudulently procured—would not have changed the vote's outcome, these misrepresentations and omissions are not the "but for" cause of or a "substantial factor" in Setliff's alleged injury caused by the 2019 Filed Restatement. *Cf. Hartford Fire Ins. Co.*, 287 S.W.3d at 781–82 (defendant's misrepresentations about the bonding line of credit were not the "but for" cause of plaintiff's injury because the defendant was unbondable). In other words, Zoccam's S-Corp

Misrepresentation and Zoccam's Name Only Misrepresentation cannot support Setliff's fraud claims, and any claims premised on those misrepresentations are **DISMISSED**.

        *ii.     The Economic Loss Rule*

This leaves the Defendants' Share Increase Omission, Zoccam's Filing Date Misrepresentation, and Defendants' Filing Omissions. Zoccam's second argument is that the economic loss rule bars these claims, Doc. 93, Zoccam's Br., 14–16, but the Court disagrees. Setliff pleads a fraudulent inducement claim underlying his remaining statutory, common-law, and non-disclosure fraud claims stating that "should the 2019 Defective Filed Restatement be deemed binding upon Setliff, Zoccam is in breach of contract" for the breach-of-contract claim and "if the 2019 Defective Filed Restatement was effective . . . , the conversion or exchange [of Setliff's stock] was *induced* or procured by the fraud of Zoccam and Cook." Doc. 67, SAC, ¶¶ 136, 153, 158, 163 (emphasis added). "[T]he legal duty not to fraudulently procure a contract is separate and independent from the duties established by the contract itself." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998). Any breach of the Settlement Agreement does not then encompass the duty to not induce Setliff into agreeing to the 2019 Filed Restatement, which underlies the remaining fraud claims. They are separate and distinct duties; therefore, the economic loss rule does apply. *See id.* at 46–47._____

        *iii.    Duty to disclose*

"There is no general duty to disclose and corporations have no duty to disclose a fact 'merely because a reasonable investor might really like to know that fact.'" *Elec. Workers Pension Fund, Loc. 103. I.B.E.W. v. Six Flags Ent. Corp.*, 524 F. Supp. 3d 501, 529 (N.D. Tex. 2021) (quoting *Berger v. Beletic*, 248 F. Supp. 2d 597, 603 (N.D. Tex. 2003)). But a duty to disclose "may arise in an arm's-

-36-

length business transaction when a party makes a partial disclosure that, although true, conveys a false impression." *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 662 F. Supp. 2d 623, 648 (S.D. Tex. 2009) (first citing *Citizens Nat'l Bank v. Allen Rae Invs.*, 142 S.W.3d 459, 476–77 (Tex.App.—Fort Worth 2004, no pet.); then citing *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex.App.—Houston [14th Dist.] 1997, no writ); and then citing *Ralston Purina Co. v. McKendrick*, 850 S.W.2d 629, 633 (Tex.App.—San Antonio 1993, writ denied)).

Setliff argues that Zoccam[21] had a duty to disclose because it (1) did not disclose the whole truth, (2) obtained new information after voluntarily disclosing other information, or (3) the previous partial disclosure created a false impression. Doc. 120, Setliff's Br., 39. The first scenario is inapplicable for the Defendants' Share Increase Omission because Zoccam—through Holmes—disclosed the whole truth when it communicated that Cook had accepted Setliff's changes to the proposed amendment to the certificate of formation. Doc. 67, SAC, ¶ 46. However, the Defendants' Share Increase Omission could fit into either of the last two scenarios because Zoccam, through Holmes as its agent, had newer information about the actual number of shares and did not disclose this information after providing a working version of the 2019 Filed Restatement to Setliff and his counsel. *See id.* Regardless, Zoccam did not have a duty to disclose under either scenario because Zoccam never communicated or gave the impression that the version of the 2019 Filed Restatement was the final version. In fact, Setliff's allegations show over six months transpired between Cook's acceptance of his changes and Zoccam's filing of the 2019 Filed Restatement. And

---

[21] "Corporations can act only through agents." *Wynne v. Adcock Pipe & Supply*, 761 S.W.2d 67, 69 (Tex. App.—San Antonio 1988, writ denied). Here, Zoccam acted through Holmes in drafting the 2019 Filed Restatement with input from Setliff's counsel. Doc. 67, SAC, ¶¶ 46–51.

"mere silence is not fraud." *Moore & Moore Drilling Co. v. White*, 345 S.W.2d 550, 555 (Tex. Civ.—Dallas 1961, writ ref'd n.r.e.).

While Holmes and Zoccam kept silent about later changes to the 2019 Filed Restatement, neither Holmes nor another agent of Zoccam ever communicated that the version of the 2019 Filed Restatement provided to Setliff and his counsel were the final version. Further, Setliff and his counsel never inquired about whether further changes might occur. *See generally Richman Trusts v. Kutner*, 504 S.W.2d 539, 544 (Tex. App.—Dallas 1973, writ ref'd n.r.e.) (finding no fraud where a defendant neither made a misrepresentation nor was asked about the subject by the plaintiff); *Am. Marine Upholstery Co. v. Minsky*, 433 S.W.2d 717, 720 (Tex. App.—Eastland 1968, writ ref'd n.r.e.) (same). Absent any duty to disclose the Defendants' Share Increase Omission, Setliff's claim fails and is **DISMISSED**.

        *iv.*    *Pleading the "who," "where," and "when" with particularity*

Zoccam's third argument is that Setliff failed to plead with the particularity required of Rule 9(b) the "who," "when," and "where" of his fraud claims. Setliff pleads that Zoccam made the Defendants' Filing Omissions. *Id.* ¶ 95(h)–(i).

For the Defendants' Filing Omissions, the Court finds that "who" is sufficiently alleged for sub-paragraph (i) but not (h). As stated above, paragraph (h) refers to Cook and Zoccam alternatively, which is insufficient under Rule 9(b) to identify the "who." *Cf. Pinero*, 638 F. Supp. 2d at 638. However, sub-paragraph (i)—otherwise nearly verbatim to sub-paragraph (h)[22]—includes

---

[22] Sub-paragraph (h) reads:

> On a precise date which is unknown, but which was on or before August 29, 2019, Cook, acting as Zoccam's CEO, or alternatively Zoccam, failed to disclose that it would file the 2019 Filed Restatement with the Texas Secretary of State without disclosing that document to the Board and obtaining its approval.

Sub-paragraph (i) reads:

only Zoccam as the "who," which is sufficient. Thus, sub-paragraph (h)'s allegations are **DISMISSED**.

      *iv.*     *Knowledge, intent, and reliance*

Finally, the Court addresses Zoccam's arguments that the remaining alleged misrepresentations and omissions—the Zoccam's Filing Date Misrepresentation and sub-paragraph (i) of Defendants' Filing Omissions—fail to satisfy the knowledge, intent, and reliance elements. Doc. 93, Zoccam's Br., 22–25. The Court addresses each in turn below.

      a.     Filing Date Misrepresentation

Knowledge and intent may be alleged generally under Rule 9(b), but a plaintiff must "set[ ] forth the factual basis for his belief." *United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999), *abrogated on other grounds by United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 931 (2009).

Here, Setliff sufficiently pleads the knowledge element for the Zoccam's Filing Date Misrepresentation by providing the following facts to support the basis for his belief: (1) that Holmes stated that the 2019 Filed Restatement was filed on August 27, 2019, when it was actually filed on August 29, 2019; (2) that the filing came from Holmes's office; and (3) that "Zoccam (acting through its agents) . . . knew that the statement[ ] was false or recklessly disregarded the truth." Doc. 67, SAC, ¶¶ 95(g), 154.

------

      On a precise date which is unknown, but which was on or before August 29, 2019, Zoccam failed to disclose that it would file the 2019 Filed Restatement with the Texas Secretary of State without obtaining an affirmative vote of two thirds of the Series A Preferred shareholders as required by the Texas Business Organizations Code.

Doc. 67, SAC, ¶ 95(h)–(i).

However, the Zoccam's Filing Date Misrepresentation allegation fails to provide a motive or circumstantial evidence of a motive from which the Court can infer Zoccam's fraudulent intent. *See id.* ¶ 95(g). The only allegations regarding Zoccam's intent appear in Setliff's Response. Doc. 120, Setliff's Br., 36 ("This misrepresentation was clearly intended to create a barrier to objections to the 2019 Filed Restatement by Setliff and his counsel."). A Response cannot amend a complaint, *In re Enron*, 761 F. Supp. 2d at 566, and therefore, the Court must only look to the SAC for any allegations of intent. Finding none, any fraud claims premised on the Zoccam's Filing Date Misrepresentation are **DISMISSED**.

       b.    Defendants' Filing Omissions

Setliff sufficiently pleads the knowledge element for the Defendants' Filing Omissions. He alleges Zoccam's general knowledge of the omission and that Holmes drafted the 2019 Filed Restatement. Therefore, the knowledge element is satisfied. Doc. 67, SAC, ¶¶ 37, 39–41, 46–52, 95(g), so any alleged omissions in that would be directly within the knowledge of Holmes (and possibly Zoccam because of the alleged agency relationship).

Sub-paragraph (i) of the Defendants' Filing Omissions, fails to sufficiently allege that Zoccam intended to defraud Setliff because any specific allegations of intent pertain to only Cook and not Zoccam. *Id.* ¶ 99 ("[S]he was motivated by a desire to expand her control of Zoccam."). Therefore, the Court **DISMISSES** any fraud claims premised on sub-paragraph (i) of the Defendants' Filing Omissions.

In sum, all fraud claims against Zoccam are **DISMISSED**.

F.    *Leave to Amend*

The Court previously granted Setliff the opportunity to amend his pleadings to correct deficiencies noted in the Court's order addressing Cook's and Zoccam's first motions to dismiss. *Setliff*, 2022 WL 504395, at *16. Normally the Court will allow a plaintiff the opportunity to amend where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based. *See McClellon v. Lone Star Gas Co.*, 66 F.3d 98, 103 (5th Cir. 1995). But here, the Court finds that allowing further amendment would unduly delay this case and is futile. *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Accordingly, in its discretion, the Court determines that further amendment of the pleadings is not warranted.

## IV.

## CONCLUSION

For the foregoing reasons, Cook's motion to dismiss (Doc. 90) is **GRANTED** and Setliff's claims against Cook are **DISMISSED WITHOUT PREJUDICE**. Zoccam's motion to dismiss (Doc. 92) is **GRANTED IN PART** and **DENIED IN PART**.

Specifically, the Court **DISMISSES WITHOUT PREJUDICE** the declaratory judgment paragraphs (a), (b), (c), and (g), derivative breach of fiduciary duty, securities fraud, statutory fraud, common law fraud, and fraud by nondisclosure claims. Therefore, the TBOC, declaratory judgment paragraphs (d), (e), (f), and (h), and breach-of-contract claims from the SAC are the only live claims remaining in this case.

_____SO ORDERED.

SIGNED: September 13, 2022.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE