IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| REUBEN C. SETLIFF III, M.D., | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | Civil Action No. 3:21-cv-2025-B |
| | § | |
| | § | |
| ZOCCAM TECHNOLOGIES, INC., | § | JURY TRIAL DEMANDED |
| *Defendants.* | § | |
| | § | |

## SETLIFF'S ANSWER AND AFFIRMATIVE DEFENSES
## TO ZOCCAM'S FIRST AMENDED COUNTERCLAIM
### (Relates to Docket No. 187)

TO THE HONORABLE UNITED STATES DISTRICT JUDGE JANE J. BOYLE:

COMES NOW, Plaintiff Reuben C. Setliff III, M.D. ("**Setliff**" or "**Plaintiff**"), and files this his *Answer and Affirmative Defenses to Zoccam's First Amended Counterclaim* (Doc. 187, the "**FACC**"), and respectfully shows the Court as follows:

## I. SUMMARY OF CLAIMS

**The entirety of this section is argument, not factual allegations. As such, Setliff denies the allegations in the unnumbered paragraphs in this section of the FACC. Setliff expressly denies all liability to Zoccam, and denies the legal viability of Zoccam's counterclaims against him.**

## II. PARTIES

1.  Plaintiff/Counter-Defendant Reuben Setliff, a natural person, is a citizen of the State of Colorado and resides and is domiciled there. Doc. 16, ¶ 8. Setliff has appeared herein.

**1.  Setliff admits the allegations of Paragraph 1 of the FACC.**

2.  Defendant/Counter-Plaintiff Zoccam is a corporation organized under the laws of the State of Texas maintaining its principal place of business in Dallas, Texas. Zoccam has

appeared herein.

**2.      Setliff admits the allegations of Paragraph 2 of the FACC.**

### III. JURISDICTION AND VENUE

3.      The Court has diversity jurisdiction over Plaintiff's claims against Defendants pursuant to 28 U.S.C. § 1332. Pursuant to *Fed. R. Civ. P.* 13, Zoccam's counterclaims arise out of the same transaction(s) or occurrence(s) that is the subject matter of Plaintiff's claims against Zoccam. As a result, Zoccam files its counterclaims in the present case. Alternatively and/or concurrently, some or all of Zoccam's counterclaims arise out of matters other than those raised in Plaintiff's claims against Zoccam, and this Court has supplemental jurisdiction pursuant to 28

U.S.C. § 1367 and are related to the same case and/or controversy pursuant to this Court's original jurisdiction pursuant to Article III of the United States Constitution.

**3.      Setliff admits the allegations in paragraph 3 of the FACC.**

4.      Venue is proper in this District because Plaintiff has judicially admitted venue and his claims were asserted and filed in this particular venue. Moreover, venue is proper because Zoccam's counterclaims are mandatory or permissive with regard to Setliff's live complaint.

**4.      Setliff admits the allegations in paragraph 4 of the FACC.**

### IV. CONDITIONS PRECEDENT

5.      Zoccam has complied with all conditions precedent to the extent any exist. Alternatively, any conditions precedent have been waived or excused.

**5.      This paragraph contains a legal assertion to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph. Pleading further, Setliff specifically denies that Zoccam ever met the conditions precedent to conversion of his Series A Preferred Stock to Common Stock under the 2015 Certificate of Formation and Texas Business and Commerce Code, and that Zoccam made the pre-suit demand required by Chapter 38 of the Texas Civil Practice & Remedies Code. Zoccam has also failed to tender return of Setliff's consideration plus interest, which is a condition precedent to its claim for**

- 2 -

rescission.

## V. <u>FACTUAL BACKGROUND</u>

**A.      Setliff Fails to Get His Story Straight.**

6.        Setliff is a serial litigant who changes his story to conform to his latest self-dealing agenda, even attempting to ignore his own express admissions and agreements that defeat any entitlement to relief. Setliff views a signed contract as the start of negotiations, not the final result of them. For Setliff, litigation is a way to disregard facts, his own admissions, material misrepresentations, and duties and obligations to avoid accountability and instead attempt to extract a resolution through threatening that large legal fees will be incurred if his demands are not met. Setliff admits he is using his lawsuit as a hinderance to Zoccam's success and to prevent a lucrative sale of Zoccam. Setliff demanded a quick mediation take place or Zoccam face the threat of large fees.

**6.        The allegations in this paragraph are devoid of well-pled factual allegations and are rife with speculative argument. As such, the allegations in this paragraph are denied.**

7.        Setliff also attempts to feign ignorance or an absence of understanding. Setliff readily concedes he does not read or care what he signs or agrees to, but claims he relies on his lawyers as if that excuses his material misrepresentations, duties, obligations, and deliberate deceit.

**7.        The allegations in this paragraph are devoid of well-pled factual allegations and are merely argument. As such, the allegations in this paragraph are denied.**

8.        Initially, Setliff has been unable to legally articulate (plead) his claims – this Court having dismissed nearly all of them. Second, truth is not important to Setliff. Setliff first told this Court that he never received or even knew about passthrough losses, did not know Zoccam filed its taxes as a partnership, and that Zoccam and Cook fraudulently concealed these facts. Now, after being outed, Setliff acknowledges and is forced to admit that Zoccam "has purported to pass through losses to shareholders." *Compare* 1st Am. Compl. ¶ 31(a) *with* 2d Am. Compl. ¶ 42(a); *see*

*also* Doc. 35 at 36 & 157 (demonstrating Setliff knew Zoccam passthrough losses and filed tax returns as a partnership). In addition, Setliff alleged that "he and the other members of the Board approved" amending the Certificate of Formation, *see* Doc. 1 ¶ 25, but has now switched to contending he had a temporary loss of competence in voting for amending and was shocked that everyone else had voted to amend. Setliff also now tries to remove himself entirely from his own unequivocal admission by stating that "the Board voted unanimously to begin the process of a restatement . . . but [with] condition[s]" (Doc. 67, 2d Am. Compl. ¶ 44(a)).

**8.    The allegations in this paragraph refer to pleadings that have been superseded by subsequent amended filings and are merely argument. The allegations in this paragraph also mischaracterize Setliff's claims. Zoccam is well-aware that Setliff alleges its management has been lying to the IRS regarding its entity type, claiming that it has consistently held itself out as a partnership when in fact Zoccam converted to a corporation in June of 2015, and has conducted all its business (other than the filing of its income tax returns, all of which since the 2015 tax year have been rejected by the IRS) as a corporation. Zoccam is also well-aware that it, through its counsel, falsely represented in 2018 that Zoccam was already filing its tax returns as an S-Corporation in an effort to induce Setliff to conditionally approve the concept of amending Zoccam's 2015 Certificate of Formation. As such, the allegations in this paragraph are denied.**

9.    At Setliff's recent deposition, Zoccam learned that Setliff made material misrepresentations in order to secure the Agreements from Zoccam. Setliff did not purchase the Zoccam stock the subject of this lawsuit and the Agreements, a trust purchased Zoccam stock and owns Zoccam stock subject of this lawsuit. Furthermore, Setliff admits that he is suing Zoccam because he wants to injure Zoccam, to advance his own personal interests through his position as a Board of Director, and he will always act in his own interest regardless of the fiduciary duties owed to Zoccam.

**9.    The allegations in this paragraph intentionally misrepresent Setliff's deposition**

testimony and contain legal conclusions to which no response is required. **To the extent a response is required, the allegations in this paragraph are denied.**

10.     Setliff's deceit in this litigation is no outlier. Setliff has a judicial history of blatantly and purposely being untruthful. Truth is an inconvenience to Setliff, even when not a party to the litigation. One court has called Setliff a liar; Justice Gors of the South Dakota Supreme Court wrote: "Dr. Setliff is a liar. He lied to the court. He lied to [a] jury. Under oath." *In re Setliff*, 2002 S.D. 58, ¶ 31, 645 N.W.2d 601, 608 (2002).

**10.     The allegations in this paragraph are merely argument and mischaracterize the referenced case, as the FACC fails to disclose that the quoted passage is from the *dissenting opinion* of an acting, rather than a sitting, justice of the South Dakota Supreme Court, and that the actual holding of the South Dakota Supreme Court was (consistent with the ruling of the trial court in the case) that Setliff did not give false testimony. As such, the allegations in this paragraph are denied.**

**B.     Zoccam and Its Series A Preferred Shares.**

11.     Zoccam provides a proprietary and patented digital application used to close real estate transactions. When Zoccam was created, its CEO, Ashley Cook ("Cook"), was and remains the majority shareholder of its Common Stock and was a minority shareholder of its Series A Preferred Stock when it existed. In 2015, Zoccam filed a Certificate of Formation with the Texas Secretary of State, authorizing 500,000 shares of Series A Preferred Stock and 3,500,000 shares of Common Stock.

**11.     Setliff denies that the Series A Preferred Stock in Zoccam has ever legally ceased to exist for the reasons set forth in his live pleading, or that the allegation that such Series A Preferred Stock ceased to exist is a legal conclusion to which no response is required. Setliff if without information sufficient to admit or deny that Cook is currently the majority shareholder in Zoccam, as such this allegation is denied. Otherwise, Setliff admits the allegations in this paragraph.**

12.      Zoccam's initial investors included a group of investors known as the Bold Investors. The Bold Investors held Series A Preferred Stock during the time they were stockholders in Zoccam. The rights of the Bold Investors associated with their Series A Preferred shares were delineated in Zoccam's 2015 Certificate of Formation ("Bold Investor Rights").

**12.      Setliff admits the allegations in this paragraph of the FACC.**

13.      The Bold Investor Rights, as set forth in the 2015 Certificate of Formation, included preferred distribution rights, preferred dividends at 12% annually, redemption rights, and super majority board rights.

**13.      Setliff admits that under the 2015 Certificate of Formation, the Series A Preferred Stock grants the right to a 12% cumulative annual dividend and in certain circumstances, redemption rights and super majority board rights, but denies that such rights are the entire universe of rights granted to owners of Series A Preferred Stock in Zoccam and refers the Court to the 2015 Certificate of Formation, which speaks for itself.**

14.      Before Setliff became involved with Zoccam, a dispute arose between Zoccam and the Bold Investors that culminated in a 2017 settlement agreement, wherein Zoccam reacquired all Series A Preferred Shares once held by the Bold Investors. The Settlement Agreement between Zoccam and the Bold Investors confirms Zoccam reacquiring the Bold Investor stock, and thus, subject to the terms of the 2015 Certificate of Formation.

**14.      Although Setliff was not privy to the Bold Settlement Agreement, Setliff admits that Zoccam entered into a settlement agreement with the Bold Investors in 2017, and that such settlement agreement speaks for itself. Setliff further admits that at the time he purchased his Series A Preferred Stock, he was promised by Cook and Zoccam that he was purchasing "200,000 shares of the Bold Shares in exchange for [Setliff] funding of $200,000" to be used to purchase the Series A Preferred Stock from the Bold Investors. The allegations regarding the legal effect of the settlement with the Bold Investors is a legal conclusion to which no response is required. To the extent a response is required, Setliff denies those allegations.**

15.     Notably, Section 5 of the 2015 Certificate of Formation, titled "Treatment of Redeemed or Otherwise Acquired Shares," dealt with acquirement and provided that any Series A Preferred Stock that Zoccam redeems or otherwise acquired are cancelled and not re-issuable. Section 5 states:

> Any shares of Series A Preferred Stock that are redeemed or otherwise acquired by the Corporation or any of its subsidiaries *shall be automatically and immediately cancelled and retired and shall not be reissued, sold or transferred.* Neither the Corporation nor any of its subsidiaries may exercise any rights granted to the holders of Series A Preferred Stock following redemption.

Emphasis supplied.

**15.     Setliff admits that the 2015 Certificate of Formation contains Section 5, and speaks for itself. The allegations regarding the legal effect or Section 5 of the 2015 Certificate of Formation is a legal conclusion to which no response is required. To the extent a response is required, Setliff denies those allegations, specifically including the allegation that Section 5 of the Certificate of Formation in any way affects his Series A Preferred Stock rights.**

16.     Section 5, which still exists to this day, made the Series A Preferred Stock and attendant rights once held by the Bold Investors as set forth in the 2015 Certificate of Formation as cancelled, could not and was not reissued, sold, or transferred, including to Setliff. Obviously and logically, Setliff could not and does not possess the Series A Preferred Stock as set forth in the 2015 Certificate of Formation that included the Bold Rights.

**16.     Setliff admits that the 2015 Certificate of Formation contains Section 5, and speaks for itself. The allegations regarding the legal effect or Section 5 of the 2015 Certificate of Formation is a legal conclusion to which no response is required. To the extent a response is required, Setliff denies those allegations, specifically including the allegation that Section 5 of the Certificate of Formation in any way affects his Series A Preferred Stock rights.**

**C.     Setliff Becomes Involved With Zoccam.**

17.     From late 2016 through January 2018, Setliff provided some funding to Zoccam.

No agreement existed between Setliff and Zoccam regarding how Setliff's voluntary contributions should be characterized, and no formal agreement was ever made between Zoccam and Setliff. Setliff was not provided stock. Eventually, Setliff did purchase Zoccam preferred stock but not any stock with Bold Rights.

**17.    Setliff denies the allegations of this paragraph of the FACC, other than that Setliff paid for Series A Preferred Stock and Common Stock in Zoccam that Zoccam and Ashley Cook ("Cook") then refused to issue until Setliff threatened to sue Cook and Zoccam for securities fraud, claims which were later compromised in the May 24, 2018 Settlement Agreement and Stock Purchase Confirmation Agreement ("SPCA," and together with the Settlement Agreement, the "Agreements").**

18.    Initially, Zoccam was formed as a limited liability company. Each year, Setliff, along with other shareholders, were furnished a K-1 noting that Zoccam was a limited liability partnership, and any losses were passed through to its shareholders.

**18.    Setliff admits that Zoccam was formed in 2014 as a Texas limited liability company and converted to a Texas corporation in June 2015. Setliff denies the remaining allegations in this paragraph of the FACC.**

**D.    Setliff, Through His Counsel, Requested to Change Zoccam's Structure.**

19.    In or around January 2018, Setliff hired Dan and Jo Waller of Glast, Phillips, and Murray ("GPM") to represent him in his dealings with Zoccam.

**19.    Setliff admits that in January 2018, he retained Glast, Phillips & Murray, P.C., to represent him in the dispute that had arisen with Zoccam and Cook related to their refusal to issue him Series A Preferred Stock and Common Stock in Zoccam, as had been promised by Cook and Zoccam at the time he paid for that stock (the "Securities Fraud Dispute").**

20.    At this time, Setliff knew that Zoccam desired to raise capital by securing additional shareholders. In order to carry out this objective, Setliff stated that Zoccam would need to make more common stock available for purchase and encouraged Zoccam to do so.

**20.     Setliff denies the allegations in this paragraph of the FACC.**

21.     On or around April 16, 2018, Setliff encouraged Zoccam to amend the Certificate of Formation "to convert and eliminate all preferred stock, and to amend the certificate of formation to authorize additional common stock."

**21.     Setliff denies the allegations in this paragraph of the FACC.**

22.     To do this, Setliff through Jo Waller, stated in an April 16, 2018 email to Zoccam's then legal counsel that the parties should "agree in principle that they will cooperate to convert and eliminate *all preferred stock*, and to amend the certificate of formation to authorize additional common stock." Setliff, as the instigator of this proposal, was copied on this April 16, 2018 e-mail. Setliff, through his legal counsel, further wrote that this should be done to "seek serious financing, . . . to attract and reward talent . . . to reward Ashley Cook . . . [and] to get [industry stakeholders] engaged with and tied into the company." Setliff further explained that "[e]ventually, whether or not it goes public, [Zoccam] wants to build a shareholder base so at some point there can be liquidity in the stock, and institutional investors can begin to invest."

**22.     Setliff admits that his counsel, Jo Waller, sent an email on April 16, 2018, which speaks for itself (the "Waller Email"). Setliff denies the Waller Email is accurately excerpted in this paragraph of the FACC. Specifically, Zoccam fails to note that the Waller Email was sent as part of the settlement discussions with respect to the Securities Fraud Dispute, and that Ms. Waller expressly indicated that provisions for converting the Series A Preferred Stock to Common Stock should not be included in the Agreements. Setliff denies that he agreed in the Agreements to the conversion of his Series A Preferred Stock, absent the satisfaction of certain conditions. In fact, Section 4 of the SPCA expressly forbids the conversion or redemption of Setliff's Series A Preferred Stock absent the occurrence of certain contingencies that have indisputably not occurred. To the extent the allegations in this paragraph of the FACC are not expressly admitted, they are denied.**

23.     In the spring 2018, Zoccam and Setliff, through their respective counsel, attempted

to negotiate what interests Setliff might have in Zoccam. Zoccam attempted to issue stock certificates to Setliff (none of which included, previously included, or otherwise included Bold Investor Preferred Stock), including in 2017 and 2018, but Setliff declined to accept stock certificates tendered by Zoccam unless and until he obtained numerous confidential documents from Zoccam. Setliff also demanded he be given rights that did not exist and never had – in particular, he demanded rights under the nonexistent and previously cancelled Bold Investor Preferred Stock. Zoccam consistently and rightly refused to do so and Setliff was well-aware of Zoccam's refusal to do so and why. Zoccam never provided Setliff any basis or reliance that he ever had the Bold Investor Rights, Setliff knew he would not get such rights, never had such rights, and was not entitled to such rights given the 2015 Certificate for Formation, Section 5, and that Setliff and his counsel knew, had copy(ies) of, and were aware of. Setliff wildly claimed he was entitled to Bold Investor rights, but he could not logically, factually, and legally explain why, especially given his insistence the 2015 Certificate of Formation applied.

**23.    Setliff admits that he was promised and demanded that Zoccam issue him Series A Preferred Stock with full rights under the 2015 Certificate of Formation. The allegations regarding the purported "cancellation" or non-existence of the "Bold Investor Preferred Stock," "Bold Rights," and legal effect of Section 5 of the 2015 Certificate of Formation are legal conclusions to which no response is required. To the extent a response to those allegations is required, they are denied, as are all allegations in this paragraph of the FACC that are not expressly admitted.**

24.    Ultimately, Zoccam was forced to sue Setliff for his refusal to accept stock certificates, in the 101st District Court of Dallas County, Texas. Recognizing he never had and would never get any Bold Investor Rights or any Series A stock previously acquired and cancelled by Zoccam, or that could include Bold Investor Rights, Setliff entered into the Settlement Agreement and SPA with Zoccam, which now, according to Setliff, is the basis for his present complaint in this Court. Significantly, Setliff did not receive, obtain, or possess stock previously

reacquired and cancelled and/or any stock including the Bold Investor Rights. The Settlement Agreement and SPA confirmed same.

**24.** **Setliff admits that after asking his counsel for a 24-hour extension of time to respond to Setliff's settlement demand with respect to the Securities Fraud Dispute that at 11:02 p.m. on May 21, 2018, Zoccam filed a lawsuit against Setliff in the 101st Judicial District Court of Dallas County, Texas, and that Zoccam voluntarily dismissed that case the very next day without ever serving Setliff or even telling him of the existence of the lawsuit. Setliff denies that Zoccam's lawsuit had any bearing on his decision to enter into the Agreements, as neither he nor his counsel were aware of its existence until after this lawsuit was filed. Setliff further denies that Zoccam's lawsuit referenced the "Bold Rights" or disputed that he had purchased Series A Preferred Stock in Zoccam. Setliff admits he entered into the Agreements, but denies that he did not acquire the "Bold Rights" under those Agreements, and denies any other allegation in this paragraph of the FACC that is not expressly admitted.**

E. **The Settlement Agreement and SPA Define Setliff's Rights and Unambiguously Reflect Setliff's Consent and Admissions.**

25. On or around May 24, 2018, Setliff and Zoccam (among others) executed the Agreements, which expressly resolved Setliff's rights for Zoccam stock issued to Setliff.

**25.** **Setliff admits he entered into the Agreements, but denies that he did not acquire the "Bold Rights" under those Agreements, and denies any other allegation in this paragraph of the FACC not expressly admitted.**

26. Section 3 of Settlement Agreement, titled "Governance," agreed to and acknowledged by Setliff, states:

> The Parties agree that, unless the Parties unanimously agree in writing: (a) there will be five members on the board of directors (three will be designated by Ashley and two will be designated by Don and Reuben (one each): Don and Reuben will be their own initial designees; (b) the vote per share of Series A preferred stock shall be one vote per share (*i.e.*, as if there were a 1:1 conversion); (c) any new equity capital raised after May 25, 2018 and any changes to the amount of authorized but

unissued stock (including without limitation for Norton, Alexander, or existing convertible notes) will dilute all existing shareholders (with Series A preferred stock being treated as 1:1 with common stock; (d) to the extent there are any existing defaults or violations of the Articles relating to Series A Preferred Shares in any way, they are waived or amendments will be made to eliminate such defaults: (e) the Equity Rights Agreement is confirmed as cancelled; (f) and a sale of company or substantially all of the assets of the Company will require the approval of: (x) Ashley: and (y) either Reuben or Don and, if Reuben and Don both vote against a sale proposed by Ashley, then they must buy her out at a sum equal to what she would have received from the proposed transaction (which would include payments on her debt, on her equity, and for any other reason) and, if they cannot close on such a buyout, Reuben and Don will vote in favor of the proposed transaction by Ashley and it will go forward.

**26.      Setliff admits entering into the Settlement Agreement and that it includes the language excerpted above, but denies that the excerpted language is the only relevant provision of the Settlement Agreement. The legal effect of the excerpted language is a legal contention to which no response is required. To the extent a response is required, such allegations are denied, as are all allegations in this paragraph of the FACC that are not expressly admitted.**

27.      Among other things, the Settlement Agreement delineated the defined rights associated that Setliff acquired through the Settlement Agreement and the SPA. These rights are materially inconsistent with the Bold Investor stock reacquired by Zoccam and cancelled pursuant to Section 5 of the 2015 Certificate of Formation. Most notably, that any Preferred Stock be treated as 1:1 with common stock, and likewise, that the Equity Agreement, through which Zoccam issued 500,000 shares of Series A Preferred Stock, reiterates that it "is confirmed as cancelled" and therefore nonexistent and not to be ever reissued. This statement unambiguously and indisputably reinforces and reiterates Section 5 of the 2015 Certificate of Formation, that the reacquired Preferred A Stock with Bold Investor Rights is cancelled and has not and cannot be reissued. Setliff agreed by executing this Agreement.

**27.      Setliff admits entering into the Settlement Agreement and that it must be read and construed as a whole, along with the documents incorporated therein by reference, all of**

**which speak for themselves. The legal effect of the Agreements, the Equity Rights Agreement, and the 2015 Certificate of Formation are legal contentions to which no response is required. To the extent a response is required, such allegations are denied, as are all allegations in this paragraph of the FACC that are not expressly admitted.**

28.     Section 4.3 of the Settlement Agreement, titled "Entire Agreement," additionally provides that the Settlement Agreement and SPA constitute the entire agreement between the parties, and further states:

> This Agreement is being signed and delivered contemporaneously with the issuance of shares of Series A preferred stock and common stock and related Stock Purchase Confirmation Agreements, which together constitute the entire agreement between the Parties and supersede all prior negotiations, understandings, and agreements[.]

**28.     Setliff admits entering into the Settlement Agreement and that it must be read and construed as a whole, along with the documents incorporated therein by reference (including the SPCA, the stock certificates, and the 2015 Certificate of Formation, to the extent not modified by the Agreements), all of which speak for themselves. Setliff admits that the Settlement Agreement includes the language quoted from Section 4.3, above, but denies that the excerpted language above is a complete quotation of Section 4.3, or that Section 4.3 is the only relevant provision of the Settlement Agreement. The legal effect of the Agreements and the 2015 Certificate of Formation are legal contentions to which no response is required. To the extent a response is required, such allegations are denied, as are all allegations in this paragraph of the FACC that are not expressly admitted.**

29.     Setliff does not possess or own – and never did possess or own – Series A Preferred Stock that included the rights listed in the 2015 Certificate of Formation.

**29.     The legal effect of the Agreements and the 2015 Certificate of Formation are legal contentions to which no response is required. To the extent a response is required, such allegations are denied, as are all allegations in this paragraph of the FACC that are not expressly admitted.**

30.     To carry out and facilitate the Parties' obligations in the Settlement Agreement, Section 4.7 was included, titled "Additional Instruments/Cooperation," and provides as follows:

> The Parties to this Agreement agree to cooperate and to execute any and all further documents that may be necessary in order to carry out or effectuate the terms of this Agreement, including without limitation consents, resolutions, or votes as directors or shareholders.

**30.     Setliff admits entering into the Settlement Agreement and that it must be read and construed as a whole, along with the documents incorporated therein by reference (including the SPCA, the stock certificates, and the 2015 Certificate of Formation, to the extent not modified by the Agreements), all of which speak for themselves. Setliff admits that the Settlement Agreement includes the language quoted from Section 4.7, above, but denies that the excerpted language above is the only relevant provision of the Settlement Agreement. Setliff specifically denies that any "further document" that effectuated an elimination or conversion of his Series A Preferred Stock to Common Stock would "carry out or effectuate the terms of" the Agreements, because, among other reasons, such a "further document" would expressly conflict with the terms of Section 4 of the SPCA. The legal effect of the Agreements and the 2015 Certificate of Formation are legal contentions to which no response is required. To the extent a response is required, such allegations are denied, as are all allegations in this paragraph of the FACC that are not expressly admitted.**

31.     Section 4.7 unambiguously proclaims the Parties' express intent, based on the statements of Setliff that an amendment would be undertaken, "to convert and eliminate all preferred stock, and to amend the certificate of formation to authorize additional stock." By agreeing to this provision, Setliff admitted the Zoccam stock he owned was common stock only.

**31.     Setliff admits entering into the Settlement Agreement and that it must be read and construed as a whole, along with the documents incorporated therein by reference (including the SPCA, the stock certificates, and the 2015 Certificate of Formation, to the extent not modified by the Agreements), all of which speak for themselves. Setliff specifically denies**

that Section 4.7 of the Settlement Agreement reflects any agreement "to convert and eliminate all preferred stock, and to amend the certificate of formation to authorize additional stock," because, among other reasons, any conversion or elimination of his Series A Preferred Stock would conflict with the express terms of Section 4 of the SPCA, absent the satisfaction of the contingencies set forth therein, and because the Settlement Agreement does not mention any agreement for Zoccam to "authorize additional stock". The legal effect of the Agreements and the 2015 Certificate of Formation are legal contentions to which no response is required. To the extent a response is required, such allegations are denied, as are all allegations in this paragraph of the FACC that are not expressly admitted.

32.     Because of the material representations and considerations reflected in the Agreements including the intent of the Agreements, Zoccam agreed to and executed the Agreements in reasonable, justifiable, and/or substantial reliance on Setliff's promises and material representations, including that Setliff was purchasing Zoccam stock with his own funds, Setliff was the individual owner of the Zoccam stock, that Jill Berg has no rights or ownership in the Zoccam stock and that she had been repaid any funds furnished for Zoccam stock, that he would perform under Section 4.7, that he would "cooperate to convert and eliminate *all preferred stock*, and to amend the certificate of formation to authorize additional common stock" so that Zoccam could "seek serious financing, . . . attract and reward talent . . . reward Ashley Cook . . . [and] get [industry stakeholders] engaged with and tied into the company." But for these representations by Setliff, Zoccam would not have entered into the Agreements or amended Zoccam's Certificate of Formation.

**32.     Setliff admits entering into the Settlement Agreement and that it must be read and construed as a whole, along with the documents incorporated therein by reference (including the SPCA, the stock certificates, and the 2015 Certificate of Formation, to the extent not modified by the Agreements), all of which speak for themselves. Setliff specifically denies that Section 4.7 of the Settlement Agreement, or any other provision of the Agreements,**

**reflects any agreement "to convert and eliminate all preferred stock, and to amend the certificate of formation to authorize additional stock," or that Zoccam could have relied on any such representation, as it is not only absent from the Agreements, but conflicts with their express terms. The legal effect of the Agreements and the 2015 Certificate of Formation are legal contentions to which no response is required. To the extent a response is required, such allegations are denied, as are all allegations in this paragraph of the FACC that are not expressly admitted.**

33.     Zoccam executed the Agreements and amended its Certificate of Formation, relying upon Setliff's admission and agreement that rights associated with any Preferred Shares were solely those unambiguously delineated as common stock in Section 3 of the Settlement Agreement and in the SPA and that it was Setliff who was purchasing Zoccam stock for his own individual benefit and not on behalf of someone else or another entity.

**33.     Setliff admits Zoccam entered into the Settlement Agreement and that it must be read and construed as a whole, along with the documents incorporated therein by reference (including the SPCA, the stock certificates, and the 2015 Certificate of Formation, to the extent not modified by the Agreements), all of which speak for themselves. Setliff specifically denies that the amendments made by Zoccam to its Certificate of Formation in 2019 are consistent with or served to effectuate the terms of the Agreements. Setliff further denies that the Agreements reflect the totality of his rights as a holder of Series A Preferred Stock. Setliff further denies that he purchased his stock in Zoccam for the benefit of any other person or entity. The legal effect of the Agreements and the 2015 and 2019 Certificates of Formation are legal contentions to which no response is required. To the extent a response is required, such allegations are denied, as are all allegations in this paragraph of the FACC that are not expressly admitted.**

34.     At the same time Setliff executed the Settlement Agreement, Setliff also executed the SPA that contained Exhibit A, which is Setliff's Investment Representation Statement, where

he represented to Zoccam that:

1.      *The Company may rely on these representations*.  I understand that the Company's sale of the shares to me has not been registered under the Securities Act of 1933, as amended (the "Securities Act"), because the Company believes, relying in part on my representations in this document, that an exemption from such registration requirement is available for such sale. I understand that the availability of this exemption depends upon the representations I am making to the Company in this document being true and correct.

2.      *I am purchasing for investment*.  I am purchasing the shares solely for investment purposes, and not for further distribution. My entire legal and beneficial ownership interest in the shares is being purchased and shall be held solely for my account, except to the extent I intend to hold the shares jointly with my spouse.  I am not a party to, and do not presently intend to enter into, any contract or other arrangement with any other person or entity involving the resale, transfer, grant of participation with respect to or other distribution of any of the shares.  My investment intent is not limited to my present intention to hold the shares for the minimum capital gains period specified under any applicable tax law, for a deferred sale, for a specified increase or decrease in the market price of the shares, or for any other fixed period in the future.

3.      *I can protect my own interests*. I can properly evaluate the merits and risks of an investment in the shares and can protect my own interests in this regard, whether by reason of my own business and financial expertise, the business and financial expertise of certain professional advisors unaffiliated with the Company with whom I have consulted, or my preexisting business or personal relationship with the Company or any of its officers, directors or controlling persons.

4.      *I am informed about the Company*. I am sufficiently aware of the Company's business affairs and financial condition to reach an informed and knowledgeable decision to acquire the shares. I have had an opportunity to discuss the plans, operations and financial condition of the Company with its officers, directors or controlling persons, and have received all information I deem appropriate for assessing the risk of an investment in the shares.

5.      *I recognize my economic risk*. I realize that the purchase of the shares involves a high degree of risk, and that the Company's future prospects are uncertain. I am able to hold the shares indefinitely if required, and am able to bear the loss of my entire investment in the shares.

6.      *I know that the shares are restricted securities*. I understand that the shares are "restricted securities" in that the Company's sale of the shares to me has not been registered under the Securities Act in reliance upon an exemption for non-public offerings. In this regard, I also understand and agree that:

a.      I must hold the shares indefinitely, unless any subsequent proposed resale by me is registered under the Securities Act, or unless an exemption from registration is otherwise available (such as Rule 144);

b.      the Company is under no obligation to register any subsequent proposed resale of the shares by me; *and*

c.      the certificate evidencing the shares will be imprinted with a legend which prohibits the transfer of the shares unless such transfer is registered or such registration is not required in the opinion of counsel for the Company.

7.      *I am familiar with Rule 144*. I am familiar with Rule 144 adopted under the Securities Act, which in some circumstances permits limited public resales of "restricted securities" like the shares acquired from an issuer in a non-public offering. I understand that my ability to sell the shares under Rule 144 in the future is uncertain, and may depend upon, among other things: (i) the availability of certain current public information about the Company; (ii) the resale occurring more than a specified period after my purchase and full payment (within the meaning of Rule 144) for the shares; and (iii) if I am an affiliate of the Company (A) the sale being made in an unsolicited "broker's transaction", transactions directly with a market maker or riskless principal transactions, as those terms are defined under the Securities Exchange Act of 1934, as amended, (B) the amount of shares being sold during any three-month period not exceeding the specified limitations stated in Rule 144, *and* (C) timely filing of a notice of proposed sale on Form 144, if applicable.

8.      *I know that Rule 144 may never be available*. I understand that the requirements of Rule 144 may never be met, and that the shares may never the saleable under the rule. I further understand that at the time I wish to sell the shares, there may be no public market for the Company's stock upon which to make such a sale, or the current public information requirements of Rule 144 may not be satisfied, either of which may preclude me from selling the shares under Rule 144 even if the relevant holding period had been satisfied.

9.      *I know that I am subject to farther restrictions on resale*. I understand that

in the event Rule 144 is not available to me, any future proposed sale of any of the shares by me will not be possible without prior registration under the Securities Act, compliance with some other registration exemption (which may or may not be available), or *each* of the following: (i) my written notice to the Company containing detailed information regarding the proposed sale; (ii) my providing an opinion of my counsel to the effect that such sale will not require registration; and (iii) the Company notifying me in writing that it or its counsel concurs in which opinion, which concurrence shall not be unreasonably withheld. I understand that although Rule 144 is not exclusive, the Staff of the SEC has stated that persons proposing to sell private placement securities other than in a registered offering or pursuant to Rule 144 will have a substantial burden of proof in establishing that an exemption from registration is available for such offers or sales, and that such persons and their respective brokers who participate in such transactions do so at their own risk.

10.       *I know that I may have tax liability due to the uncertain value of the shares.* I understand that the Board of Directors believes its valuation of the shares represents a fair appraisal of their worth, but that it remains possible that, with the benefit of hindsight, the Internal Revenue Service may successfully assert that the value of the shares on the date of my purchase is substantially greater than the Board's appraisal. I understand that any additional value ascribed to the shares by such an IRS determination will constitute ordinary income to me as of the purchase date, and that any additional taxes and interest due as a result will be my sole responsibility payable only by me, and that the Company need not and will not reimburse me for that tax liability.

11.       *Residence.* The address of my principal residence is set forth below.

12.       *Jill Berg.*   Certain of the cash advanced to the Company for the Purchase Price was wired by Jill Berg ("Berg") at my request. I reimbursed Berg for those funds. I will promptly provide the Company  a writing signed by Berg in a form acceptable to the Company  confirming  that: (a) she was reimbursed for the funds she sent or caused  to be sent to the Company;  (b) she does not and will not claims any rights, titles, or interests in such funds or in the Shares which are being issued to me or in or to any securities of the Company; and (c) She holds no claims or cause of action against the Company or any other person or entity with respect to such funds.

By signing below, I acknowledge my agreement with each of the statements

contained in this Investment Representation Statement as of the dates set forth in the Stock Purchase Confirmation Agreement above, and my intent for the Company to rely on such statements in issuing the shares to me.

*See* Exhibit A to the SPA, executed by Setliff in May 2018.

**34.** **Setliff admits he entered into the SPCA, that it contains an Exhibit "A" denominated an Investor Representation Statement, which must be read and construed as a whole, along with the documents incorporated therein by reference (including the Settlement Agreement, the stock certificates, and the 2015 Certificate of Formation, to the extent not modified by the Agreements), all of which speak for themselves. The legal effect of the Agreements (including Exhibit "A" to the SPCA) are legal contentions to which no response is required. To the extent a response is required, such allegations are denied, as are all allegations in this paragraph of the FACC that are not expressly admitted.**

35.     These representations are material representations relied on by Zoccam to sell and/or issue Zoccam stock to Setliff as well as enter into the SPA and Settlement Agreement which, as Setliff has admitted, are considered together.

**35.** **Setliff denies the allegations of this paragraph of the FACC, as Zoccam sold Setliff his Series A Preferred Stock and Common Stock in Zoccam long before it entered into the Settlement Agreement an SPCA (including its Exhibit "A").**

36.     Setliff agreed to be bound by the SPA when he signed it. Setliff also signed and agreed to be bound by Exhibit A, the Investment Representative Statement. By their very nature, these representations were material given Setliff's unambiguous acknowledgment that Zoccam was relying on each in, at minimum, selling and selling Setliff Zoccam stock.

**36.** **Setliff admits he entered into the SPCA, that it contains an Exhibit "A" denominated an Investor Representation Statement, which must be read and construed as a whole, along with the documents incorporated therein by reference (including the Settlement Agreement, the stock certificates, and the 2015 Certificate of Formation, to the extent not**

**modified by the Agreements), all of which speak for themselves. Setliff denies the allegation that Zoccam relied on any representation in Exhibit "A" to the SPCA when it sold Setliff his Series A Preferred Stock and Common Stock, as Zoccam sold such Stock to Setliff long before it entered into the Settlement Agreement an SPCA (including its Exhibit "A"). The legal effect of the Agreements (including Exhibit "A" to the SPCA) are legal contentions to which no response is required. To the extent a response is required, such allegations are denied, as are all allegations in this paragraph of the FACC that are not expressly admitted.**

37.     On the SPA through Exhibit A thereto, Setliff agreed to provide documentation regarding Berg and her funding of Zoccam stock, and Zoccam relied on Setliff's promise to do so in selling and issuing him shares of Zoccam stock and making the SPA and Settlement Agreement. However, Setliff never furnished Zoccam documentation that Berg forwarded funds to Setliff and he paid her back, and that Berg had no interest or rights to any Zoccam stock.

**37.     Setliff admits he entered into the SPCA, that it contains an Exhibit "A" denominated an Investor Representation Statement, which must be read and construed as a whole, along with the documents incorporated therein by reference (including the Settlement Agreement, the stock certificates, and the 2015 Certificate of Formation, to the extent not modified by the Agreements), all of which speak for themselves. Setliff denies the allegation that Zoccam relied on any representation in Exhibit "A" to the SPCA when it sold Setliff his Series A Preferred Stock and Common Stock, as Zoccam sold such Stock to Setliff long before it entered into the Settlement Agreement an SPCA (including its Exhibit "A"). Setliff further denies that he has not provided the documentation required by Paragraph 12 of Exhibit "A". The legal effect of the Agreements (including Exhibit "A" to the SPCA) are legal contentions to which no response is required. To the extent a response is required, such allegations are denied, as are all allegations in this paragraph of the FACC that are not expressly admitted.**

38.     Setliff, in acknowledging all terms of the Agreements and accepting the benefits therefrom, was made member of Zoccam's Board of Directors with all such responsibilities and

duties to Zoccam that accompany such position. Setliff continues to maintain his Board position while repudiating the material terms to the Agreements, admitting he defrauded Zoccam to obtain the Agreements to be a Board of Director (*see* subsection J) and engaging in self-dealing by, among other things, using his Board of Director position to advance his personal interests.

**38.    Setliff admits he entered into the Agreements which must be read and construed as a whole, along with the documents incorporated therein by reference (including the stock certificates, and the 2015 Certificate of Formation, to the extent not modified by the Agreements), all of which speak for themselves. Setliff denies that he was a Director until after the Agreements were executed on May 24, 2018, that he has repudiated any material terms of the Agreements, defrauded Zoccam, engaged in self-dealing, or used his position as a Director to advance his personal interests.**

F.      **Setliff's Actions Disavow Any Claim of Having Any Stock with Bold Rights.**

39.     In accordance with the Agreements, Zoccam held a board meeting in or around November 2018 to discuss amending its Certificate of Formation, consistent with Setliff's desire since May 2018 and the terms of the Agreements executed to by Setliff. A Board Agenda leading up to the October 2018 Board Meeting listed multiple reasons why the 2015 Certificate of Formation should be amended, including that it was "overly complicated," it was "[i]mplemented when the company envisioned actually using a preferred stock structure" that "hasn't been used and is unnecessary." It further stated the 2015 Certificate of Formation should be amended to "simplify [Zoccam's Certificate of Formation] as much as possible" and "[d]elete preferred stock; for preferred shareholders, convert into common stock."

**39.    Setliff denies that any Board meetings were held "in accordance with the Agreements," that the discussion at the October 2018 Board meeting related to making changes to the 2015 Certificate of Formation was driven by the terms of the Agreements, and that the document excerpted in this paragraph of the FACC was a "Board Agenda," was ever shown to Setliff or any other member of the Board that was not also a member of Zoccam's**

management, or is accurately quoted. Setliff denies any allegation in this paragraph of the FACC that is not expressly admitted.

40.     During the November 2018 Board Meeting, Setliff made his "motion to convert Preferred shares to common." Thereafter, during this meeting, Zoccam's Board, *including Setliff*, unanimously voted in favor of the Motion. The Board "*unanimously* voted to approve the amendment of the certificate of formation but the amendment of the certificate of formation does not affect the settlement agreement between . . . [Setliff] and [Cook]."

**40.     Setliff admits that, in response to the false representation by Zoccam that the 2015 Certificate of Formation had to be amended because Zoccam had been filing its income tax returns as an S-Corporation, he made a motion in the 2018 Board Meeting to authorize Zoccam's counsel to draw up a draft Restated Certificate of Formation, provided that the Restated Certificate did not affect the provisions of the Agreements, and that such conditional motion was unanimously approved by the Board. Setliff denies that this vote authorized Zoccam to file any Restated Certificate of Formation with the Texas Secretary of State without further approval of that document by the Board, and without ensuring that the Restated Certificate of Formation did not affect the of the Agreements. All allegations in this paragraph of the FACC that are not expressly admitted are denied.**

41.     During a subsequent Board meeting in November 2020, Zoccam's Board of Directors – including Setliff – unanimously ratified the Restated Certificate of Formation filed in 2019. This Restated Certificate of Formation amended the prior Certificate of Formation to effectuate the items covered by the Settlement Agreement, including that the Preferred Stock shall be treated "as if there were a 1:1 conversion" with common stock. The Restated Certificate of Formation filed in 2019 and the Board's vote ratifying same effectuated Setliff's request that the parties "cooperate to convert and eliminate *all preferred stock*, and to amend the certificate of formation to authorize additional common stock." The Board's vote and action were documented in a resolution that all Board of Directors signed, except Setliff, though his signature was

unnecessary and his vote was audio recorded and could be not properly withdrawn in accordance with applicable law.

**41.     Setliff denies that there was any motion made or vote taken at the November 2020 Board Meeting, or that any provisions of the Agreements was amended, supplemented, or waived, or that the 2019 Restated Certificate was ratified, during such meeting. Setliff also denies that he ever requested that Zoccam "convert and eliminate all preferred stock, and [] amend the certificate of formation to authorize additional common stock," as such request was not consistent with the terms of the Agreements. Zoccam's allegation regarding the legal effect of Setliff's statements during the November 2020 Board Meeting, particularly in light of the misrepresentations made by Zoccam management during that meeting, and the legal effect of his post-meeting communications with the Board, are legal conclusions to which no response is required. To the extent a response is required, Setliff denies those allegations, as well as any allegation in this paragraph of the FACC that is not expressly admitted.**

42.     Apparently recognizing his agreements, statements, and votes would defeat his shake down effort, Setliff concocted a number of frivolous and false excuses for not signing the resolution relating to the November 2020 Board of Directors meeting. Among other things, Setliff claimed pass-through losses to shareholders were not disclosed and therefore Setliff was misled in his November 2020 vote. Setliff's excuses all centered on his own claimed interests, not as a Board of Director owing fiduciary obligations to Zoccam.

**42.     Setliff denies that there was any motion made or vote taken at the November 2020 Board meeting, and that any of his statements at that meeting were legally binding on him, particularly in light of the false representations and material omissions made by Zoccam management during the course of that meeting. Setliff's reasons for refusing to sign the Ratification Resolution were neither false nor frivolous. Setliff, however, admits that his objections to that document were based on, *inter alia*, the IRS's rejection of all Zoccam tax returns for the 2015 through 2019 tax years, and the effect of those rejections on the tax liability**

of the company and all its shareholders to whom operating losses had already been passed-through. To the extent the allegations of this paragraph of the FACC are not expressly admitted, they are denied.

43.   Setliff knew Zoccam had pass-through losses to its shareholders – including him – before Setliff voted to ratify the Restated Certificate of Formation and before Zoccam filed the Amended Certificate of Formation in 2019.[1]

**43.   Setliff admits that he had received K-1s from "Zoccam Technologies, LLC" purporting to pass through operating losses from Zoccam before the Restated Certificate of Formation was filed at the end of August 2019, and before the November 2020 Board Meeting. Setliff denies that management disclosed it had misrepresented to the IRS that Zoccam had "consistently held itself out as an LLC taxable as a partnership" in an attempt to get the IRS to accept tax returns for the 2015 to 2019 tax years that the IRS had rejected because Zoccam should be taxed as a C-Corp. ineligible to pass-through losses to its shareholders, and in the process, had subjected both Zoccam and its shareholders to tax-related liabilities. Setliff further denies that there was any motion made or vote taken at the November 2020 Board meeting, and that any of his statements at that meeting were legally binding on him, particularly in light of the false representations and material omissions made by Zoccam management during the course of that meeting. To the extent the allegations of this paragraph of the FACC are not expressly admitted, they are denied.**

44.   Setliff also claimed he had a temporary loss of reason during the November 2020

---

[1] For example, on September 7, 2018, Setliff received a draft of Zoccam's 2017 tax return, showing him as receiving partnership losses. Five days later, on September 12, 2018, Setliff received his 2017 Schedule K-1 showing his share of "Ordinary business income (loss)" was a loss. On September 15, 2017, Setliff received from Zoccam amended 2015 and 2016 "U.S. Return[s] of Partnership Income" showing losses and confirming that Zoccam filed partnership tax returns. And, on September 5, 2017, Setliff participated in a meeting with Zoccam and its accountant and tax preparer concerning the refiling of Zoccam's 2015 and 2016 tax returns as a partnership. Thus, Setliff knew that Zoccam filed partnership tax returns over 1 year before the November 2018 Board Meeting. He likewise knew or should have known of his own pass-through losses at least two months before this Board Meeting.

**Setliff incorporates by reference his response to Paragraph 43 of the FACC, and to the extent any factual allegation in this footnote is not deemed covered by that response, denies any factual allegation in this footnote that is not expressly admitted therein.**

meeting but of course Setliff has acknowledged he did vote in favor of ratification.

**44.      Setliff admits that he was taken aback by his long-time friend Don Schellpfeffer's abrupt change of position during the November 2020 Board Meeting, but denies that there was any motion made or vote taken at the November 2020 Board meeting, and that any of his statements at that meeting were legally binding on him, particularly in light of the false representations and material omissions made by Zoccam management during the course of that meeting. To the extent the allegations of this paragraph of the FACC are not expressly admitted, they are denied.**

45.      Setliff's pretextual excuses are no match for the truth and the Restated Certificate of Formation authorized and ratified by the Board was consistent with Setliff's rights in the Settlement Agreement. Through the Restated Certificate of Formation, the Board never authorized and did not discuss any notion that Setliff ever possessed or would possess the Bold Investor Rights or similar. Setliff's claim to such rights, including through his position as a Board of Director, is verifiably false. The Board never authorized and did not discuss the possibility that Setliff possessed any Bold Investor Rights or similar because Setliff did not, could not, and does not possess such rights. Setliff voluntarily agreed to and executed the Agreements, and one clear result was the elimination of Preferred Stock which Setliff agreed to, and which never included the Bold Investor Rights or similar.

**45.      Setliff admits entering into the Agreements and that they must be read and construed as a whole, along with the documents incorporated therein by reference (including the SPCA, the stock certificates, and the 2015 Certificate of Formation, to the extent not modified by the Agreements), all of which speak for themselves. The legal effect of the Agreements, whether they conferred on Setliff the "Bold Rights," and whether the 2019 Restated Certificate is consistent with the Agreements, are legal contentions to which no response is required. To the extent a response is required, such allegations are denied, as are all allegations in this paragraph of the FACC that are not expressly admitted.**

G.     **Zoccam and Setliff Worked to Help Draft a Document Consistent With the Board's Decision to Amend.**

46.     After Setliff consented to and executed the Agreements, Setliff worked with Zoccam, through its then-legal counsel, to draft a form amendment for the Certificate of Formation. Drafts were exchanged, including on December 18 and 26, 2018, and January 21 and February 5, 2019.

**46.     Setliff admits that his counsel worked with Zoccam's counsel to draft a form of the Restated Certificate of Formation. All allegations in this paragraph of the FACC not expressly admitted are denied.**

47.     On January 21, 2019, Setliff emailed Zoccam a document titled "Restatement Certificate of Formation." This document did not mention the previously cancelled Preferred Shares and/or any attendant rights that were cancelled previously. The January 21 document was the last form of amendment to the Certificate of Formation that Zoccam received from Setliff.

**47.     Setliff admits that his counsel worked with Zoccam's counsel to draft a form of the Restated Certificate of Formation. Setliff denies that January 21, 2019 was the last communication between his counsel and counsel for Zoccam related to the draft Restated Certificate. For example, after January 21, 2019, Setliff's counsel sent Zoccam's counsel a draft Board resolution which, if adopted, would have provided for payment of the accumulated Series A Preferred Stock dividend to Setliff and the other holders of the preferred shares. All allegations in this paragraph of the FACC not expressly admitted are denied.**

48.     On February 5, 2019, Zoccam emailed Setliff an updated "Restated Certificate of Formation" that likewise did not identify, mention, or, of course, resurrect the previously cancelled Preferred Stock and/or any attendant rights. However, this document reiterated and confirmed all Zoccam shares are Common, and "all of the shares of common stock shall have identical rights to distribution and liquidation proceeds."

**48.     Setliff admits that Zoccam's counsel emailed his counsel a revised draft of the**

**Restated Certificate of Formation on or about February 5, 2019 containing, among other provisions, those excerpted in this paragraph of the FACC. Setliff further admits this draft of the Restated Certificate was transmitted with an email representing that Zoccam (through Cook) had accepted changes to the prior drafts of that document which were meant to compensate the holders of Series A Preferred Stock for the elimination of the "Bold Rights" and other rights attendant to those shares which were acquired by them under the terms of the Agreements, but which Setliff had been convinced to forego in order for Zoccam to cure deficiencies in its prior tax return filings, and ensure that the pass through of its operating losses to its shareholders was valid under applicable law. All allegations in this paragraph of the FACC not expressly admitted are denied.**

49.     On February 21, 2019, Dan Waller of GPM emailed Zoccam's counsel a proposed resolution directing attention to "paragraph 3 regarding preferred dividends." That Paragraph 3 stated all outstanding shares of Preferred Stock "will be converted into common stock with no dividend or distribution preference[.]" This email obviously reflects and confirms there was no preferred stock, and thus, no rights including Bold Rights associated with any preferred stock.

**49.     Setliff admits that the allegations in this paragraph are contradictory and nonsensical. How could the document allegedly transmitted on February 21, 2019 simultaneously recognize that the existing preferred dividend would be eliminated by the Restated Certificate, and that such dividend right never existed? Setliff further admits that his counsel sent Zoccam's counsel a draft Board resolution which, if adopted, would have provided for payment of the accumulated Series A Preferred Stock dividend to Setliff and the other holders of the preferred shares, confirming that such preferred dividend rights were acquired by Setliff under the Agreements. All allegations in this paragraph of the FACC not expressly admitted are denied.**

50.     Discussions between Setliff and Zoccam regarding finalizing the form of amendment to the certificate of formation appeared to have ceased by late February 2019.  Setliff

declined to meaningfully contribute to further drafting.

**50. Setliff denies the allegations in this paragraph of the FACC. Setliff's counsel followed up with counsel for Zoccam on several occasions regarding the status of finalizing the Restated Certificate of Formation and was promised by counsel for Zoccam that he would provide the final version to counsel for Setliff for review and approval before it was submitted to the Board or filed with the Texas Secretary of State. However, rather than living up to those promises, counsel for Zoccam was instructed by Cook to remove Setliff's changes to the draft Restated Certificate of Formation to which she had previously agreed and file the document with the Secretary of State without seeking approval of the Board or notifying Setliff or his counsel that such modifications to the prior draft had been made. All allegations in this paragraph of the FACC not expressly admitted are denied.**

51. On March 31, 2019, Setliff reconfirmed his consent to the Agreements by emailing Zoccam's Chief Operating Officer stating, "[t]he provisions of the Settlement Agreement, notwithstanding the changing of Preferred to Common, shall remain operative in corporate documents."

**51. Setliff denies the allegations in this paragraph of the FACC.**

**H. The Filed Restated Certificate of Formation Embodies the Parties' Intent to Eliminate All Preferred Shares to Raise Funding.**

52. Zoccam, indisputably, did not agree, indicate, or imply that Setliff's February 5th proposed draft amendment would be the precise document filed with the Texas Secretary of State. Although Setliff declined to cooperate with any further drafting of the Amendment, he did reconfirm his consent to the Agreements.

**52. Setliff denies the allegations in this paragraph of the FACC.**

53. In accordance with the Agreements, on or around August 28, 2019, Zoccam submitted its Restated Certificate of Formation to the Texas Secretary of State. The Texas Secretary of State issued a Certificate of Filing "Effective: 08/29/2019."

**53.    Setliff denies that the contents or filing of the Restated Certificate of Formation were made "in accordance with the Agreements," but admits that Zoccam's counsel, at the direction of Cook and without the approval of the Board, filed the 2019 Restated Certificate of Formation with the Texas Secretary of State at 11:49 a.m. on August 29, 2019, and that the Texas Secretary of State provided an effective date for that filing of the same day. All allegations in this paragraph of the FACC not expressly admitted are denied.**

54.    The Restated Certificate of Formation is consistent with the Settlement Agreement, the SPA, and the November 2018 Board Meeting and Director vote, did not resurrect the canceled Series A Preferred stock including Bold Investor Rights or similar, but instead reconfirmed cancellation of such stock and any attendant rights found in in Section 3 of the Settlement Agreement.

**54.    The allegations in this paragraph of the FACC are legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

**I.    Setliff Breached the Agreements.**

55.    After the Amendment was filed and effective, Setliff complained, through an August 29, 2019 e-mail, that Zoccam's filing "is not the version agreed to by . . . Dr. Reuben Setliff" and that the February 5th document constituted "our agreement." Later that day, Setliff informed Zoccam that the February 5th document "is what was agreed upon" and what "[w]e asked for several months . . . be filed to reflect our agreement." As part of this e-mail, Setliff included the February 5, 2019 email with the proposed document.

**55.    Setliff admits that *before* the version of the Restated Certificate of Formation filed with the Texas Secretary of State was actually filed, his counsel (still laboring under the false belief that changes to the Certificate of Formation were necessary for Zoccam to qualify for Subchapter S tax treatment) complained that the version Zoccam's counsel represented had already been filed stripped out Setliff's changes to which Cook (on behalf of Zoccam) had**

**previously agreed. All allegations in this paragraph of the FACC not expressly admitted are denied.**

56.     Tellingly, what Setliff contends he "agreed upon" did not contain *any* Preferred Stock and/or any attendant rights including the previously reacquired and cancelled Series A Preferred Stock and all attendant rights including Bold Investor Stock. When Setliff emailed Zoccam on August 29, 2019, with his complaints to the Restated Certificate of Formation that was filed and which the Secretary of State accepted, no complaint or objection was made concerning the elimination of Preferred Stock and any attendant rights, including the cancelled Series A Preferred Stock as well as any Bold Investor Rights. Logically and obviously, Setliff knew Preferred Stock and any attendant rights had been eliminated, including previously cancelled stock, and Setliff acknowledged and agreed to same when he executed both Agreements.

**56.     Setliff admits that *before* the version of the Restated Certificate of Formation filed with the Texas Secretary of State was actually filed, his counsel (still laboring under the false belief that changes to the Certificate of Formation were necessary for Zoccam to qualify for Subchapter S tax treatment) complained that the version Zoccam's counsel represented had already been filed stripped out Setliff's changes to which Cook (on behalf of Zoccam) had previously agreed. All allegations in this paragraph of the FACC not expressly admitted are denied.**

57.     Nevertheless, Setliff has persisted in his position that the Restated Certificate of Formation filed in 2019 should be rescinded, and the 2015 Certificate of Formation should be reinstated, despite Setliff's reconfirmation of the Agreements, the existence of Section 5 to the 2015 Certificate of Formation, Setliff's repeated acknowledgments of the specific terms of the Agreements, and his retention of the benefits in both Agreements (including being a Zoccam Board of Director).

**57.     Setliff admits that his position is that the 2019 Filed Restatement is invalid because: (1) it was never effectively approved by the Board, (2) any "agreement" Setliff made**

**to the concept of a Restated Certificate of Formation was based on the false representation that the Certificate of Formation had to be restated to eliminate the Series A Preferred Stock (including the "Bold Rights" he acquired through his purchase of that Stock) even though Zoccam management knew Zoccam had not been filing its tax returns as a Subchapter S corporation and could not qualify to be taxed as either an S-Corp or a partnership, and (3) any "agreement" he made to the draft Restated Certificate of Formation was not effective because Zoccam management unilaterally and secretly stripped out the provisions of that document to which Zoccam (through Cook) had previously agreed.**

58.     On or around November 19, 2020, Zoccam approved a Motion and Resolution to Ratify the 2019 Restated Certificate of Formation (the "Ratification"). The Ratification was joined by, among others, Cook and Don Schellpfeffer/Pocket MD, LLC. Setliff voted in favor of ratification but did not sign the Ratification, claiming a temporary lapse in sanity, but the Board did not need his signature for any enforceable and valid ratification.

**58.     Setliff denies that the other Board members' approval of the Ratification Resolution was effective. Setliff further denies that there was any motion made or vote taken at the November 2020 Board meeting, and that any of his statements at that meeting were legally binding on him, particularly in light of the false representations and material omissions made by Zoccam management during the course of that meeting. Setliff's reasons for refusing to sign the Ratification Resolution were perfectly sane and in the interest of the company. Specifically, Setliff's objections to that document were based on, among other things, the IRS's rejection of all Zoccam tax returns for the 2015 through 2019 tax years, and the effect of those rejections on the tax liability of the company and all its shareholders to whom operating losses had already been passed-through. To the extent the allegations of this paragraph of the FACC are not expressly admitted, they are denied.**

59.     Setliff's decision to not sign the Resolution for the Amendment, after voting for it as a Board of Director, stemmed from his designed choice to place his personal interests in Zoccam

above Zoccam and Zoccam's interests, financial health, and to honor his words and execution of the Agreements. Given Setliff's personal interests and placing those interests over those of Zoccam, Setliff should have recused himself as a Board of Director on this issue. Indeed, the only other people besides Setliff who possessed any Preferred Shares before the Amendment's passage – Cook and Schellpfeffer – each also a Director of Zoccam – signed the Ratification. By their votes, the Directors, even without Setliff, obviously confirmed the elimination of the Preferred Stock and any attendant rights and that any preferred stock with Bold Investor Rights remained cancelled and not transferred or sold as part of Zoccam's continued and future success.

**59.     Setliff denies that there was any motion made or vote taken at the November 2020 Board meeting, and that any of his statements at that meeting were legally binding on him, particularly in light of the false representations and material omissions made by Zoccam management during the course of that meeting. Setliff's reasons for refusing to sign the Ratification Resolution were based on, among other things, the IRS's rejection of all Zoccam tax returns for the 2015 through 2019 tax years, and the effect of those rejections on the tax liability of the company and all its shareholders to whom operating losses had already been passed-through.  To the extent the allegations of this paragraph of the FACC are not expressly admitted, they are denied.**

60.     Setliff's refusal to sign the Resolution for the Restated Certificate of Formation further violated his promise in Section 4.7 "to cooperate and to execute any and all further documents needed to carry out or effectuate the terms of this [Settlement] Agreement," including "consents, resolutions, or votes as directors of shareholders."  Doing so also breached his fiduciary duties as a Zoccam Board of Director.

**60.     The allegations in this paragraph are legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

61.     In further reliance on Setliff's statements and position, Zoccam – a startup with at

most three employees – on boarded over ten investors with the understanding that no Series A Preferred Shares or attendant rights exist – all of whom are on an equal footing through a 1:1 structure established by Class A and Class B Common Stock. And again, Setliff was provided a seat on the Board of Directors in reliance of his consent and execution of the Agreements.

**61.    Setliff is without information sufficient to admit or deny Zoccam's allegation that it "onboarded over 10 investors" after the Ratification Resolution, and as such denies that allegation. The remaining allegations of this paragraph are legal conclusions to which no response is required. To the extent a response is required, Setliff denies those allegations.**

**J.    Setliff's Deposition is Taken and Setliff's Fraud and Breaches Are Exposed**

62.    On November 29, 2022, Setliff's deposition was taken and his frauds, breaches, lying, and purposeful disregard for his obligations were exposed.

**62.    Setliff admits his deposition was taken on November 29, 2022. Setliff denies the remaining allegations in this paragraph.**

63.    Setliff admitted in his deposition that he did not buy Zoccam stock for his own interests but used funds from the Reuben Setliff Living Trust to pay for Zoccam stock and it was the Trust who owned all or part of the Zoccam stock obtained.

**63.    Setliff denies the allegations in this paragraph of the FACC.**

64.    Setliff also admitted he did not and does not intend to comply with his obligations under the Settlement Agreement and SPA.

**64.    Setliff denies the allegations in this paragraph of the FACC.**

65.    Significantly, Setliff represented in Exhibit A to the SPA that the statements he made were true, and that Zoccam was relying on them; yet Setliff knew his representations were false and/or recklessly made and his false representations were made to induce Zoccam to issue him Zoccam stock. Had Zoccam known the truth, there would have been no stock issued to Setliff. Setliff's material misrepresentations were intended to have Zoccam issue him stock knowing the truth would have prevented Setliff from obtaining Zoccam stock and the benefit of the Settlement

Agreement.

**65.    Setliff admits that he purchased his stock in Zoccam long before he ever signed the Agreements. To the extent the allegations of this paragraph of the FACC are not expressly admitted, they are denied.**

66.    Setliff also revealed that he had no intent in honoring the Agreements, particularly providing documentation regarding the source of funds to obtain the Zoccam stock including from Jill Berg, Setliff's longtime significant other, but not spouse.

**66.    Setliff denies the allegations in this paragraph of the FACC.**

67.    Setliff further revealed he intended to advance and has advanced his own personal interests through his position as a Board of Director in direct contravention of his fiduciary obligations.

**67.    Setliff denies the allegations in this paragraph of the FACC.**

68.    Setliff also acknowledged he was intending to damage and harm Zoccam and those interests were superior to his fiduciary obligations as a Zoccam Board of Director. Setliff made clear his own personal interests would take precedence over his obligations as a Board of Director.

**68.    Setliff denies the allegations in this paragraph of the FACC.**

69.    Setliff also subsequently disclosed he was sharing confidential Zoccam information with third parties including Daniel Veltkamp in breach of his obligations to Zoccam.

**69.    Setliff denies the allegations in this paragraph of the FACC.**

70.    Setliff's deposition testimony further revealed Setliff has a callous disregard for the Agreements he executed, his obligations thereunder and as a Zoccam Board of Director, and that being untruthful has no consequences for him.

**70.    Setliff denies the allegations in this paragraph of the FACC.**

71.    Had Zoccam known that Setliff's material representations were false, recklessly made, and/or untruthful including Setliff did not acquire Zoccam stock for his own use, trust funds were used for purchase Zoccam stock, and a trust owned the Zoccam stock, there would have been

no Agreements and Setliff would not have been sold Zoccam stock as well as permitted a position as a Zoccam Board of Director. Further, had Zoccam known that Setliff disregarded and refused to abide by the Agreements' other terms and representations including Setliff's duty to cooperate and disclaimers of reliance, Zoccam would not have entered into the Agreements.

**71.   The allegations of this paragraph are argument based on false factual allegations, flawed reasoning, and baseless interpretations of the relevant contractual documents. To the extent any response is required to this nonsense, Setliff denies the allegations of this paragraph of the FACC.**

72.   Finally, Setliff, as a Zoccam Board of Director with fiduciary obligations to Zoccam, did not disclose that his representations and promises in the Agreements were false and inaccurate. As a fiduciary duty to Zoccam, Setliff had a duty of candor and disclosure to Zoccam. Further, Setliff's material misrepresentations mislead Zoccam and left Zoccam with misleading material information that Setliff was obligated to correct.

**72.   Setliff admits that he became a Director after the Agreements were fully executed on May 24, 2018, but denies that he made any material misrepresentations in the Agreements or otherwise, or that Zoccam in any way relied on any representations in the Agreements when it took his investment money, making him a Series A Preferred and Common Stockholder. To the extent the allegations of this paragraph of the FACC are not expressly admitted, they are denied.**

## CAUSES OF ACTION

### VI. FRAUDULENT INDUCEMENT

73.   Zoccam incorporates Paragraphs 1-72 as if fully set out herein.

**73.   Setliff incorporates by reference his responses to Paragraphs 1-72 of the FACC, as if fully set forth herein.**

74.   Setliff fraudulently induced Zoccam to agree and execute the two Agreements and

including selling stock to Setliff and allowing Setliff to be a Board of Director without an intent to fully perform and/or making material representations that Setliff intended Zoccam to rely upon. In particular, Setliff made multiple material representations to Zoccam at or before the Agreements were executed including, but not limited to: (1) the representations made by Setliff in the SPA and Exhibit A thereto were true and Zoccam was relying on same to issue Zoccam stock; (2) the purchase of Zoccam stock was for Setliff individually and not for anyone else; (3) the funds for purchase of the Zoccam stock came from Setliff's personal and/or individual funds and not from another source; (4) to the extent funds to purchase the Zoccam stock came from Jill Berg, Setliff reimbursed her and she disclaims any interest and rights for the Zoccam stock; (5) Setliff will furnish documentation to Zoccam to substantiate No. 4 above; (6) Setliff was relying exclusively on his own counsel and admissions and not any representations of Zoccam or its agents including counsel; (7) Setliff was fully informed about Zoccam; (8) Setliff may have tax liability because of purchasing Zoccam shares; (9) the Agreements include all material terms and any representations and there are no others (Paragraph 4.3 of the Settlement Agreement); (10) Setliff would cooperate in carrying out the Agreements, including amending the 2015 Certificate of Formation; (11) Setliff was releasing all claims and any that could arise in the future "relating to events that occurred prior to the Effective Date as reflected in Paragraph 2.1 of the Settlement Agreement;" (12) how Preferred Stock would be treated (Part III – Governance); and (13) in exchange for being truthful regarding all material representations, promises, and Setliff's duties and obligations in the Agreements, he would be allowed a seat on the Board of Directors. Each of his representations were false or recklessly made, as demonstrated by Setliff's subsequent conduct and/or Setliff's own statements including his recent deposition. Setliff knew these representations were false as well as others including in Exhibit A to the SPA and he did not intend to abide by the terms of the Agreements. Setliff admits his representations were false. Setliff would have no Zoccam stock had he truthfully provided accurate information and/or answered/disclosed the truth regarding the representations made in the Agreements including the SPA and Exhibit A thereto. Setliff has also substantiated fraudulent inducement by Setliff suing Zoccam for claims that Setliff did not have,

do not exist, and/or were released and also attempted to shakedown Zoccam by pursing meritless claims and making false claims resulting in Zoccam expending fees and costs to deplete Zoccam's financial resources.

**74.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

75.     Setliff made these false and reckless representations with the intent that Zoccam act on them, including consenting to the Agreements, selling Setliff Zoccam stock, permitting Setliff a seat on the Board of Directors, bringing in additional shareholders, believing all disputes between Setliff and Zoccam had been resolved, and devoting financial and personnel resources and expenses to carry out the Agreements. Zoccam reasonably relied on and acted on Setliff's representations and promises, which has now caused Zoccam damages and/or injuries and/or entitles Zoccam to rescission. As reflected in the Agreements, Zoccam reasonably and justifiably relied on Setliff's representations and promises in the Agreements to its detriment and to induce Zoccam to enter into the Agreements.

**75.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

76.     Setliff also had no intent to perform his duties and obligations pursuant to the Agreements but instead defrauded Zoccam, including permitting Setliff to purchase Zoccam stock, agreeing and permitting Setliff to be a Board of Director for Zoccam, having Zoccam obtain additional shareholders, and/or claiming he was entitled to the Bold Investors Rights when the Agreements reflected no such rights. Setliff had no intent to perform under the Agreements but instead obtain the benefits thereunder and then advance his own personal interests as a Board of Director.

**76.     The allegations in this paragraph of the FACC are legal argument and legal**

conclusions to which no response is required. **To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

77.     As a consequence, Zoccam is entitled to rescission and/or damages – actual, consequential, compensatory, and/or exemplary.

**77.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

## VII. COMMON LAW FRAUD

78.     Zoccam incorporates Paragraphs 1-77 as is fully set out herein.

**78.     Setliff incorporates by reference his responses to Paragraphs 1-77 of the FACC, as if fully set forth herein.**

79.     Setliff made material misrepresentations in the Agreements, including Exhibit A to the SPA, which Setliff knew to be false and/or were recklessly made. In particular, Setliff represented: (1) the representations made by Setliff in the SPA and Exhibit A thereto were true and Setliff acknowledged Zoccam was relying on same for entering into the Agreements; (2) the purchase of Zoccam stock was for Setliff individually and not for anyone else; (3) the funds for purchase of the Zoccam stock came from Setliff's personal and/or individual funds and not from another source; (4) Setliff owns the Zoccam stock and not any other person or entity (5) the funds to purchase the Zoccam stock came from Jill Berg, and Setliff has reimbursed her and she disclaims any interest and rights for the Zoccam stock; (6) Setliff will furnish documentation to Zoccam to substantiate No. 4 above; (7) Setliff was relying exclusively on his own counsel and advisors and not any representations of Zoccam or its agents including counsel; (8) Setliff was fully informed about Zoccam; (9) Setliff may have tax liability because of purchasing Zoccam shares; (10) the Agreements include all material terms and any representations and there are no others (Paragraph 4.3 of the Settlement Agreement); (11) Setliff would cooperate in carrying out the Agreements, including amending the 2015 Certificate of Formation; and (12) Setliff was releasing all claims and

any that could arise in the future "relating to events that occurred prior to the Effective Date as reflected in Paragraph 2.1 of the Settlement Agreement," which would obviously include no Series A Preferred Stock that allegedly would include Bold Investor Rights; (13) how Preferred Stock would be treated (Part III – Governance) by Setliff and Zoccam.

**79.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

80.    Setliff intended for Zoccam to reasonably rely on these material misrepresentations to Zoccam's detriment and Zoccam did so rely. In particular, the Agreements included material misrepresentations that stated that Zoccam was relying on same in entering into the Agreements. By the very terms of the Agreements, Zoccam reasonably relied on these material misrepresentations in making and executing the Agreements including allowing Setliff to purchase Zoccam stock and Setliff to be a Zoccam Board of Director.

**80.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

81.    Zoccam suffered injury and damages as a result of Setliff's fraud including entering into the Agreements, allowing Setliff to be a Zoccam stockholder and Board of Director, the costs and expense of this litigation, taking on additional investors, and the costs and expenses for carrying out the terms of the Agreements.

**81.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

82.    As a result, Zoccam is entitled to rescission and/or damages including exemplary damages.

**82.    The allegations in this paragraph of the FACC are legal argument and legal**

conclusions to which no response is required. **To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

## XIII. FRAUD BY NON-DISCLOSURE

83.     Zoccam incorporates Paragraphs 1-82 as is fully set out herein.

**83.     Setliff incorporates by reference his responses to Paragraphs 1-82 of the FACC, as if fully set forth herein.**

84.     Setliff has and continues to have a duty of disclosure to Zoccam as a consequence of the Agreements and as a Zoccam Board of Director. Setliff breached his duty of disclosure to Zoccam by not disclosing his representations and promises to Zoccam including in the Agreements and as a Zoccam Board of Director were false and/or recklessly made.

**84.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

85.     Setliff knew Zoccam was ignorant of the facts and particularly the falsity of the representations and promises Setliff made to Zoccam in the Agreements such as the trust owning the Zoccam stock, the stock being purchased with trust funds, and that Setliff did not intend to fulfill his obligations under the Agreements such as duty to cooperate and disclaimers of reliance. Alternatively and/or concurrently, Setliff remained silent despite an obligation to speak. Alternatively and/or concurrently, Setliff made partial disclosures which he knew were misleading and/or learned his disclosures were no longer true. In particular, Setliff's representations and promises in the Agreements required Setliff to speak truthfully and/or correct any partial disclosures that were misleading or no longer true. This includes the Agreements such as Exhibit A to the SPA, that Setliff was relying on representations or promises not in the Agreements and were expressly disclaimed, that Setliff was not relying solely on his counsel and advisors, that Setliff would not cooperate to carry out the Agreements, that Setliff was the only owner of Zoccam stock

and only his personal funds were being used to purchase Zoccam stock, that Zoccam should not rely on Setliff's representations and promises in the Agreements and the Zoccam stock, that Setliff had not conducted his own due diligence with regard to the Agreements, and that as a Zoccam Board of Director, he would not fulfill his fiduciary duties and obligations.

**85.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

86.    Setliff's silence and/or failure to cure misleading statements or statements not true was intended to induce Zoccam into the Agreements. Zoccam reasonably and/or justifiably relied on Setliff's duty of disclosure and to be truthful and accurate in Setliff's dealings with Zoccam including the Agreements and as a Zoccam Board of Director. Setliff's refusal to disclose has caused Zoccam injury, damages including exemplary damages, and entitlement to rescission.

**86.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC**

**IX. STATUTORY FRAUD PURSUANT TEX. BUS. & COM. CODE § 27.01(a)**

87.    Zoccam incorporates Paragraphs 1-86 as is fully set out herein.

**87.    Setliff incorporates by reference his responses to Paragraphs 1-86 of the FACC, as if fully set forth herein.**

88.    Setliff's conduct, silence, misrepresentations, and fraud is also actionable pursuant to *Tex. Bus. & Comm. Code* § 27.01.

**88.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

89.    Setliff sought to purchase Zoccam stock and was sold and issued Zoccam stock based on Setliff's admitted material misrepresentations including Setliff's promises and

representations in the Agreements, that the representations therein were truthful and accurate such as Setliff was purchasing stock individually with his own funds, Setliff was the individual and only owner of the Zoccam stock, the Zoccam stock was not being held for another, Jill Berg had no rights or entitlement to Zoccam stock and Setliff had repaid Berg, Setliff was not relying on any statements, representations, and information from Zoccam in entering into the Agreements, and Setliff had conducted his own due diligence regarding Zoccam. Zoccam was induced into the Agreements including the Zoccam stock transaction based on Setliff's material misrepresentations as reflected above. Zoccam justifiably relied on Setliff's material misrepresentations to its detriment and would not have entered into any stock transaction with Setliff had Zoccam known the truth.

**89.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

90.     Setliff benefited from the purchase of Zoccam stock through his statutory fraud by becoming a purported Zoccam stockholder, by becoming Zoccam Board of Director, putting his interests over that of Zoccam, being the beneficiary of a promissory note payable by Zoccam with substantial interest, and by purchasing Zoccam stock for or on behalf of another.

**90.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

91.     As a consequence of Setliff's statutory fraud, Zoccam is entitled to rescission and/or damages including the expenses and fees related to this litigation, fees and expenses to obtain rescission of the Agreements, the expenses spent toward carrying out the Agreements, reasonable attorney's fees, costs of any expert witnesses, and other litigation costs.

**91.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

## X. BREACH OF CONTRACT – SETTLEMENT AGREEMENT AND SPA

92.     Zoccam incorporates Paragraphs 1-91 as if fully set out herein.

**92.     Setliff incorporates by reference his responses to Paragraphs 1-91 of the FACC, as if fully set forth herein.**

93.     The Settlement Agreement and SPA constitute valid and enforceable contracts between Setliff and Zoccam.

**93.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

94.     Zoccam fully performed under the Settlement Agreement and the SPA and/or has been excused from performing by Setliff's fraud and prior material breach.

**94.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

95.     Setliff materially breached the Settlement Agreement and SPA by: (1) misrepresenting material facts that he was required to affirm in making the Agreements which are a material part of the Agreements including Exhibit A to the SPA; (2) failing to "agree to cooperate and to execute any and all further documents that may be necessary in order to carry out or effectuate the terms of this Agreement, including without limitation consents, resolutions, or votes as directors or shareholders," as he promised and is obligated under Section 4.7 of the Settlement Agreement; (3) by failing to furnish the information required in Paragraph 12 of Exhibit A of the SPA; and (4) by suing Zoccam for claims and issues released and/or based on Setliff's material misrepresentations. Such material breaches specifically include Setliff's failure to sign the Ratification of 2019 Certificate of Formation, and his insistence that the Series A Preferred Shares and/or the Series A Preferred Stock previously cancelled, along with any rights such as the Bold Investor Rights, existed and/or the Certificate of Formation was not amended to authorize

additional common stock.

**95.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

96.    Providing truthful information and representations in the Agreements were material terms to the Agreements and Setliff's failure to do so is a material breach of the Agreements. Failure to provide information regarding Jill Berg in Paragraph 12 of Exhibit A to the SPA is likewise a material term to the Agreements. Further, cooperating to carry out the Agreement such as amending Zoccam's 2015 Certificate of Formation, the Amendment, and the Restatement were material terms to carry out or effectuate the terms of the Settlement Agreement, specifically Section 4.7, as well as the SPA.

**96.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

97.    Additionally, Setliff's attempts to rely upon the 2015 Certificate of Formation to renege on an action that he proposed, consented to, voted for, obtained benefit as a result, and helped effectuate constitutes a failure "to cooperate" in violation of Section 4.7 of the Settlement Agreement. Specifically, Section 5 of the 2015 Certificate of Formation explicitly forbids Setliff from obtaining the Bold Investor Rights that Zoccam reacquired, and all cancelled shares associated with them.

**97.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

98.    Setliff has also breached the Agreements by failing to abide by the terms of these Agreements including, but not limited to, receiving Zoccam stock under false pretenses through fraud and/or deceit and instituting a lawsuit, thereby materially repudiating the terms of the two

Agreements. Among other terms, Setliff also agreed to release all claims: "Each of the Parties hereby release, waive, discharge, hold harmless, and acquit the other Parties and those Parties' Affiliates from any Causes of Action that any of the Parties has or had as of the Effective Date or could have in the future relating to events that occurred prior to the Effective Date," but Setliff nevertheless sued Zoccam and Ashley Cook for claims and/or allegations that Setliff released. Setliff has also based his claims in his lawsuit on representations and any other statements previously disclaimed and the Agreements reflect the parties' complete agreements and that Setliff has conducted his own investigation and diligence when he had not.

**98.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

99.    Setliff's material breaches excused any performance by Zoccam and/or the terms and/or any benefits to Zoccam.

**99.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

100.    Zoccam has been harmed as a proximate result of Setliff's breaches, including Setliff becoming a Zoccam stockholder and Board of Director, and actual and consequential damages (including lost corporate opportunities and lost profits) it has expended as a result of Setliff's material breaches by repudiating the Agreement terms in an amount exceeding the minimal jurisdictional limit of this Court. This includes all damages and expenses resulting from Setliff's material misrepresentations and/or refusal to abide by the Agreements he signed and other damages flowing from benefits Setliff has received from the Agreements. Zoccam also seeks and is entitled to pre- and post-judgment interest at the highest rate permitted by contract and/or available by law.

**100.    The allegations in this paragraph of the FACC are legal argument and legal**

conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.

101.     Zoccam further seeks and is entitled to its reasonable and necessary attorneys' fees outside of actual damages from and against Setliff, pursuant to *Tex. Civ. Prac. & Rem. Code* § 38.001 *et seq.*

**101.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

102.     Additionally and/or alternatively as the law permits, Zoccam requests that the Court rescind the Settlement Agreement and return the parties to their earlier positions as if no Settlement Agreement had existed. Zoccam is ready, willing, and able, and hereby offers to restore the consideration Setliff paid through and under the Settlement Agreement and SPA, particularly the amount of $200,000 for so-called Preferred Stock. Zoccam hereby seeks restoration of the consideration provided to Setliff. Zoccam requests that the Court rescind the Settlement Agreement so that the parties may return to their earlier status as if no Settlement Agreement and SPA existed.

**102.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

**XI. <u>PROMISSORY ESTOPPEL</u>**

103.     Zoccam incorporates Paragraphs 1-102 as if fully set out herein.

**103.     Setliff incorporates by reference his responses to Paragraphs 1-102 of the FACC, as if fully set forth herein.**

104.     Additionally and/or alternatively, Setliff made definite promises and representations, both orally and in writing, to Zoccam that he would abide by the Agreements, including providing truthful and accurate representations and/or cooperation to effectuate

necessary actions including an amendment to Zoccam's 2015 Certificate of Formation for the purposes of carrying out the Agreements, eliminating all preferred stock and any rights thereunder (and validating all cancelled stock and rights remain and are cancelled), and to authorize additional common stock. Among other things, Setliff affirmed his representations in the Agreements were true and accurate and were being relied on by Zoccam and encouraged and agreed that Zoccam should amend the 2015 Certificate of Formation "to convert and eliminate all preferred stock, and to amend the certificate of formation to authorize additional common stock." Setliff agreed and urged the parties to "agree in principle that they will cooperate to convert and eliminate all preferred stock, and to amend the certificate of formation to authorize additional common stock."

**104.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

105.    As part of and in exchange for agreeing and receiving Zoccam stock and the terms in the Agreements and to cooperate and fully consent to the Agreements, Setliff was provided certain rights or benefits, including appointment to the Zoccam Board of Directors. Setliff accepted these benefits or rights without reservation or qualification. This right or benefit was a material term of the Agreements and not severable from either Agreement. By accepting this benefit or right and continuing to remain a Board of Director, Setliff is estopped from repudiating his duties and obligations in the Agreements, including making truthful and accurate representations in the Agreements, owing a duty of candor to Zoccam, fulfilling Setliff's fiduciary obligations as a Zoccam Board of Director, making demands and/or claims plainly inconsistent with the Agreements and Setliff's obligations and duties under the Agreements, as well as advancing his own interests ahead of Zoccam.

**105.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

106.     Zoccam reasonably and substantially relied on Setliff's promises and representations in the Agreements to its detriment when it properly proceeded with the Agreements, to amend the 2015 Certificate of Formation, filed the Amendment, and later ratified the Amendment, including through the November 2020 Board meeting and Setliff's agreement and consent as well as all expenses and fees related thereto. Setliff has repudiated his obligations and duties to provide truthful and accurate representations in the Agreements, and to cooperate, but nevertheless, has accepted and taken advantage of the terms of the Agreements through the present. Through this lawsuit, Setliff claims his consents, resolutions and/or votes as a Board of Director or shareholder are needed to effectuate Zoccam's governance, yet he has repudiated his duties and obligations under the Agreements to cooperate ad fulfill his fiduciary obligations. Setliff cannot have it both ways – receiving and retaining the benefits of the Agreements while concurrently rejecting his corresponding duties and obligations, which were a material parts of the terms and/or consideration for the Agreements.

**106.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

107.     Furthermore, Zoccam took on additional shareholders (as Setliff promoted and insisted) as a result of amending its Certificate of Formation. Zoccam did so relying upon and with the understanding that no Series A Preferred Shares or attendant rights existed – only Class A and Class B Common Stock existed with the same equal footing.

**107.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

108.     Zoccam's reliance was both reasonable and foreseeable by Setliff, as evidenced by the extensive communications occurring between Setliff and Zoccam, and the terms of the Agreements, both before and after the amendment, including the statements and representations

Setliff made, his execution of the Agreements and the representations therein, the acceptance of the benefits Setliff received from the Agreements, and Setliff's participation in drafting the form of the amendment to the Certificate of Formation.

**108.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

109.    Injustice can be avoided only by enforcing Setliff's promises and material representations and rescinding the Agreements and/or deeming the 2015 Certificate of Formation amended, the Amendment and Ratification effective, and rejecting Setliff's objections and claims.

**109.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

110.    Zoccam has incurred reliance damages as a proximate result of Setliff's representations and promises and the two Agreements. These specifically include all costs incurred by Zoccam in this litigation in dealing with Setliff's various claims and allegations, onboarding its investors, effectuating the Amendment and Ratification, and in defending against Setliff's claims in his meritless lawsuit, which contradicts his material representations, consent, and acceptance to the Agreements.

**110.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

111.    Zoccam also seeks and is entitled to its reasonable and necessary attorneys' fees from and against Setliff.

**111.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

## XII. BREACH OF FIDUCIARY DUTY

112.     Zoccam incorporates Paragraphs 1-111 as is fully set out herein.

**112.     Setliff incorporates by reference his responses to Paragraphs 1-111 of the FACC, as if fully set forth herein.**

113.     Setliff is a fiduciary to Zoccam and has breached his fiduciary obligations to Zoccam. In particular, Setliff is a Zoccam Board of Director who must, at all times, act with the best interests of Zoccam and not for Setliff's own personal interests and/or engage in self-dealing.

**113.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

114.     As a Zoccam Board of Director, Setliff had a duty of full disclosure to Zoccam and not act and/or to promote Setliff's own interests. Yet, Setliff obtained Zoccam stock and a seat on the Zoccam Board of Directors based on material misrepresentations which he did not disclose to Zoccam. For example and not by way of limitation, Setliff purchased Zoccam stock through third party funds, a trust, and Setliff admits it is the trust who owns Zoccam stock, not Setliff. As a fiduciary, Setliff was required to make full disclosure to Zoccam relating to the Agreements, the ownership of Zoccam stock, and the funds used to obtain Zoccam stock. These facts are material and reflect on Setliff's position as a Zoccam Board of Director and the rights, remedies, and best interests of Zoccam.

**114.     The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

115.     Setliff has also breached his fiduciary obligations and duties to Zoccam by engaging in self-dealing and advancing his personal interests over the best interests of Zoccam. Setliff uses his Board of Director position to obstruct, delay, cause Zoccam expense, and advance his own personal interests including his own lawsuit agenda. Setliff's votes, positions, statements,

and communications as a Board of Director are exclusively directed to Setliff's personal interests and are advance to Zoccam's interests. Setliff refuses to disqualify himself as a Zoccam Board of Director, at least on matters where Setliff has a direct personal interest. Setliff's conduct in advancing his own personal interests (which Setliff admits) are breaches of fiduciary duties.

**115. The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

116. Setliff also acted solely for his own interests disregarding his duties of loyalty and candor to Zoccam, causing Zoccam damages including legal fees and expenses, obstruction, interference, refusal to cooperate, lost business opportunities, and dealing with Setliff's lawsuit. Setliff admits his intent is to injure Zoccam.

**116. The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

117. Setliff has acted solely in his own interests contrary to his duties and obligations as a Zoccam Board of Director, causing Zoccam damages through Setliff's obstruction, interference, deceit, refusal to cooperate, and legal fees in this lawsuit.

**117. The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

## XIII. <u>RESCISSION</u>

118. Zoccam incorporates Paragraphs 1-117 as fully set out herein.

**118. Setliff incorporates by reference his responses to Paragraphs 1-117 of the FACC, as if fully set forth herein.**

119. Additionally and/or alternatively, Zoccam requests the Court to rescind the Settlement Agreement and SPA and return Zoccam and Setliff to their earlier position as if no

Settlement Agreement and SPA had existed.

**119.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

120.    Zoccam is entitled to rescission due to Setliff's admitted fraudulent inducement, material misrepresentations, and/or material breaches of the Settlement Agreement and the SPA as described herein. Zoccam is also entitled to rescission including Setliff as a Board of Director as well as all special damages and expenses. By not making these disclosures, Setliff breached his fiduciary obligations to Zoccam.

**120.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

121.    Further, in the extremely unlikely event it is determined that Setliff owns Preferred Shares and/or that the attendant rights of those shares include Bold Investor Rights, the basis of such determination necessarily entails that both Zoccam and Setliff proceeded under a mistaken fact and misperception that Preferred Stock and attendant rights once held by the Bold Investors could be reissued, sold, or transferred to Setliff, contrary to Section 5 of the 2015 Certificate of Formation and other grounds, when in actuality, they could not be. Zoccam is therefore entitled to rescission based on such circumstances.

**121.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

122.    In the alternative, Zoccam has since refused the benefits of the Settlement Agreement and the SPA upon learning of the mistake.

**122.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff**

denies the allegations in this paragraph of the FACC.

123.    As described above, Zoccam is ready, willing, and able, and hereby offers to restore the consideration Setliff paid for Preferred Stock through and under the Settlement Agreement and SPA, which amount is $200,000. Accordingly, Zoccam hereby seeks restoration of the consideration and rescission.

**123.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

124.    No adequate remedy at law exists to correct the mutual mistake made by Setliff and Zoccam. Zoccam also seeks recovery of any special damage or expense it reasonably incurred as a result of any mutual mistake regarding the Settlement Agreement and SPA.

**124.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

125.    Zoccam acted and continues to act with clean hands in its dealings with Setliff and Setliff continues to perpetuate his frauds and breaches of fiduciary duties on Zoccam.

**125.    Setliff denies the allegations in this paragraph of the FACC.**

126.    Accordingly, Zoccam requests that the Court rescind the Settlement Agreement so that the parties may return to their earlier status as if no Settlement Agreement and SPA existed.

**126.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

### XIV. <u>REFORMATION</u>

127.    Zoccam incorporates Paragraphs 1-126 as is fully set out herein.

**127.    Setliff incorporates by reference his responses to Paragraphs 1-126 of the FACC, as if fully set forth herein.**

128.    Additionally and/or alternatively, Zoccam seeks reformation of the Settlement Agreement and SPA.

**128.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

129.    In the unlikely event it is determined that Setliff has any enforceable rights under the Agreements including Preferred Shares and/or that the attendant rights of those shares could ever be Bold Investor Rights, the basis of such determination necessarily entails that both Zoccam and Setliff proceeded under the mistaken fact that the Preferred Stock and attendant rights once held by the Bold Investors could be reissued, sold, or transferred to Setliff, when in actuality, they could not be pursuant to Section 5 of the 2015 Certificate of Formation and all other grounds. Under such circumstance and scenario, Zoccam and Setliff expressly intended for Setliff to have a total of 200,000 shares of Zoccam's issued common stock. Further, both Zoccam and Setliff overlooked and acted under the same misunderstanding of the same material fact; namely, that the Preferred Stock and attendant rights once held by the Bold Investors could be reissued, sold, or transferred to Setliff, when in actuality, they could not be.

**129.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

130.    Zoccam seeks reformation of the Settlement Agreement by declaring the Agreements null and void particularly if Setliff's representations in the Agreements are false and/or removing from the SPA Section 1: "(which were reacquired by the Company in a transaction with the previous holders of such shares)."

**130.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

131.    Zoccam further requests the SPA be reformed to include the following sentence where the deletion in paragraph 132 took place: "(such stock not being the Bold Investor stock

previously reacquired and cancelled pursuant to Section 5 of the 2015 Certificate of Formation by the Company and such stock not conferring any rights or benefits the same as or similar to Bold Investor stock)."

**131.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

132.    Zoccam has acted and continues to act with clean hands in its dealings with Setliff.

**132.    Setliff denies the allegations in this paragraph of the FACC.**

133.    Accordingly, Zoccam requests the Court to reform the Settlement Agreement and the SPA as reflected herein.

**133.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

## XV. <u>DAMAGES</u>

134.    Zoccam seeks all damages to which it is entitled. Such damages include actual, compensatory, consequential, and exemplary. Setliff's conduct with regard to his fraud, as described in Paragraphs 71-89, represent entitlement to such damages pursuant to *Tex. Civ. Prac. & Rem. Code* § 41.003(a)(1), otherwise known as exemplary damages. Zoccam also seeks pre- and post- judgment interest as permitted by law.

**134.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

## XVI. <u>ATTORNEYS' FEES</u>

135.    Zoccam seeks and is entitled to recover its reasonable and necessary attorneys' fees and expenses it has incurred and will incur in enforcing its rights and remedies against Setliff, including pursuant to *Tex. Civ. Prac. & Rem. Code* § 38.001, rescission, and/or on its promissory estoppel claim. Zoccam seeks all fees through trial, any appellate and collection proceedings, and as otherwise permitted by law. Zoccam has complied with any requirements and/or conditions to

obtain such fees.

**135.    The allegations in this paragraph of the FACC are legal argument and legal conclusions to which no response is required. To the extent a response is required, Setliff denies the allegations in this paragraph of the FACC.**

### XVII. <u>JURY DEMAND</u>

136.      Zoccam hereby demands a trial by jury for all issues so triable.

**136.      Setliff also demands a trial by jury for all issues so triable.**

## XVIII. General Denial

Setliff further denies each and every allegation of the FACC not expressly admitted herein, including an express denial of all headings in the FACC, and an express denial that Zoccam is entitled to any of the relief prayed for in the FACC.

## XIX. Setliff's Affirmative Defenses

Without assuming any burden of proof or production not imposed on him by applicable law, Setliff asserts the following defenses and affirmative defenses:

1.   Zoccam's counterclaims against Setliff fail to state a claim on which relief can be granted.

2.   Zoccam's counterclaims against Setliff are barred in whole or in part because Zoccam has failed to add necessary and indispensable parties to the counterclaim.

3.   Zoccam's counterclaims against Setliff are barred in whole or in part because Zoccam has suffered no legally cognizable damages.

4.   Zoccam's counterclaims against Setliff are barred in whole or in part under the parol evidence rule.

5.   All of Zoccam's tort causes of action are barred by the economic loss rule because the loss at issue is the subject of a contract.

6.   Zoccam's counterclaims against Setliff are barred in whole or in part under the mere

breach of contract doctrine.

7.  Zoccam's counterclaims against Setliff are barred in whole or in part under the doctrines of waiver, estoppel, equitable estoppel, and quasi-estoppel.

8.  Zoccam's counterclaims against Setliff are barred in whole or in part by the doctrine of laches.

9.  Zoccam's counterclaims against Setliff are barred in whole or in part by the doctrine of acquiescence.

10. Zoccam's counterclaims against Setliff are barred in whole or in part by the doctrine of ratification.

11. Zoccam's counterclaims against Setliff are barred in whole or in part by the doctrine of privilege.

12. Zoccam's counterclaims against Setliff are barred in whole or in part because Zoccam accepted the benefit of the bargain.

13. Zoccam's counterclaims against Setliff are barred in whole or in part due to its prior breach and/or failure of consideration.

14. Zoccam's counterclaims against Setliff are barred in whole or in part because Zoccam failed to mitigate its damages.

15. Zoccam's counterclaims against Setliff are barred in whole or in part because of ratification.

16. Zoccam's counterclaims against Setliff are barred in whole or in part because Setliff is entitled to offset/credit.

17. Zoccam's fraud claims are barred in whole or in part due to Zoccam's failure to plead those claims with particularity.

18. Zoccam's counterclaims against Setliff are barred in whole or in part under the defense

of unclean hands.

19. Zoccam's counterclaims against Setliff are barred in whole or in part under the defense of unjust enrichment.

20. Zoccam's counterclaims against Setliff are barred in whole or in part under the statute of frauds.

21. Zoccam's counterclaims against Setliff are barred in whole or in part under the applicable statutes of limitations.

22. Zoccam's counterclaims are barred in whole or in part due to Zoccam's failure to satisfy all conditions' precedent to suit, including, but not limited, to recovery of its attorney's fees under the Texas Civil Practice and Remedies Code.

23. Setliff asserts Zoccam could not have justifiably relied on any alleged misrepresentation or nondisclosure.

24. Zoccam's counterclaims are barred in whole or in part based on Zoccam's misrepresentations and failure to disclose material facts.

25. Zoccam's counterclaims are barred in whole or in part based on Zoccam's failure to comply with its governing documents and the provisions of the Texas Business Organizations Code.

26. Zoccam's counterclaims are barred in whole or in part based on *ultra vires* acts by Zoccam's management.

27. Zoccam's counterclaims are barred in whole or in part by the doctrine of election of remedies.

28. Zoccam's counterclaims are barred in whole or in part due to ambiguity of contract.

29. Zoccam's counterclaims are barred in whole or in part due to modification of contract.

30. Zoccam's counterclaims are barred in whole or in part due to Zoccam's failure to tender

restitution.

31. Setliff asserts the limitation on the amount of punitive damages recoverable as set forth in Chapter 41 of the Texas Civil Practice & Remedies Code.

32. Zoccam's claims for punitive and/or exemplary damages are barred in whole or in part because such an award in this case would violate the Due Process Clause(s) of the Fifth and/or Fourteenth Amendment(s) to the United States Constitution, and Article I, section 19 of the Texas Constitution.

33. Zoccam's claims for punitive and/or exemplary damages are barred in whole or in part because such an award in this case would violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and Article I, section 3 of the Texas Constitution.

34. Zoccam's claims for punitive and/or exemplary damages are barred in whole or in part because such an award in this case would violate the Excess Fines Clause of the Eighth Amendment to the United States Constitution, and Article I, section 13 of the Texas Constitution.

35. Zoccam's claims for punitive and/or exemplary damages are barred in whole or in part because such an award in this case would violate the Contracts Clause of the United States Constitution, Article I, section 10, clause I, and the Texas Constitution, Article I, section 16.

36. Setliff reserves the right to seek leave to amend its answer to add additional defenses.

## XVIII. PRAYER

Reuben Setliff prays that upon trial of this action, that Zoccam recover nothing from Setliff, that judgment be entered dismissing Zoccam's counterclaims against Setliff with prejudice, and that final judgment be entered against Zoccam in favor of Setliff on his affirmative claims set forth in his live pleading, and all other relief, in law or in equity, to which Setliff may show himself justly entitled.

Dated: January 31, 2023                  Respectfully submitted,

                                         **GLAST, PHILLIPS & MURRAY, P.C.**

                                  By:    */s/ David W. Dodge*
                                         **David W. Dodge**
                                         State Bar No. 24002000
                                         DDodge@GPM-Law.com
                                         **Matthew E. Furse**
                                         State Bar No. 24105032
                                         MFurse@GPM-Law.com
                                         **Robert N. Loughran**
                                         State Bar No. 24111197
                                         RLoughran@GPM-Law.com
                                         14801 Quorum Dr., Ste. 500
                                         Dallas, Texas 75254-1449
                                         972-419-8300 (Telephone)
                                         972-419-8329 (Fax)

                                         *Counsel for Plaintiff,*
                                         **REUBEN C. SETLIFF III, M.D.**

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2023, a true and correct copy of this *Answer and Affirmative Defenses to Zoccam's First Amended Counterclaim* was served electronically via the Court's ECF system.

                                           */s/ David W. Dodge*
                                          DAVID W. DODGE